**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**HOUSING RIGHTS INITIATIVE**

**Plaintiff,**

v.

COMPASS, INC.; 65 BERGEN LLC; THE
STRATFORD, LLC; CORCORAN
GROUP LLC; PROSPECT OWNERS
CORP.; BOLD LLC; RING DING LLC; E
REALTY INTERNATIONAL CORP;
JACKSON HT. ROOSEVELT
DEVELOPMENT II, LLC; MORGAN
ROSE REALTY, LLC; BTG LLC; M Q
REALTY LLC; EVA MANAGEMENT
LLC; ERIC GOODMAN REALTY
CORP.; 308 E 90TH ST. LLC; ROSA
MANGIAFRIDDA; NEW GOLDEN AGE
REALTY INC., d/b/a CENTURY 21 NEW
GOLDEN AGE REALTY, INC.; CHAN &
SZE REALTY INCORPORATED; PETER
CHRIS MESKOURIS; HELL'S
KITCHEN, INC.; MYEROWTZ/SATZ
REALTY CORP.; PD PROPERTIES LLC;
SMART MERCHANTS
INCORPORATED; COLUMBUS NY
REAL ESTATE INC.; LIONS GATE NEW
YORK LLC; MATTHEW GROS
WERTER; 780 RIVERSIDE OWNER
LLC; ATIAS ENTERPRISES INC.; PARK
ROW (1ST AVE.) LTD.; VORO LLC; PSJ
HOLDING LLC; WINZONE REALTY
INC.; RAY-HWA LIN; JANE H. TSENG;
ALEXANDER HIDALGO REAL
ESTATE, LLC; EAST 89th ASSOCIATES,
LLC; PALEY MANAGEMENT CORP.;
MAYET REALTY CORP.; NATURAL
HABITAT REALTY INC.; CHELSEA 251
LLC; HOME BY CHOICE LLC;
HAMILTON HEIGHTS ASSOCIATES,
LLC; JRL-NYC, LLC; EAST 34TH
STREET, LLC; BRITTBRAN REALTY,
LLC; MANHATTAN REALTY GROUP;
WEGRO REALTY CO; JM PRESTON

**Case No. 21-cv-2221**

**ECF Case**

**PROPERTIES, LLC; 1369 FIRST AVENUE, LLC; 931-955 CONEY ISLAND AVE. LLC; BEST MOVE REALTY; FORTUNE GARDENS, INC.; URBAN REAL ESTATE PROPERTY GROUP, INC.; 348 EAST 62ND LLC; JAN REYNOLDS REAL ESTATE; 83RD STREET ASSOCIATES LLC; FIRSTSERVICE REALTY NYC, INC.; TENTH MANHATTAN CORP.; 3LOCATION3.CO REALTY, LLC; 469 CLINTON AVE REALTY LLC; 718 REALTY INC.; DOUBLE A PROPERTY ASSOCIATES – CRESTION ARMS LLC; BEST SERVICE REALTY CORP.; CHANDLER MANAGEMENT, LLC; MTY GROUP, INC.; 165TH ST. REALTY, LLC; CHARIE PROPERTIES LLC; ALPINE REALTY; VERGA ASSOCIATES LLC; MAZ GROUP NY LLC; 449 WEST 56TH ASSOCIATES L.P.; GIM REALTY LLC; ORCHARD PLAZA LLC; RENTIKO INC.; 3095 30 LLC; AVENUE REAL ESTATE LLC; 165 HESTER CORPORATION; SALDO PROPERTIES, LLC;1380 FIRST OWNERS CO., L.P.;**

                    **Defendants**.

## FIRST AMENDED COMPLAINT

In order to address chronic housing insecurity among its residents, New York offers government-subsidized housing vouchers that allow low-income families to secure housing in the private rental market.  It is illegal in New York City for landlords and brokers to reject rental applicants for using such a housing voucher, but discrimination against these voucher-holders is rampant.  As a result, thousands of New Yorkers with vouchers are unable to leave overcrowded homeless shelters, substandard housing, and high-poverty neighborhoods, even though their housing vouchers provide them the financial means, and the legal right, to do so.

1

Defendants in this action are landlords and brokers who blatantly refused to rent apartments to New Yorkers with vouchers.  They did so in violation of local, state, and federal law, even as New York City faces a housing crisis and the ravages of a global pandemic.  Indeed, at the time this civil action was commenced, 56,000 individuals slept each night in the City's homeless shelter system, and well over 100,000 children lived in shelters or "doubled up" in apartments with family or friends.  Since March 2020, the COVID-19 pandemic has made matters much worse: nearly half of all New Yorkers, including nearly 60 percent of all low-wage workers, lost employment income since the virus arrived in New York.  As many as one-quarter of New Yorkers have been unable to make rent, and the City is bracing for a wave of evictions as the temporary state and federal moratoria on evictions end.  Moreover, because New York City's voucher-holders are overwhelmingly Black and Hispanic and disproportionately likely to have a disability, landlords and brokers' voucher bans result in a substantially greater burden on these populations.

Defendants' refusal to accept Housing Choice Vouchers, and Defendants' statements in connection with such refusals, constitute unlawful race and disability discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* and unlawful source of income discrimination under the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107 *et. seq.*, and the New York State Human Rights Law ("NYSHRL"), New York Consolidated Laws Service, Executive Law § 290 *et. seq.* Defendants' unlawful policies and practices against renting to New Yorkers with housing vouchers prevents poor New Yorkers of color and disabled New Yorkers in need from effectively using their housing vouchers, worsening housing segregation and exacerbating burdens on low-income and disabled New Yorkers.

The resulting impact of Defendants' refusal to accept Housing Choice Vouchers and Defendants' statements in connection with such refusals, is a staggering reduction in the available inventory of safe and affordable housing available to some of the most vulnerable residents of New York City.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the New York City and New York State law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). All Defendants are residents of the State of New York, and at least one Defendant is a resident of this District of the State of New York.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).  A substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District.

## PARTIES

4.      **Housing Rights Initiative.**  HRI is a national nonprofit housing watchdog group headquartered in New York, NY.  HRI is dedicated to promoting fair and lawful housing practices.  Since its founding, a core part of HRI's mission has been preserving affordable housing in New York City and assisting tenants in securing and maintaining access to affordably priced housing.  It has historically done this by counseling and organizing tenants in New York City about their rights to affordable housing and transparency by landlords, such as rights guaranteed by rent-stabilization laws, tax reporting requirements and other laws.   HRI further assists these tenants by referring them to legal counsel who advise and assist tenants to bring

legal actions against landlords who seek to evade these affordable housing laws and reporting requirements.  Through HRI's counseling, organizing and referral efforts, it has successfully and substantially increased the inventory of affordably-priced housing in the City.  These gains, however, have been jeopardized and offset by the epidemic of source of income discrimination uncovered by HRI's investigation, which has effectively placed thousands of affordable units effectively off limits to voucher-holding tenants.  HRI expended staff time and other resources to investigate and respond to Defendants' discriminatory rental practices, which has led to an increased demand and need for its organizing, counseling and referral services, while simultaneously diverting resources away from these activities in order to address the rampant source of income discrimination that is epidemic in New York City.  Additionally, Defendants' discriminatory rental practices frustrated HRI's mission to preserve and maintain affordable housing in New York City by making apartments unavailable to renters using Housing Choice Vouchers.

5.      Defendant Compass, Inc. is a corporation registered to do business in New York, previously registered as Urban Compass, Inc. and alternatively registered as Compass RE.  At all relevant times, Defendant Compass, Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

6.      Defendant 65 Bergen LLC is a corporation registered to do business in New York. Upon information and belief, Defendant 65 Bergen LLC was the owner of the unit at 65 Bergen Street #5, Brooklyn, New York 11201 and utilized the real estate brokering services of Defendant Compass, Inc. at all relevant times.

7.      Defendant The Stratford, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant The Stratford, LLC was the owner of the unit at

415 Stratford Road #5N Brooklyn, New York 11218, New York and utilized the real estate brokering services of Defendant Compass, Inc. at all relevant times.

8.      Defendant Corcoran Group LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Corcoran Group LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

9.      Defendant Prospect Owners Corp. is a corporation registered to do business in New York.  Upon information and belief, Defendant Prospect Owners Corp. is a housing cooperative and sets terms and conditions by which the owner of the unit at 45 Tudor City Place #412, New York, New York is required to abide by in order to rent its unit.

10.      Defendant Bold LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Bold LLC was in the real estate business, and, among other things, was brokering the rental of apartments in New York City.

11.      Defendant Ring Ding LLC is a corporation registered to do business in New York.   Upon information and belief, Defendant Ring Ding LLC was the owner of the unit at 348 East 92nd Street #1C, New York, New York and utilized the real estate brokering services of Defendant Bold LLC at all relevant times.

12.      Defendant E Realty International Corp. is a corporation registered to do business in New York.   At all relevant times, Defendant E Realty International Corp. was in the real estate business, and, among other things, was brokering the rental of apartments in New York City.

13.      Defendant Jackson Ht. Roosevelt Development II, LLC is a corporation registered to do business in New York. Upon information and belief, Defendant Jackson Ht. Roosevelt Development II, LLC was the owner of the unit at 137-35 Elder Avenue #506, Flushing, New

York and utilized the real estate brokering services of Defendant E Realty International Corp at all relevant times.

14.     Defendant Morgan Rose Realty, LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Morgan Rose Realty, LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

15.     Defendant BTG LLC is a corporation registered to do business in New York. Upon information and belief, Defendant BTG LLC was the owner of the unit at 408 West 130th Street #16k New York, New York 10027 and utilized the real estate brokering services of Defendant Morgan Rose Realty, LLC at all relevant times.

16.     Defendant M Q Realty LLC is a corporation registered to do business in New York. At all relevant times, Defendant M Q Realty LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

17.     Defendant Eva Management LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Eva Management LLC was the owner of the unit at 31-14 35th Street #3B, Astoria, New York 11106 and utilized the real estate brokering services of Defendant M Q Realty LLC at all relevant times.

18.     Defendant Eric Goodman Realty Corp. is corporation registered to do business in New York.  At all relevant times, Defendant Eric Goodman Realty Corp. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

19.     Defendant 308 E 90th St. LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 308 E 90th St. LLC was the owner of the unit at 308 E 90th Street #2A, New York, New York and utilized the real estate brokering services of Defendant Eric Goodman Realty Corp. at all relevant times.

20.     Defendant Rosa Mangiafridda is a property owner in New York.  Upon information and belief, Rosa Mangiafridda was the owner of the unit at 426 East 73rd Street #5RW, New York, New York 10021 and utilized the real estate brokering services of Defendant Eric Goodman Realty Corp. at all relevant times.

21.     Defendant New Golden Age Realty Inc. d/b/a Century 21 New Golden Age Realty, Inc. ("Century 21 New Golden Age") is a corporation registered to do business in New York, and, upon information and belief, is an affiliate of Century 21 Real Estate LLC, a corporation registered to do business in New York.  At all relevant times, Defendant Century 21 New Golden Age was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

22.     Defendant Chan & Sze Realty Incorporated is a corporation registered to do business in New York.  Upon information and belief, Defendant Chan & Sze Realty Incorporated was the owner of the unit at 17 Ludlow Street #7, New York New York 10002 and utilized the real estate brokering services of Defendant Century 21 New Golden Age Realty at all relevant times.

23.     Defendant Peter Chris Meskouris is a licensed real estate broker in New York.  At all relevant times, Defendant Peter Chris Meskouris was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

24.     Defendant Hell's Kitchen, Inc. is a corporation registered to do business in New York.  Upon information and belief, Defendant Hell's Kitchen, Inc. was the owner of the units at 407 West 39th Street #W2B and #W3C, New York, New York 10018 and utilized the real estate brokering services of Defendant Peter Chris Meskouris at all relevant times.

25.     Defendant Myerowtz/Satz Realty Corp. is a corporation registered to do business in New York.  Upon information and belief, Defendant Myerowtz/Satz Realty Corp. was the owner of the unit at 232 East 64th Street #14, New York, New York 10065 and utilized the real estate brokering services of Defendant Peter Chris Meskouris at all relevant times.

26.     Defendant PD Properties LLC is a corporation registered to do business in New York.  At all relevant times, Defendant PD Properties LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

27.     Defendant Smart Merchants Incorporated is a corporation registered to do business in New York.  Upon information and belief, Defendant Smart Merchants Incorporated was the owner of the unit at 110 Mulberry Street #4, New York, New York 10013 and utilized the real estate brokering services of Defendant PD Properties LLC at all relevant times.

28.     Defendant Columbus NY Real Estate Inc. is a corporation registered to do business in New York.  At all relevant times, Defendant Columbus NY Real Estate Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

29.     Defendant Lions Gate New York LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Lions Gate New York LLC was the owner of the unit at 34 Beekman Place #3C, New York, New York and utilized the real estate brokering services of Defendant Columbus NY Real Estate Inc. at all relevant times.

30.     Defendant Matthew Gros Werter is a Licensed Real Estate Broker in New York. At all relevant times, Defendant Matthew Gros Werter was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

31.     Defendant 780 Riverside Owner LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 780 Riverside Owner LLC was the owner of the unit at 780 Riverside Drive #D10, New York, New York 10032 and utilized the real estate brokering services of Defendant Matthew Gros Werter at all relevant times.

32.     Defendant Atias Enterprises Inc. is a corporation registered to do business in New York.  At all relevant times, Defendant Atias Enterprises Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

33.     Defendant Park Row (1st Ave.) LTD. is a corporation registered to do business in New York.  Upon information and belief, Park Row (1st Ave.) LTD. was the owner of the unit at 39 First Avenue #7, New York, New York 10003 and utilized the real estate brokering services of Defendant Atias Enterprises Inc. at all relevant times.

34.     Defendant Voro LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Voro LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

35.     Defendant PSJ Holding LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant PSJ Holding LLC was the owner of the unit at 144-47 38th Avenue #1F, Flushing, New York 11354 and utilized the real estate brokering services of Defendant Voro LLC at all relevant times.

36.     Defendant Winzone Realty Inc. is corporation registered to do business in New York.  At all relevant times, Defendant Winzone Realty Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

37.     Defendants Ray-Hwa Lin and Jane H. Tseng are property owners in New York. Upon information and belief, Defendants Ray-Hwa Lin and Jane H. Tseng were the owners of

the unit at 75-62 113th Street #2C, Queens, New York 11375 and utilized the real estate

brokering services of Defendant Winzone Realty, Inc. at all relevant times.

38.     Defendant Alexander Hidalgo Real Estate, LLC is a corporation registered to do

business in New York.  At all relevant times, Defendant Alexander Hidalgo Real Estate, LLC

was in the real estate business, and among other things, was brokering the rental of apartments in

New York City.

39.     Defendant East 89th Associates, LLC is a corporation registered to do business in

New York.  Upon information and belief, Defendant East 89th Associates, LLC was the owner

of the unit at 242 East 89th Street #1D, New York, New York 10128 and utilized the real estate

brokering services of Defendant Alexander Hidalgo Real Estate, LLC at all relevant times.

40.     Defendant Paley Management Corp. is a corporation registered to do business in

New York.  At all relevant times, Defendant Paley Management Corp. was in the real estate

business, and among other things, was brokering the rental of apartments in New York City.

41.     Defendant Mayet Realty Corp. is a corporation registered to do business in New

York.  Upon information and belief, Defendant Mayet Realty Corp. was the owner of the

building at 1366 York Avenue New York, New York 10021 and utilized the real estate brokering

services of Defendant Paley Management Corp. at all relevant times.

42.     Defendant Natural Habitat Realty Inc. is a corporation registered to do business in

New York.  At all relevant times, Defendant Natural Habitat Realty Inc. was in the real estate

business, and among other things, was brokering the rental of apartments in New York City.

43.     Defendant Chelsea 251 LLC is a corporation registered to do business in New

York.  Upon information and belief, Defendant Chelsea 251 LLC was the owner of the unit at

251 West 15th Street #12, New York, New York and utilized the real estate brokering services of Defendant Natural Habitat Realty Inc. at all relevant times.

44.     Defendant Home By Choice LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Home By Choice LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

45.     Defendant Hamilton Heights Associates, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Hamilton Heights Associates, LLC was the owner of the unit at 13 Hamilton Terrace #2E, New York, New York 10031 and utilized the real estate brokering services of Defendant Home By Choice LLC at all relevant times.

46.     Defendant JRL-NYC, LLC is a corporation registered to do business in New York.  At all relevant times, Defendant JRL-NYC, LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

47.     Defendant East 34th Street, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant East 34th Street, LLC was the owner of the unit at 320 East 34th Street #5B New York, New York 10016 and utilized the real estate brokering services of Defendant JRL-NYC, LLC at all relevant times.

48.     Defendant Brittbran Realty, Inc. is a corporation registered to do business in New York.  Upon information and belief, Defendant Brittbran Realty, Inc. was the owner of the unit at 315 West 121st Street #6, New York, New York 10027.

49.     Defendant Manhattan Realty Group is a real estate broker licensed to do business in New York.  At all relevant times, Defendant Manhattan Realty Group was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

11

50.     Defendant WeGro Realty Co is a partnership doing business in New York.  Upon information and belief, Defendant WeGro Realty Co was the owner of the unit at 316 East 62nd Street #5RE, New York, New York, 10065 and utilized the real estate brokering services of Defendant Manhattan Realty Group at all relevant times.

51.     Defendant JM Preston Properties, LLC is a corporation registered to do business in New York.  At all relevant times, Defendant JM Preston Properties, LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

52.     Defendant 1369 First Avenue, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant First Avenue LLC was the owner of the unit at 1369 First Avenue #4C, New York, New York 10021 and utilized the real estate brokering services of Defendant JM Preston Properties, LLC at all relevant times.

53.     Defendant 931-955 Coney Island Ave. LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 931-955 Coney Island Ave. LLC was the owner of the unit at 955 Coney Island Avenue #209, Brooklyn, New York 11230.

54.     Defendant Best Move Realty is a real estate broker licensed to do business in New York.  At all relevant times, Defendant Best Move Realty was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

55.     Defendant Fortune Gardens, Inc. is a corporation registered to do business in New York.  Upon information and belief, Defendant Fortune Gardens, Inc. was the owner of the unit at 48-12 46th Street #33, Woodside, New York 11377 and utilized the real estate brokering services of Defendant Best Move Realty at all relevant times.

56.     Defendant Urban Real Estate Property Group, Inc. is a corporation registered to do business in New York.  At all relevant times, Defendant Urban Real Estate Property Group,

Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

57.     Defendant 348 East 62nd LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 348 East 62nd LLC was the owner of the unit at 348 East 62nd Street #6FRONT, New York, New York 10065 and utilized the real estate brokering services of Defendant Urban Real Estate Property Group, Inc. at all relevant times.

58.     Defendant Jan Reynolds Real Estate is a real estate broker licensed to do business in New York. At all relevant times, Defendant Jay Reynolds Real Estate was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

59.     Defendant 83rd Street Associates LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 83rd Street Associates LLC was the owner of the unit at 328 West 83rd Street #6G, New York, New York 10024 and utilized the real estate brokering services of Defendant Jan Reynolds Real Estate at all relevant times.

60.     Defendant FirstService Realty NYC, Inc. is a corporation registered to do business in New York.  At all relevant times, Defendant FirstService Realty NYC, Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

61.     Defendant Tenth Manhattan Corp. is a corporation registered to do business in New York.  Upon information and belief, Defendant Tenth Manhattan Corp. was the owner of the unit at 1594 Third Avenue #5C, New York New York 10128 and utilized the real estate brokering services of Defendant FirstService Realty NYC, Inc. at all relevant times.

62.    Defendant 3Location3.Co Realty, LLC is a corporation registered to do business in New York.  At all relevant times, Defendant 3Location3.Co Realty, LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

63.    Defendant 469 Clinton Ave Realty LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 469 Clinton Ave Realty LLC was the owner of the unit at 469 Clinton Avenue #12, Brooklyn, New York 11238 and utilized the real estate brokering services of Defendant 3Location3.Co Realty, LLC at all relevant times.

64.    Defendant 718 Realty Inc. is a corporation registered to do business in New York. At all relevant times, Defendant 718 Realty Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

65.    Defendant Double A Property Associates – Creston Arms LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Double A Property Associates – Creston Arms LLC was the owner of the unit at 87-15 37th Avenue #2H, Jackson Heights, New York 11372 and utilized the real estate brokering services of Defendant 718 Realty Inc. at all relevant times.

66.    Defendant Best Service Realty Corp. is a corporation registered to do business in New York.  At all relevant times, Defendant Best Service Realty Corp. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

67.    Defendant Chandler Management, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Chandler Management, LLC was the owner of the unit at 33-14 34th Avenue #3, Queens, New York, 11106 and utilized the real estate brokering services of Defendant Best Service Realty Corp. at all relevant times.

14

68.     Defendant MTY Group, Inc. is a corporation registered to do business in New York.  At all relevant times, Defendant MTY Group, Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

69.     Defendant 165th St. Realty, LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant 165th St. Realty, LLC was the owner of the unit at 164-18 43rd Avenue, Flushing, NY 11358 and utilized the real estate brokering services of Defendant MTY Group, Inc. at all relevant times.

70.     Defendant Charie Properties LLC is a corporation registered to do business in New York.  At all relevant times, Defendant Charie Properties LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

71.     Defendant Alpine Realty is a real estate broker licensed to do business in New York.  At all relevant times, Defendant Alpine Realty was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

72.     Defendant Verga Associates LLC is a corporation registered to do business in New York.  Upon information and belief, Defendant Verga Associates LLC was the owner of the unit at 785 Ocean Parkway #E6, Brooklyn, New York 11230 and utilized the real estate brokering services of Defendant Alpine Realty at all relevant times.

73.     Defendant Maz Group NY LLC is a corporation registered to do business in New York. At all relevant times, Defendant Maz Group NY LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

74.     Defendant 449 West 56th Associates L.P. is a limited partnership registered to do business in New York.  Upon information and belief, Defendant 449 West 56th Associates L.P.

15

was the owner of the unit at 449 West 56th Street #2B, New York, New York 10022 and utilized the real estate brokering services of Defendant Maz Group NY LLC at all relevant times.

75. Defendant Gim Realty LLC is a corporation registered to do business in New York. Upon information and belief, Defendant Gim Realty LLC was the owner of the unit at 209 Madison Street #2B New York, New York and utilized the real estate brokering services of R New York Real Estate LLC at all relevant times.

76. Defendant Orchard Plaza LLC is a corporation registered to do business in New York. Upon information and belief, Defendant Orchard Plaza LLC was the owner of the unit at 38 Orchard Street #3F New York, New York 10002 and served as its own broker. At all relevant times, Defendant Orchard Plaza LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

77. Defendant Rentiko Inc. is a corporation registered to do business in New York. At all relevant times, Defendant Rentiko Inc. was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

78. Defendant 3095 30 LLC is a corporation registered to do business in New York. Upon information and belief, Defendant 3095 30 LLC was the owner of the unit at 30-95 30th Street #1B Astoria, New York 11102 and utilized the real estate brokering services of Defendant Rentiko Inc. at all relevant times.

79. Defendant Avenue Real Estate LLC is a corporation registered to do business in New York. At all relevant times, Defendant Avenue Real Estate LLC was in the real estate business, and among other things, was brokering the rental of apartments in New York City.

80. Defendant 165 Hester Corporation is a corporation registered to do business in New York. Upon information and belief, Defendant 165 Hester Corporation was the owner of

the unit at 165 Hester Street #5B, New York, New York 10013 and utilized the real estate

brokering services of Defendant Avenue Real Estate LLC at all relevant times.

81.     Defendant Saldo Properties, LLC is a corporation registered to do business in

New York.  At all relevant times, Defendant Saldo Properties, LLC was in the real estate

business, and among other things, was brokering the rental of apartments in New York City.

82.     Defendant 1380 First Owners Co., L.P. is a corporation registered to do business

in New York.  Upon information and belief, Defendant 1380 First Owners Co., L.P. was the

owner of the unit at 1380 First Avenue #3H, New York, New York 10021 and utilized the real

estate brokering services of Defendant Saldo Properties, LLC at all relevant times.

## BACKGROUND

83.     The Housing Choice Voucher Program (the "Voucher Program"), a successor to

the Section 8 Rental Voucher or Rental Certificate Program, is a federally funded housing

subsidy program designed to allow low-income families to obtain safe, decent, and affordable

housing.  Currently assisting more than two-million American families, including over 127,500

families in New York City, the Voucher Program is the largest rental-assistance program

administered by the U.S. Department of Housing and Urban Development ("HUD").  In New

York City, the designated programs administering the Voucher Program are the New York City

Housing Authority ("NYCHA"), the New York City Housing Preservation and Development

("HPD"), and New York State Homes and Community Renewal ("NYSHCR").

84.     Housing Choice Vouchers are tenant-based subsidies that are not linked to any

particular housing complex, building, or unit, but rather enable families with a Housing Choice

Voucher to rent housing in the private market, at market rates, provided the rent does not exceed

the Program's payment standards (i.e. limits on the monthly rent that are set by NYCHA,

17

NYSHCR and HPD) and a percentage of the voucher-holder's income.  The Voucher Program thus removes some of the barriers that would otherwise restrict low-income families from the opportunity to obtain rental housing outside of areas of concentrated poverty, allowing families to move to neighborhoods with rich access to public transportation, grocery stores, green spaces, well-performing schools, and cultural enrichment.  Obtaining a voucher can provide a homeless or low-income New Yorker with a direct path to housing and enable integration in mixed-income neighborhoods. The success of the voucher program depends in large part on the ability of renters to obtain housing in integrated neighborhoods, as well as the participation of landlords on the private housing market.

85.     Housing Choice Vouchers are designed, among other things, to allow very low-income families to rent safe, decent, and affordable privately-owned housing.  Vouchers are especially important in high-cost jurisdictions like New York City, where rent burdens on low-income families are particularly severe.

86.     Vouchers are also time-limited, and can generally only be used for a short period after they are issued. Applicants for Section 8 vouchers are placed on years-long waiting lists but only have 120 days to find an apartment once they finally receive a voucher unless they are able to obtain an extension on their voucher expiration date.

87.     As a result of widespread voucher discrimination, voucher holders must frequently accept subpar housing in segregated neighborhoods, or risk losing their voucher altogether.

88.     The voucher issued to each family subsidizes rent in a privately owned rental housing unit of the voucher holder's choice, subject to minimum standards of health and safety.

89.     As part of their mission to help disabled Americans secure housing, NYCHA, HPD and NYSHCR assign a high proportion of available Housing Choice Vouchers to individuals with disabilities.

90.     New York City residents with a Housing Choice Voucher are disproportionately likely to have a disability compared to New York City residents without vouchers.  About 28% of New York City residents who live in Housing Choice Voucher households have a disability.[1] By comparison, 9.8% of New York City residents in non-Housing Choice Voucher households have a disability.[2]

91.     New York City residents with disabilities are disproportionately served by the Housing Choice Voucher program in part because some Housing Choice Vouchers are designed to serve individuals with disabilities, including through the Non-Elderly Disabled Voucher program.

92.     In addition to the federally-funded Housing Choice Voucher program, New York State and New York City administer voucher programs specifically allocated for individuals with high health costs and disabilities, including the HIV/AIDS Services Administration (HASA) voucher, which serves more than 18,000 individuals living with AIDS or HIV illness, and the Olmstead Housing Subsidy (OHS) which serves high-need Medicaid beneficiaries.

93.     New Yorkers with a Housing Choice Voucher are disproportionately likely to be Black or Hispanic compared to New Yorkers without vouchers. About 82% of New York City residents with Housing Choice Vouchers are Black or Hispanic, compared with 50% of New York City residents without vouchers who are Black or Hispanic.

---

[1] HUD Picture of Subsidized Households, 2019.
[2] American Community Survey, 2018.

94.     The demographic composition of voucher-holders is well understood among real estate companies, including brokers and landlords, who perceive voucher holders to be disproportionately Black or Hispanic and lower-income.

95.     One purpose of the Housing Choice Voucher Program is to encourage neighborhood integration by allowing low-income and minority voucher-holders to freely move to higher-income and majority-white neighborhoods.

96.     Despite the goals of the Program of reducing concentrated poverty and mitigating housing segregation, Housing Choice Voucher holders in New York City are mainly concentrated in high-poverty and segregated neighborhoods.  Nearly 40% of voucher-holders in the New York City metropolitan area live in high-poverty neighborhoods, while just 14% of voucher-holders live in low-poverty neighborhoods.  Additionally, 79% of voucher-holders of color with children live in minority-concentrated areas, reflecting even greater rates of residential segregation than other low-income renters of color.[3]

97.     The concentration of voucher-holders in high-poverty and racially segregated neighborhoods is due, in large part, to rampant discrimination against voucher-holders among New York City's landlords and brokers.

98.     Because of discrimination against voucher holders, renters in New York City frequently spend months or years living in homeless shelters or on the street as they search for a landlord who will accept their voucher, even though they have the ability to cover the cost of an apartment.  By one estimate, 11,000 people are living in shelters in New York City despite having housing vouchers because they are unable to secure an apartment. Many more are relegated to high-poverty and segregated neighborhoods.

---

[3] Center on Budget and Policy Priorities, *Where Families With Children Use Housing Vouchers* (2019).

99.     Voucher holders frequently do not have the means or the ability to investigate and report rejections. Participating in investigations can be time-consuming and exhausting for these low-income New Yorkers, whose first priority is securing housing. Many renters do not know their rights and are unaware they are being discriminated against.

100.     The FHA prohibits discriminatory policies that make housing unavailable to individuals because of disability, race, or national origin, including policies that result in a disparate impact based on disability, race or national origin. 42 U.S.C. § 3604(f), 42 U.S.C. § 3604(a), 24 C.F.R. § 100.500.

101.     In order to protect low-income New Yorkers from being discriminated against because of their poverty, race or disability, and to assist them in effectively utilizing the Housing Choice Voucher program, the NYCHRL and the NYSHRL require that residential rental properties be made available to prospective tenants irrespective of their source of income, and expressly provide that Housing Choice Vouchers are a source of income. It is unlawful under the NYCHRL and the NYSHRL for Defendants to discriminate based on source of income, including where that source of income is a Housing Choice Voucher. New York City, N.Y., Code § 8-102, 8-107, N.Y. Exec. Law § 292, 296.

## FACTUAL ALLEGATIONS

### A.  Defendants' Rental Operations

102.     Defendants are residential real estate brokers and/or own, operate, control, supervise and/or manage, either directly or indirectly through their parent-subsidiary or other business affiliations, the Subject Properties, all of which are located in New York City.

103.    The Subject Properties are residential real estate properties that are offered for rent in New York City.  The Subject Properties offer studio and one-bedroom apartments with various amenities.

104.    The Subject Properties are located in various boroughs and neighborhoods in New York City. In Manhattan, the Subject Properties are located in the neighborhoods of the Upper West Side, Harlem, Upper East Side, Washington Heights, Lower East Side, Midtown, Hamilton Heights and Carnegie Hill. In Brooklyn, the Subject Properties are located in the neighborhoods of Clinton Hill, Cobble Hill, Coney Island, Midwood, and Kensington. In Queens, the Subject Properties are located in the neighborhoods of Astoria, Forest Hills, Woodside, Sunnyside, Kew Gardens, Jackson Heights, Murray Hill and Flushing.

105.    At all times relevant to this Complaint, the monthly rent charged by Defendants at each of the Subject Properties did not exceed the Housing Choice Voucher Program's maximum allowable rents.

106.    As real estate brokers and/or owners or operators of residential real estate, Defendants are required to comply with anti-discrimination laws under the FHA, the NYSHRL, and the NYCHRL.

107.    Defendants, their employees and/or their agents stated to HRI's testers that Defendants would not accept Housing Choice Vouchers as a source of payment for rent at the Subject Properties.  Defendants' acts, policies, and practices constitute impermissible discrimination because of disability and race on the basis of disparate impact, as well as source of income discrimination.

B. **Defendants' Discriminatory Policies and Practices**

108.    In 2017, HRI began hearing from community partners and attorneys at legal services organizations about the struggles that many individuals and families face in being unable to locate rental properties that would accept their vouchers, and that this problem had become an insurmountable barrier to safe and affordable housing for many members of the New York City community.  As a result of this information, HRI began an investigation of New York City rental housing to determine the existence and of scope of discrimination against Housing Choice Voucher holders in New York City.

109.    HRI investigates housing discrimination through a variety of means, including civil rights testing.  Civil rights testers are persons who query housing providers to test the housing providers' compliance with applicable fair housing laws.

110.    During these investigations, HRI conducted tests to inquire about the practices and policies of brokers and landlords throughout New York City.  Through these tests, HRI discovered rampant source of income discrimination by brokers and landlords throughout New York City.  Indeed, in many instances, their investigation revealed a policy or practice of refusing to accept vouchers, which prompted HRI to take steps to address such violations of the law.

111.    When a real estate broker posts a listing for an apartment unit, New York law generally requires the broker to obtain authorization from the owner of the property.  According to the New York Comp. Codes Rules & Regulations, "[n]o property shall be advertised unless the real estate broker has obtained authorization for such advertisement from the owner of the property."  tit. 19 § 175.25(b)(2)(i).  Until November 2020, brokers who did not obtain authorization from the property owner to advertise the unit were required to receive permission

from the listing broker and "prominently display" a disclaimer stating, "This advertisement does not suggest that the broker has a listing in this property or properties or that any property is currently available."  New York Comp. Codes Rules & Regulations tit. 19 § 175.25(d)(6).

112.    None of the listings described in the allegations below contained a disclaimer with the language in New York Comp. Codes Rules & Regulations tit. 19 § 175.25(d)(6).

113.    On April 16, 2020, an HRI tester, posing as a prospective tenant, called Compass, Inc. ("Compass") at (646) 529-0905 regarding an available apartment at 65 Bergen Street #5 in Cobble Hill.  At all times relevant to this suit, 65 Bergen Street #5, Brooklyn, New York 11201 was owned by 65 Bergen LLC.  The StreetEasy listing advertised a studio apartment with no broker's fee for $1,750 per month and stated that the property was listed by Compass.  The representative of Compass who answered the phone did not identify herself but confirmed the apartment was available.  When the tester inquired about using a Section 8 Voucher at the property, the Compass representative replied "No, we don't do Section 8 Vouchers in this building."  Compass performed the complained-of actions on behalf of 65 Bergen LLC, was authorized by 65 Bergen LLC to act as 65 Bergen's LLC's agent, and was acting as an agent of 65 Bergen LLC at the time of the tester's inquiry.

114.    On August 13, 2020, an HRI tester, posing as a prospective renter, called Compass at (917) 753-4315 regarding an apartment at 415 Stratford Road #5N in Ditmas Park.  At all times relevant to this suit, 415 Stratford Road #5N Brooklyn, New York 11218 was owned by The Stratford, LLC ("The Stratford").  The StreetEasy listing advertised an "amazing 1 BD apartment" for $1,935 per month and stated that the property was listed by Compass.  The representative at Compass who answered the phone did not identify himself but confirmed the apartment was available.  When the tester asked about using her Section 8 Voucher, the Compass

representative stated "No, I'm sorry, there's no programs in this building . . . and I don't have any small program apartments right now, I have four-bedrooms."  Compass performed the complained-of actions on behalf of The Stratford, was authorized by The Stratford to act as The Stratford's agent, and was acting as an agent of The Stratford at the time of the tester's inquiry.

115.    On January 14, 2021, an HRI tester, posing as a prospective renter, called Corcoran Group LLC ("Corcoran") at (718) 208-3554 regarding an apartment at 45 Tudor City Place #412 in Turtle Bay.  At all times relevant to this suit, 45 Tudor City Place #412 was a unit that was part of housing cooperative named Prospect Owners Corp ("Prospect"). The StreetEasy listing advertised a "sun-filled, charming studio" for $1,550 per month and stated that the property was listed by Corcoran.  The representative at Corcoran who answered the phone identified herself as Emi and confirmed the apartment was available.  When the tester asked about using her Section 8 voucher, the broker told her that "the last time somebody tried [to use a voucher], the application was refused," and stated that 45 Tudor City Place was a co-op building, and claimed that "co-op buildings have a right to refuse" vouchers. The broker continued, "I don't think this apartment would work for your needs but I can look for other apartments if you're interested."  Corcoran performed the complained-of actions on behalf of the owner of 45 Tudor City Place #412, and Corcoran indicated that the tester's application would be denied because Prospect had a policy of refusing to accept rental applications of voucher holders.

116.    On October 15, 2019, an HRI tester, posing as a prospective renter, called Bold LLC ("Bold") at (646) 841-9138 regarding an available apartment at 348 East 92nd Street #1C, New York, New York 10128.  At all times relevant to this suit, 348 East 92nd Street #1C, New York, New York 10128 was owned by Ring Ding LLC ("Ring Ding").  The listing on StreetEasy advertised a "Newly Renovated Upper East Side Studio apartment!" and stated that the property

25

was listed by Bold.  The representative from Bold identified himself as "Takee" and confirmed

the apartment was available.  When HRI's tester inquired if the listing accepts Section 8

Vouchers, Takee replied:  "I don't personally don't work with them because you're not allowed

to pay a brokers' fee."  When HRI's tester called back, she asked if the landlord would accept

Section 8, and Takee replied "So, you can't rent the apartment without me, so, unfortunately,

that's not an option that I would even explore entertaining . . ."  He further stated: "I'm not

going to rent this apartment [to you] because I can't get paid on it, and I'm not going to lose,

that's just taking money out of my pocket, that just doesn't make sense."  Bold performed the

complained-of actions on behalf of Ring Ding, was authorized by Ring Ding to act as Ring

Ding's agent, and was acting as an agent of Ring Ding at the time of the tester's inquiry.

117.     On October 16, 2019, an HRI tester, posing as a prospective renter, called E

Realty International Corp. ("E Realty") at (917) 969-8898 regarding an available apartment at

137-35 Elder Avenue #506 in Flushing.  At all times relevant to this suit, 137-35 Elder Avenue

#506, Flushing, New York 11354 was owned by Jackson Ht. Roosevelt Development II, LLC

("Jackson Ht. Roosevelt").  The representative from E Realty identified herself as "Sherry" and

confirmed the apartment was available.  The listing on StreetEasy advertised a one-bedroom

apartment for $1,850 per month and stated that the property was listed by E Realty.  When HRI's

tester explained he had a Section 8 Voucher and inquired if he could use it, Sherry replied "I'm

sorry, the owner will not accept programs."  E Realty performed the complained-of actions on

behalf of Jackson Ht. Roosevelt , was authorized by Jackson Ht. Roosevelt to act as Jackson Ht.

Roosevelt's agent, and was acting as an agent of Jackson Ht. Roosevelt at the time of the tester's

inquiry.

26

118.    On October 29, 2019, an HRI tester called Morgan Rose Realty, LLC ("Morgan

Rose") at (917) 618-5011 regarding an available apartment at 408 West 130th Street #16k in

West Harlem.  At all times relevant to this suit, 408 West 130th Street #16k New York, New

York 10027 was owned by BTG LLC ("BTG").  The listing on StreetEasy advertised a studio

apartment for $1,600 per month and stated that the property was listed by Morgan Rose.  The

representative of Morgan Rose identified herself as "Fay" and confirmed the apartment was

available.  When the tester asked if her Section 8 Voucher would be accepted, Fay replied:  "No,

he doesn't, no unfortunately.  I'm not the landlord but I know that the landlord doesn't accept

that."  Morgan Rose performed the complained-of actions on behalf of BTG, was authorized by

BTG to act as BTG's agent, and was acting as an agent of BTG at the time of the tester's inquiry.

119.    On October 30, 2019, an HRI tester, posing as a prospective renter, called M Q

Realty LLC ("M Q Realty") at (646) 308-1685 regarding an available apartment at 31-14 35th

Street #3B in Astoria.  At all times relevant to this suit, 31-14 35th Street #3B, Astoria, New

York 11106 was owned by Eva Management LLC ("Eva Management").  The listing on

StreetEasy advertised a one-bedroom apartment for $1,900 per month and stated that the

property was listed by M Q Realty.  The M Q Realty representative identified himself as "Cesar"

and confirmed the apartment was available.  When the tester inquired about using a Section 8

Voucher, Cesar stated: "They don't take Section 8 in that building." M Q Realty performed the

complained-of actions on behalf of Eva Management, was authorized by Eva Management to act

at Eva Management's agent, and was acting as an agent of Eva Management at the time of the

tester's inquiry.

120.    On November 12, 2019, an HRI tester, posing as a prospective renter, called Eric

Goodman Realty Corp. ("Eric Goodman Realty") at (201) 819-5867 regarding an available

27

apartment at 308 East 90th Street #2A in Yorkville.  At all times relevant to this suit, 308 East

90th Street #2A, New York, New York 10128 was owned by 308 E 90th St, LLC ("308 E 90th

St.").  The listing on StreetEasy advertised a "LARGE second floor studio" apartment for $1,875

per month and stated that the property was listed by Eric Goodman.  The Eric Goodman Realty

representative identified himself as "Matt" and confirmed the apartment was available.  When

the tester asked if she could use her Section 8 Voucher at the property, Matt replied: "No,

unfortunately not." Eric Goodman Realty performed the complained-of actions on behalf of 308

E 90th St., was authorized by 308 E 90th St.'s to act as 308 E 90th St's agent, and was acting as

an agent of 308 E 90th St. at the time of the tester's inquiry.

     121.    On June 30, 2020, an HRI tester, posing as a prospective renter, called Eric

Goodman Realty at (917) 697-3079 regarding an apartment at 426 East 73rd Street #5RW in

Lenox Hill.  At all times relevant to this suit, 426 East 73rd Street #5RW, New York, New York

10021 was owned by Rosa Mangiafridda.  The StreetEasy listing advertised a "Unique one

bedroom located on a great block" for $1,899 per month, with no broker's fee, and stated that the

property was listed by Eric Goodman Realty.  The individual who answered the phone did not

identify herself, and informed the tester she needed to confirm the apartment was available and

would follow up by text.  The Eric Goodman Realty representative followed up by text to inform

the tester that the apartment was available, but when the tester inquired if she could use her

Section 8 Voucher, the representative stated "Sorry is not going to work."  When the tester asked

why, the representative replied "The owner doesn't take it sorry."  Eric Goodman Realty

performed the complained-of actions on behalf of Rosa Mangiafridda, was authorized by Rosa

Mangiafridda to act as Rosa Mangiafridda's agent, and was acting as an agent of Rosa

Mangiafridda at the time of the tester's inquiry.

122.    On November 19, 2019, an HRI tester, posing as a prospective renter, called New Golden Age Realty Inc., a brokerage doing business as Century 21 New Golden Age Realty, ("Century 21 New Golden Age") at (917) 533-6631 regarding an available apartment at 17 Ludlow Street #7 in Chinatown.  At all times relevant to this suit, 17 Ludlow Street #7 New York, New York 10002 was owned by Chan & Sze Realty Incorporated ("Chan & Sze").  The StreetEasy listing advertised an "entire unit newly renovated," and stated that the property was listed by Century 21 New Golden Age.  The Century 21 New Golden Age representative who answered the phone identified herself as "Vera," confirmed the apartment was still available, and confirmed the rent was $1,850 per month.  When the tester asked if she could use her Section 8 Voucher, Vera replied "Oh, no."   Century 21 New Golden Age performed the complained-of actions on behalf of Chan & Sze, was authorized by Chan & Sze to act as an agent of Chan & Sze, and was acting as an agent of Chan & Sze Realty Incorporated at the time of the tester's inquiry.

123.    On November 26, 2019, an HRI tester, posing as a prospective renter, called a representative of Peter Chris Meskouris at (347) 407-0320 regarding an available apartment at 407 West 39th Street #W2B in Hudson Yards.  At all times relevant to this suit, 407 West 39th Street #W2B, New York, New York 10018 was owned by Hell's Kitchen, Inc.  The listing on StreetEasy advertised a "Fantastic studio" apartment for $1,999 and stated that the property was listed by Peter Meskouris.  The representative of Peter Chris Meskouris identified herself as "Perach" and confirmed the apartment was available.  When the tester inquired if she could use a Section 8 Voucher, Perach stated "Unfortunately, no."  The tester asked why and was told "I know that the owner doesn't accept that."  The representative of Peter Chris Meskouris performed the complained-of actions on behalf of Hell's Kitchen, Inc., was authorized by Hell's

29

Kitchen Inc. to act as an agent of Hell's Kitchen Inc., and was acting as an agent of Hell's Kitchen, Inc. at the time of the tester's inquiry.

124.    On February 4, 2020, an HRI tester, posing as a prospective renter, called a representative Peter Chris Meskouris at (347) 407-0320 regarding an available apartment at 407 West 39th Street #W3C in Hudson Yards.  At all times relevant to this suit, 407 West 39th Street #W3C New York, New York 10018 was owned by Hell's Kitchen, Inc.  The listing on StreetEasy advertised a "fantastic studio" apartment for $1,975 per month and stated that the property was listed by Peter Meskouris.  The representative from Peter Chris Meskouris did not identify herself but confirmed the apartment was available.  When the tester inquired if she could use a Section 8 Voucher at the property, the representative responded "Unfortunately, no." When the tester inquired why she could not use her voucher, the representative responded "I have no idea, this is the building policy."  The representative of Peter Chris Meskouris performed the complained-of actions on behalf of Hell's Kitchen, Inc., was authorized by Hell's Kitchen, Inc. to act as an agent of Hell's Kitchen Inc., and was acting as an agent of Hell's Kitchen, Inc. at the time of the tester's inquiry.

125.    On February 6, 2020, an HRI tester called a representative of Peter Chris Meskouris at (347) 407-0320 regarding an available apartment at 232 East 64th Street #14 in Lenox Hill.  At all times relevant to this suit, 232 East 64th Street #14, New York, New York 10065 was owned by Myerowtz/Satz Realty Corp ("Myerowtz/Satz").  The StreetEasy listing advertised a studio apartment with "lots of windows" and a "bright, full kitchen" for $2,050 per month, and stated that the property was listed by Peter Meskouris.  The broker from Peter Chris Meskouris did not identify herself but confirmed the apartment was available.  After a bit of conversation the broker recognized the tester from a previous call and asked if she planned to use

a voucher.  The broker than explained that it was the same owner as the previous property and

that he would not accept a voucher.  The representative of Peter Chris Meskouris performed the

complained-of actions on behalf of Myerowtz/Satz. was authorized by Myerowtz/Satz to act as

an agent of Myerowtz/Satz, and was acting as an agent of Myerowtz/Satz at the time of the

tester's inquiry.

126.    On December 3, 2019, an HRI tester, posing as a prospective renter, called PD

Properties LLC ("PD Properties") at (347) 404-3068 regarding an available apartment at 110

Mulberry Street #4 in Little Italy.  At all times relevant to this suit, 110 Mulberry Street #4 New

York, New York 10013 was owned by Smart Merchants Incorporated ("Smart Merchants").  The

StreetEasy listing advertised a one-bedroom apartment for $1,950 per month and stated that the

property was listed by PD Properties.  The PD Properties representative identified herself as

"Rita" and confirmed the apartment was still available.  When HRI's tester asked if the landlord

accepts Section 8, Rita replied "No."   PD Properties performed the complained-of actions on

behalf of Smart Merchants, was authorized by Smart Merchants to act as an agent of Smart

Merchants, and was acting as an agent of Smart Merchants at the time of the tester's inquiry.

127.    On December 17, 2019, an HRI tester, posing as a prospective renter, called

Columbus NY Real Estate Inc. ("Columbus NY") at (917) 589-7553 regarding a property at 34

Beekman Place #3C in Beekman.  At all times relevant to this suit, 34 Beekman Place #3C, New

York, New York 10022 was owned by Lions Gate New York LLC ("Lions Gate").  The

StreetEasy listing advertised a "Chic alcove studio apartment filled with natural light!" for

$2,000 per month and stated that the property was listed by Columbus NY.  HRI's tester spoke

with a Columbus NY representative who identified himself as "Rafael" and confirmed the

apartment was available. When HRI's tester inquired about using her Section 8 Voucher to help

31

her pay the rent, Rafael explained that the owner "prefers not to accept [Section 8]" because the benefits expire after a year.  When the tester inquired about her voucher getting renewed prior to it expiring, Rafael said "I'm not sure, it's just something we don't usually deal with."  Columbus NY performed the complained-of actions on behalf of Lions Gate, was authorized by Lions Gate to act as an agent of Lions Gate, and was acting as an agent of Lions Gate New York LLC at the time of the tester's inquiry.

128.   On January 14, 2020, an HRI tester, posing as a prospective renter, called Matthew Gros Werter at (917) 817-2917 regarding an available apartment at 780 Riverside Drive #D10 in Washington Heights.  At all times relevant to this suit, 780 Riverside Drive #D10, New York, New York 10032 was owned by 780 Riverside Owner LLC.  The listing on StreetEasy advertised a studio apartment for $1,850 per month with no broker's fee and stated that the property was listed by Matthew Gros Werter.  The representative from Matthew Gros Werter did not identify himself and confirmed the apartment was available.  When the tester inquired if the landlord would take a Section 8 Voucher, the broker stated "No.  Unfortunately no."  The representative from Matthew Gros Werter performed the complained-of actions on behalf of 780 Riverside Owner LLC, was authorized by 780 Riverside Owner LLC to act as an agent of 780 Riverside Owner LLC, and was acting as an agent of 780 Riverside Owner at the time of the tester's inquiry.

129.   On February 4, 2020, an HRI tester, posing as a prospective renter, called Atias Enterprises Inc. ("Atias") at (212) 684-5777 regarding an available apartment at 39 First Avenue #7 in the East Village.  At all times relevant to this suit, 39 First Avenue #7, New York, New York 10003 was owned by Park Row (1st Ave.) LTD ("Park Row").  The listing on StreetEasy advertised a two-room studio apartment for $2,025 per month and stated that the property was

listed by Atias.  The Atias representative who answered the phone did not identify herself but confirmed the apartment was available.  When the tester asked if the landlord accepts Section 8, the representative from Atias replied "it's not a Section 8 registered building."  Atias performed the complained-of actions on behalf of Park Row, was authorized by Park Row to act as an agent of Park Row, and was acting as an agent of Park Row at the time of the tester's inquiry.

130.     On February 4, 2020, an HRI tester called Voro LLC ("Voro") at (347) 613-1377 regarding an available apartment at 144-47 38th Avenue #1F in Murray Hill (Queens).  At all times relevant to this suit, 144-47 38th Avenue #1F Flushing, New York 11354 was owned by PSJ Holding LLC ("PSJ").  The StreetEasy listing advertised a "Large studio" apartment for $1,500 per month and stated that the property was listed by Voro.  In the initial call, the Voro representative did not identify herself and confirmed the apartment was available.  When the tester asked about using a Section 8 Voucher, the Voro representative offered to find out whether it could be used in this apartment.  The tester followed up with the Voro representative regarding whether the landlord would take her Section 8 Voucher and she replied "Oh, no.  They said no." Voro performed the complained-of actions on behalf of PSJ , was authorized by PSJ to act as an agent of PSJ, and was acting as an agent of PSJ at the time of the tester's inquiry.

131.     On February 5, 2020 an HRI tester called Winzone Realty Inc. ("Winzone") at (917) 863-2498 regarding an available apartment at 41-36 42nd Street #3C in Sunnyside, alternatively registered in New York City property records as 41-42 42nd Street.  The StreetEasy listing advertised a "Spacious 1 Bedroom" for $1,740 per month and stated that the property was listed by Winzone.  The Winzone representative did not identify herself but confirmed the apartment was available.  When HRI's tester explained she was hoping to use a Section 8

33

Voucher, the Winzone representative stated "Unfortunately, yeah, this landlord doesn't accept Section 8.  I'm sorry."

132.    On February 18, 2020, an HRI tester called Winzone at (917) 292-5686 regarding an available apartment at 75-62 113th Street #2C in Forest Hills.  At all times relevant to this suit, 75-62 113th Street #2C, Queens New York 11375 was owned by Ray-Hwa Lin and Jane H. Tseng.  The StreetEasy listing advertised a one-bedroom apartment for $1,800 per month and stated that the property was listed by Winzone.  The representative from Winzone did not identify herself but confirmed the apartment was available.  When the tester asked if she would be able to use her Section 8 Voucher, the representative from Winzone stated "No, we don't accept Section 8."  The tester inquired if there was a reason they did not take Section 8, and the representative stated "Yeah, because the owner, the landlord, has a very bad experience with a previous Section 8 customer.  They pay for one year and then they don't pay anymore . . . there's no way we can do anything."  Winzone performed the complained-of actions on behalf of Ray-Hwa Lin and Jane H. Tseng, was authorized by Ray-Hwa Lin and Jane H. Tseng to act as an agent of Ray-Hwa Lin and Jane H. Tseng, and was acting as an agent of Ray-Hwa Lin and Jane H. Tseng at the time of the tester's inquiry.

133.    On February 6, 2020, an HRI tester called Alexander Hidalgo Real Estate, LLC ("Alexander Hidalgo Real Estate") at (917) 539-0381 regarding an available apartment at 242 East 89th Street #1D in Yorkville.  At all times relevant to this suit, 242 East 89th Street #1D, New York, New York 10128 was owned by East 89th Associates, LLC ("East 89th Associates").  The StreetEasy listing advertised a studio apartment for $1,751 per month and stated that the property was listed by Alexander Hidalgo Real Estate.  The representative from Alexander Hidalgo Real Estate stated his name was "Harris."  When the tester inquired if the landlord

would accept Section 8, Harris replied "Oh no, she will not.  I can tell you that."  When the tester

inquired why the landlord does not accept Section 8, Harris responded "She just doesn't.  She

wants very well qualified people.  Listen, I represent the tenant, I want well qualified people . . .

I need to make sure that whoever I give him is well-qualified."  Alexander Hidalgo Real Estate

performed the complained-of actions on behalf of East 89th Associates, was authorized by East

89th Associates to act as East 89th's agent, and was acting as an agent of East 89th Associates,

LLC at the time of the tester's inquiry.

134.    On February 11, 2020, an HRI tester called Paley Management Corp. ("Paley") at

(212) 288-0050 regarding an available apartment at 1366 York Avenue #5D in Lenox Hill.  At

all times relevant to this suit, 1366 York Avenue #5D New York, New York 10021 was owned

by Mayet Realty Corp ("Mayet").  The StreetEasy listing advertised an "affordable, bright

studio" apartment for $1,950 per month with no broker's fee and stated that the property was

listed by Paley.  The broker who answered the phone at Paley did not identify herself but

confirmed the apartment was available.  When the tester inquired if the property would take her

voucher, the Paley representative responded "No, we don't have any of that."  Later in the

conversation the tester again inquired about the possibility of using her voucher and the

representative put her on hold to check.  When she returned, the representative told the tester

"We don't take vouchers."  The tester inquired if there was a reason why, and she was told "We

just don't.  We don't.  For any of our buildings."  Paley performed the complained-of actions on

behalf of Mayet,  was authorized by Mayet to act as Mayet's agent, and was acting as an agent of

Mayet at the time of the tester's inquiry.

135.    On February 18, 2020, an HRI tester called Natural Habitat Realty Inc. ("Natural

Habitat") at (917) 587-0778 regarding an available apartment at 251 West 15th Street #12 in

35

Chelsea.  At all times relevant to this suit, 251 West 15th Street #12, New York, New York 11214 was owned by Chelsea 251 LLC.  The StreetEasy listing advertised a "High Ceiling Studio Loft" for $1,950 per month and stated that the property was listed by Natural Habitat. The Natural Habitat representative who answered the phone did not identify himself but confirmed the apartment was available.  When the HRI tester inquired if the landlord would accept a Section 8 voucher at the property, the Natural Habitat representative replied "I don't think he's going to accept it."  The broker told HRI's tester that he would see if a different landlord in the Washington Heights neighborhood might accept her voucher but affirmed that it would not be accepted at this property.  Natural Habitat performed the complained-of actions on behalf of Chelsea 251 LLC, was authorized by Chelsea 251 LLC to act as an agent of Chelsea 251 LLC, and was acting as an agent of Chelsea 251 LLC at the time of the tester's inquiry.

136.    On February 19, 2020, an HRI tester called Home by Choice LLC at (917) 831-4744 regarding an available apartment at 13 Hamilton Terrace #2E in Hamilton Heights.  At all times relevant to this suit, 13 Hamilton Terrace #2E, New York, New York 10031 was owned by Hamilton Heights Associates, LLC ("Hamilton Heights").  The StreetEasy listing advertised a "LARGE BRIGHT STUDIO" for $1,875 per month and stated the property was listed by Home By Choice.  The Home By Choice representative identified herself as "Penelope" and confirmed the apartment was available.  When HRI's tester asked Penelope about using her voucher at the property, she replied "I don't think this landlord accepts Section 8.  He's not registered with, um, with the Section 8, um, HUD agency . . . so you would have to qualify financially."   Home by Choice LLC performed the complained-of actions on behalf of Hamilton Heights, was authorized by Hamilton Heights to act as an agent for Hamilton Heights, and was acting as an agent of Hamilton Heights at the time of the tester's inquiry.

137.    On February 19, 2020, an HRI tester called JRL-NYC, LLC ("JRL-NYC") at

(212) 470-2197 regarding an available apartment at 320 East 34th Street #5B in Kips Bay.  At all

times relevant to this suit, 320 East 34th Street #5B New York, New York 10016 was owned by

East 34th Street, LLC.  The StreetEasy listing advertised a "spacious and sun flooded" one-

bedroom apartment for $1,950 per month and stated that the property was listed by JRL-NYC.

The JRL-NYC representative identified herself as "Elena" and confirmed the apartment was

available.  When the tester inquired if she could use a Section 8 voucher at the property, Elena

replied "No, sorry."  When the tester asked if there was a reason she could not use her voucher,

the broker replied "They just don't take it."  JRL-NYC performed the complained-of actions on

behalf of East 34th Street, LLC, was authorized by East 34th Street, LLC to act as an agent for

East 34th Street, LLC, and was acting as an agent of East 34th Street, LLC at the time of the

tester's inquiry.

138.    On February 25, 2020, an HRI tester called (212) 665-0800, the number listed on

a StreetEasy posting advertising an available apartment at 315 West 121st Street #6 in South

Harlem.  At all times relevant to this suit, 315 West 121st Street #6, New York, New York 10027

was owned by Brittbran Realty, Inc ("Brittbran").  Upon information and belief, the number

called by the HRI tester was a representative of Brittban.  The StreetEasy listing advertised a

one-bedroom apartment for $1,776 per month with no broker's fee.  When the tester inquired

about using her Section 8 voucher, the broker responded "The only thing is with it, um, is that,

this building, the building for 315, we don't have the proper documents for Section 8 program . .

. we don't have, we have to get it updated, it takes months to do that. . . . we don't have the

proper documents right now for the building."  The representative of Brittbran performed the

complained-of actions on behalf of Brittbran, was authorized to act for Brittbran, and was acting

for Brittbran at the time of the tester's inquiry.

139.    On February 25, 2020, an HRI tester, posing as a prospective tenant, called

Manhattan Realty Group ("Manhattan Realty") at (917) 536-7916 regarding an apartment at 316

East 62nd Street #5RE in Lenox Hill.  At all times relevant to this suit, 316 East 62nd Street

#5RE, New York, New York, 10065 was owned by WeGro Realty Co ("Wegro"), which, upon

information and belief, is an affiliate of Metropolitan Property Services, Inc.  The StreetEasy

listing advertised a "Gorgeous studio" for $1,950 per month and stated that the property was

listed by Wegro.  The representative of Manhattan Realty who answered the phone did not

identify herself but confirmed the apartment was available.  When the tester inquired about using

a Section 8 Voucher, the Manhattan Realty representative stated:  "We do accept it, but for this

apartment, the owner is not going to accept it for this one in particular."  Manhattan Realty

Group performed the complained-of actions on behalf of WeGro, was authorized by Wegro to

act as an agent for Wegro, and was acting as an agent of WeGro at the time of the tester's

inquiry.

140.    On February 25, 2020, an HRI tester, posing as a prospective tenant, called JM

Preston Properties, LLC ("JM Preston") at (917) 254-5223 regarding an apartment at 1369 First

Avenue #4C in Lenox Hill.  At all times relevant to this suit, 1369 First Avenue #4C, New York,

New York 10021 was owned by 1369 First Avenue, LLC.  The StreetEasy listing advertised a

"Sunny and spacious studio apartment" for $1,895 per month and stated the property was listed

by JM Preston.  The JM Preston representative who answered the phone identified herself as

"Jennifer" and confirmed the apartment was available.  When the tester asked if she could use

her Section 8 voucher, Jennifer replied "Uh no, unfortunately not with this landlord."  JM

Preston performed the complained-of actions on behalf of 1369 First Avenue, LLC, was authorized by 1369 First Avenue, LLC to act as an agent for 1369 First Avenue, LLC, and was acting as an agent of 1369 First Avenue, LLC at the time of the tester's inquiry.

141.    On February 26, 2020, an HRI tester, posing as a prospective tenant, called a representative of 931-955 Coney Island Ave. LLC at (917) 974-5299 regarding an available apartment at 955 Coney Island Avenue #209 in Ditmas Park.  At all times relevant to this suit, 955 Coney Island Avenue #209, Brooklyn, New York 11230 was owned by 931-955 Coney Island Ave. LLC.  The StreetEasy listing advertised a "Beautiful luxury" one-bedroom apartment for $1,900 per month.  The representative who answered the phone confirmed the apartment was available but did not identify herself.  When the HRI tester asked if she would be able to use her Section 8 Voucher, the representative replied "We don't take that, sorry."  The HRI tester inquired if there was a reason that her voucher would not be accepted, and the 931-955 Coney Island Ave. LLC representative affirmed "We don't take it."

142.    On March 3, 2020, an HRI tester, posing as a prospective tenant, called Best Move Realty at (646) 948-4222 regarding an apartment at 48-12 46th Street #33 in Sunnyside. At all times relevant to this suit, 48-12 46th Street #33, Woodside, New York 11377 was owned by Fortune Gardens, Inc ("Fortune Gardens").  The StreetEasy listing advertised a rent-stabilized junior one-bedroom apartment for $1,550 per month at stated that the property was listed by Best Move Realty.  The representative who answered the phone at Best Move Realty identified herself as "Latifa" and confirmed the apartment was available.  When the HRI tester asked if she could use a Section 8 Voucher, Latifa replied "No, no.  There is no programs accepted.  Sorry." Best Move Realty performed the complained-of actions on behalf of Fortune Gardens, was

authorized by Fortune Gardens to act as an agent for Fortune Gardens, and was acting as an agent of Fortune Gardens at the time of the tester's inquiry.

143.    On March 17, 2020, an HRI tester, posing as prospective tenant, called Urban Real Estate Property Group, Inc. ("Urban Real Estate") at (347) 323-8542 regarding an apartment at 348 East 62nd Street #6FRONT in Lenox Hill.  At all times relevant to this suit, 348 East 62nd Street #6FRONT, New York, New York 10065 was owned by 348 East 62nd LLC. The StreetEasy listing advertised an "EXTRA LARGE 1BR" for $1,795 per month and stated that the property was listed by Urban Real Estate.  The representative who answered the phone at Urban Real Estate identified herself as "Erin" and confirmed the apartment was available.  When the tester asked if she could use a Section 8 Voucher at the property, Erin replied "Well, this landlord isn't really, like, you know, doesn't really do it.  But I know that my friend that I work with, she said that she knows, I think, some landlords that do. . . .".  Urban Real Estate performed the complained-of actions on behalf of 348 East 62nd LLC, was authorized by 348 East 62nd LLC to act as an agent for 348 East 62nd LLC, and was acting as an agent of 348 East 62nd LLC at the time of the tester's inquiry.

144.    On March 17, 2020, an HRI tester, posing as a prospective tenant, called Jan Reynolds Real Estate at (646) 220-2325 regarding an available apartment at 328 West 83rd Street #6G on the Upper West Side.  At all times relevant to this suit, 328 West 83rd Street #6G, New York, New York 10024 was owned by 83rd Street Associates LLC.  The StreetEasy listing advertised a "recently-renovated studio" for $1,925 per month and stated that the property was listed by Jan Reynolds Real Estate.  The representative at Jan Reynolds Real Estate did not identify herself but confirmed the apartment was available.  The Jan Reynolds Real Estate broker stated the landlord was "picky as hell."  When the tester asked about using her Section 8

voucher, the representative replied there was "not a hope in hell."  She later stated "they don't do vouchers."  A second HRI tester called Jan Reynolds Real Estate at (646) 22-2325 regarding the apartment at 328 West 83rd Street #6G on the Upper West Side and confirmed it was available. When she asked about using a Section 8 Voucher, she was told "these people don't do vouchers."  Later in the conversation, the Jan Reynolds Real Estate representative said "I'm sure they don't take vouchers."  Jan Reynolds Real Estate performed the complained-of actions on behalf of 83rd Street Associates LLC, was authorized by 83rd Street Associates LLC to act as an agent for 83rd Street Associates LLC, and was acting as an agent of 83rd Street Associates LLC at the time of the tester's inquiry.

145.    On March 19, 2020, an HRI tester, posing as a prospective tenant, called FirstService Realty NYC, Inc. ("FirstService Realty") at (347) 466-3812 regarding an apartment listed at 1594 Third Avenue #5C in Carnegie Hill.  At all times relevant to this suit, 1594 Third Avenue #5C, New York New York 10128 was owned by Tenth Manhattan Corp.  The StreetEasy listing advertised a studio apartment for $2,000 per month and stated the property was listed by FirstService Realty.  The representative of FirstService Realty who answered the phone did not identify himself but confirmed the apartment was available.  When the tester inquired about using her Section 8 Voucher, the FirstService Realty representative said "No, no, no, this one actually they're pretty strict.  We need, uh, no guarantors or no anything."  When the tester asked if they might be able to work with her given the need to find housing during the pandemic, the representative replied "They're pretty strict in this building.  Anywhere, really, in the city." FirstService Realty performed the complained-of actions on behalf of Tenth Manhattan Corp., was authorized by Tenth Manhattan Corp. to act as an agent for Tenth Manhattan Corp., and was acting as an agent of Tenth Manhattan Corp. at the time of the tester's inquiry.

146.     On May 20, 2020, an HRI tester, posing as a prospective tenant, called 3Location3.Co Realty, LLC ("3location3") at (917) 804-0692 regarding an advertised apartment at 469 Clinton Avenue #12 in Clinton Hill.  At all times relevant to this suit, 469 Clinton Avenue #12, Brooklyn, New York 11238 was owned by 469 Clinton Ave Realty LLC.  The StreetEasy listing advertised a "rent stabilized studio" for $1,403 per month and stated the property was listed by 3location3.  The representative of 3location3 who answered the phone did not identify herself but confirmed the apartment was available.  When the tester inquired if she would be able to use her Section 8 Voucher, the representative from 3location3 stated "No.  She won't take any programs whatsoever, the owner.  And they won't take two people in a studio."  When the tester asked the representative if she could work with her because it was urgent as she and her daughter were in a shelter, the representative replied "Yeah, I'm a broker.  It's the owner.  She won't take any programs.  She doesn't take them in any of her buildings . . . I can tell you this one won't work for you."  3Location3 performed the complained-of actions on behalf of 469 Clinton Ave Realty LLC, was authorized by 469 Clinton Ave Realty LLC to act as agent for 469 Clinton Ave Realty LLC, and was acting as an agent of 469 Clinton Ave Realty LLC at the time of the tester's inquiry.

147.     On May 26, 2020, an HRI tester, posing as a prospective tenant, called 718 Realty Inc. ("718 Realty") (917) 523-1625 regarding an advertised apartment at 87-15 37th Avenue #2H in Jackson Heights.  At all times relevant to this suit, 87-15 37th Avenue #2H, Jackson Heights, New York 11372 was owned by Double A Property Associates – Creston Arms LLC ("Double A Property").  The StreetEasy listing advertised a "large studio" for $1,600 monthly rent and stated the property was listed by 718 Realty.  The representative of 718 Realty did not identify herself, but confirmed the apartment was available.  When the tester asked if she would be able to use a

Section 8 Voucher at the property, the 718 Realty representative replied "Oh, that is a no for that unit.  The landlord doesn't accept that," and then proposed she look at a different property she knew of where the landlord did accept section 8.  718 Realty performed the complained-of actions on behalf of Double A Property, was authorized by Double A Property to act as an agent for Double A Property, and was acting as an agent of Double A Property at the time of the tester's inquiry.

148.    On May 28, 2020, an HRI tester, posing as a prospective renter, called Best Service Realty Corp. ("Best Service") at (917) 535-4487 regarding an available apartment at 33-14 34th Avenue #3 in Astoria.  At all times relevant to this suit, 33-14 34th Avenue #3, Queens, New York, 11106 was owned by Chandler Management, LLC.  The StreetEasy listing advertised a renovated one-bedroom apartment for $1,825 per month and stated that the property was listed by Best Service.   The representative from Best Service did not identify herself but confirmed the apartment was available.  When the tester informed the representative that she had a Section 8 Voucher, the Best Service representative said "This building doesn't take, uh, programs."  When the tester informed the representative that she was in dire need of housing to get herself and her daughter out of the shelter during the pandemic, she and the broker engaged in additional conversation about the voucher.  The broker again stated:  "This apartment wouldn't work out for you because the building doesn't take programs," and offered to let the tester know if she comes across an apartment that would accept a voucher.  Best Service performed the complained-of actions on behalf of Chandler Management, LLC, was authorized by Chandler Management, LLC to act as an agent for Chandler Management LLC, and was acting as an agent of Chandler Management, LLC at the time of the tester's inquiry.

149.    On June 4, 2020, an HRI tester, posing as a prospective renter, called MTY

Group, Inc. ("MTY Group") at (201) 657-1991 regarding an apartment at 164-18 43rd Avenue

#1 in Flushing.  At all times relevant to this suit, 164-18 43rd Avenue, Flushing, NY 11358 was

owned by 165th St. Realty, LLC.  The StreetEasy listing described it as a one-bedroom

apartment for $1,650 per month and stated the property was listed by MTY Group.  The

representative from MTY Group did not identify himself and confirmed the apartment was

available.  When the tester inquired if she could use her Section 8 Voucher, the MTY Group

representative replied "I'm sorry, we don't take Section 8 Vouchers."  When the tester informed

the representative that she was in dire need of housing to get herself and her daughter out of the

shelter during the pandemic, the representative replied "Unfortunately, I already asked . . . the

owner about . . . the vouchers, because the corona situation, but still, yeah, he doesn't want it."

MTY Group performed the complained-of actions on behalf of 165th St. Realty, LLC, was

authorized by 165th St. Realty to act as an agent for 165th St. Realty, and was acting as an agent

of 165th St. Realty, LLC at the time of the tester's inquiry.

150.    On June 11, 2020, an HRI tester, posing as a prospective renter, called Charie

Properties LLC ("Charie Properties") at (305) 431-9307 regarding an apartment at 532 Ninth

Avenue #1B in Hudson Yards.  At all times relevant to this suit, 532 Ninth Avenue #1B, New

York, New York 10018 was owned by Eleben Yau Mei Wong 532 LLC ("EYMW").  The

StreetEasy listing advertised a rent-stabilized one-bedroom apartment for $1,699 per month and

stated the property was listed by Charie Properties.  When the tester called the broker, it went to

voicemail instructing her to send a text message.  The tester then messaged the (305) 431-9307

number and began a conversation with "Paul."  The tester confirmed the apartment was

available, but when she inquired if she could use her Section 8 Voucher, she was told "At this

time, I don't think so."  Charie Properties performed the complained-of actions on behalf of EYMW, was authorized by EYMW to act as an agent of EYMW, and was acting as an agent of EYMW at the time of the tester's inquiry.

151.    On June 25, 2020, an HRI tester, posing as a prospective renter, called Alpine Realty at (917) 854-7443 regarding an apartment at 785 Ocean Parkway #E6 in Midwood.  At all times relevant to this suit, 785 Ocean Parkway #E6, Brooklyn, New York 11230 was owned by Verga Associates LLC.  The StreetEasy listing advertised a "Beautiful one bedroom" apartment for $1,800 per month and stated the property was listed by Alpine Realty.  When the tester called the broker, the individual she spoke with did not identify herself.  The tester confirmed the apartment was available and that she had an acceptable credit score, but when she inquired if she could use her Section 8 Voucher, the Alpine Reality representative replied "Uh, no, no, he doesn't--he's not in that--no, I'm sorry, not right now."  Alpine Realty performed the complained-of actions on behalf of Verga Associates LLC, was authorized by Verga Associates LLC to act as an agent of Verga Associates LLC, and was acting as an agent of Verga Associates LLC at the time of the tester's inquiry.

152.    On June 30, 2020, an HRI tester, posing as a prospective renter, called Maz Group NY LLC ("Maz") at (917) 880-9844 regarding an apartment at 449 West 56th Street #2B in Hell's Kitchen.  At all times relevant to this suit, 449 West 56th Street #2B, New York, New York 10022 was owned by 449 West 56th Associates L.P.  The StreetEasy listing advertised a "Rent Stabilized Spacious studio" for $1,830 per month and stated the property was listed by Maz.  The representative who answered the phone from Maz identified herself as "Donna." Donna confirmed the apartment was available, but when the tester inquired if she could use her Section 8 Voucher, Donna stated:  "I don't believe so, no."  Maz performed the complained-of

actions on behalf of 449 West 56th Associates L.P., was authorized by 449 West 56th Street

Associates L.P. to act as an agent of 449 West 56th Street Associates L.P., and was acting as an

agent of 449 West 56th Associates L.P. at the time of the tester's inquiry.

153.    On July 28, 2020, an HRI tester, posing as a prospective renter, called R New

York Real Estate LLC ("R New York") at (646) 397-7711 regarding an apartment at 209

Madison Street #2B in Two Bridges.  At all times relevant to this suit, 209 Madison Street #2B

New York, New York was owned by Gim Realty LLC.  The StreetEasy listing advertised an

"AMAZING, 1 BEDROOM NEWLY RENOVATED" with no broker's fee for $1,950 per

month and stated that the property was listed by R New York.  The representative who answered

the phone did not identify herself but confirmed the apartment was available.  When the tester

inquired if she would be able to use her Section 8 Voucher, the representative replied "Uh, no.

Voucher, no, honestly."  R New York Real Estate LLC performed the complained-of actions on

behalf of Gim Realty LLC, was authorized by Gim Realty LLC to act as an agent of Gim Realty,

LLC, and was acting as an agent of Gim Realty LLC at the time of the tester's inquiry.

154.    On August 6, 2020, an HRI tester, posing as a prospective renter, called Orchard

Plaza LLC ("Orchard Plaza") at (917) 374-7944 regarding an apartment at 38 Orchard Street #3F

in Chinatown.  As all times relevant to this suit, 38 Orchard Street #3F New York, New York

10002 was owned by Orchard Plaza.  The StreetEasy listing advertised a "Beautiful Sun Filled

Full Renovated Studio" with no broker's fee for $1,699 per month and stated the property was

listed by Orchard Plaza.  The representative who answered the phone from Orchard Plaza did not

identify himself.  When the tester asked if she would be able to use her Section 8 Voucher, the

Orchard Plaza representative told her "They won't allow that, they won't allow that" and hung

up the phone.

155.     On August 11, 2020, an HRI tester, posing as a prospective renter, called Rentiko Inc. ("Rentiko") at (718) 753-8161 regarding an apartment at 30-95 30th Street #1B in Astoria. At all times relevant to this suit, 30-95 30th Street #1B Astoria, New York 11102 was owned by 3095 30 LLC.  The StreetEasy listing advertised an "Absolutely beautiful 1 bedroom apartment" for $1,850 per month and stated the property was listed by Rentiko.  The representative who answered the phone at Rentiko did not identify herself but confirmed the apartment was available.  When the tester asked if she would be able to use a Section 8 Voucher, the Rentiko representative replied "Uh, no, sorry.  This landlord does not work with programs."  Rentiko Inc. performed the complained-of actions on behalf of 3095 30 LLC, was authorized by 3095 30 LLC to act as an agent of 3095 30 LLC,  and was acting as an agent of 3095 30 LLC at the time of the tester's inquiry.

156.     On August 12, 2020, an HRI tester, posing as a prospective renter, called Avenue Real Estate LLC ("Avenue") at (917) 363-6816 regarding an apartment at 165 Hester Street #5B in Little Italy.  At all times relevant to this suit, 165 Hester Street #5B, New York, New York 10013 was owned by 165 Hester Corporation.  The StreetEasy listing advertised a "Charming Courtyard Studio" for $1,700 per month and stated the property was listed by Avenue.  The representative from Avenue did not identify herself, but confirmed the apartment was available. When the tester asked about using her Section 8 Voucher at the property, the representative from Avenue said she was not familiar with it and would need to talk to the landlord.  The Avenue representative followed up by text message:  "Landlord will not accept section 8.  Sorry". Avenue performed the complained-of actions on behalf of 165 Hester Corporation, was authorized by 165 Hester Corporation to act as an agent of 165 Hester Corporation, and was acting as an agent of 165 Hester Corporation at the time of the tester's inquiry.

157.    On August 12, 2020, an HRI tester, posing as a prospective renter, called Saldo Properties, LLC ("Saldo Properties") as (917) 882-4714 regarding an apartment at 1380 First Avenue #3H in Lenox Hill.  At all times relevant to this suit, 1380 First Avenue #3H, New York, New York 10021 was owned by 1380 First Owners Co., L.P.  The StreetEasy listing advertised a studio for $2,000 per month and stated the property was listed by Saldo Properties.The representative who answered the phone at Saldo Properties identified himself as "Ignazio" and confirmed the apartment was available.  In their first call, Ignazio stated he "wasn't sure" if the building allowed Section 8, but would confirm.  On August 13, 2020, the tester called back to inquire about her voucher, and Ignazio stated "Actually, they don't allow it in that building." Saldo Properties performed the complained-of actions on behalf of 1380 First Owners Co., L.P., was authorized by 1380 First Owners Co. L.P. to act as an agent of 1380 First Owners Co., L.P., and was acting as an agent of 1380 First Owners Co., L.P. at the time of the tester's inquiry.

158.    As alleged herein, the refusals to accept vouchers were pervasive and egregious, ranging from flat-out refusals to denigrating remarks about the worthiness of voucher holders as tenants.

159.    Upon information and belief, and based on the statements Defendants and their representatives made to HRI testers during the calls described above, Defendants have policies or practices of refusing to accept Housing Choice Vouchers at the Subject Properties, which Defendants are the brokers for, own, or manage.

160.    By their acts, policies, and practices, Defendants refuse to rent to individuals who intend to use Housing Choice Vouchers at their rental properties.  In doing so, Defendants unlawfully discriminate against renters in New York City based on their source of income.

48

161.     Because vouchers are allocated disproportionately to Black and Hispanic New York City residents and New York City residents with disabilities, this form of source-of-income discrimination disproportionately and adversely impacts prospective Black and Hispanic tenants as well as those with disabilities.

162.      Upon information and belief, Defendants and/or their owners, subsidiaries, and affiliates designed, participated in, supervised, controlled, and/or approved the discriminatory policy or practice the representative or representatives expressed on the phone calls and/or in the text messages described above.  As a result, each of the Defendants is liable for the unlawful conduct described herein.

163.     Defendants' unlawful acts as described above were, and are, intentional and willful, and have been, and are, implemented with callous and reckless disregard for the statutorily protected rights of renters who intend to use Housing Choice Vouchers as a source of income to help pay for the rent.

**C.  Defendants' "No Vouchers" Policy Constitutes Unlawful Discrimination against Disabled New Yorkers on the Basis of Disparate Impact**

164.     Facially neutral housing practices that have a disparate impact on the basis of disability or race are prohibited by the Fair Housing Act unless they are necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice.  Defendants' policy of automatically denying housing to any person with a voucher is not only illegal under New York City and State law, it also has a disparate impact on the basis of both disability and race.

165.     A strong link exists between the Housing Choice Voucher population and the disabled population, such that a policy that adversely affects voucher holders will likewise have a significant disproportionate effect on New York City's disabled population.  A large number of

disabled New Yorkers rely on Housing Choice Vouchers to obtain housing. In addition to the

tens of thousands of New Yorkers who are able to obtain the scarce vouchers in programs set

aside solely for individuals in New York City with disabilities, including HASA, OHM and

others — all of whom would also likely be barred from housing in Defendants' properties —

there are approximately 80,500 disabled New York City residents who use Section 8 Housing

Choice Vouchers to obtain housing, or, 9.2% of New York City's entire disabled population. By

comparison, just 2.8% of New York City's non-disabled population uses a Section 8 Housing

Choice Voucher.

166.    By denying all New Yorkers with Housing Choice Vouchers the opportunity to

apply for and obtain housing in their buildings, each Defendant's policy prevents 9.2% of New

York City's disabled population from applying for or obtaining housing in Defendants'

buildings, while preventing just 2.8% of New York City's non-disabled population from

applying for or obtaining housing in their buildings.  Disabled New York City residents are 3.3

times more likely than non-disabled New York City residents to be adversely affected by

Defendants' policies.

167.    Viewed from another perspective, any single voucher-holder is much more likely

to be disabled than an individual in the general population.  Some 28% of the New York City

residents who use Housing Choice Vouchers to pay for housing have a disability.  By

comparison, just 9.8% of New York City's non-voucher holders has a disability.  A voucher-

holder is 2.9 times more likely to be disabled than a non-voucher holder.

168.    Overall, Defendants' policies affect disabled New York City residents in a

significantly disproportionate way.  As a result of Defendants' no-voucher policies, disabled

New York City residents are significantly more likely than non-disabled New York City residents to be barred from Defendants' properties.

### D.  Defendants' "No Vouchers" Policy Constitutes Unlawful Discrimination against Black and Hispanic New Yorkers on the Basis of Disparate Impact

169.    The disparate impact of Defendants' policy on Black and Hispanic New Yorkers is similarly severe.  More than 80% of New York City's voucher-holders are Black or Hispanic and depend on a Housing Choice Voucher to pay for housing.  About 35% of voucher-holder heads-of-households are Black, and 47% heads-of-households are Hispanic.  Assuming that overall household racial composition approximates the race of heads-of-households, about 100,600 Black New York City residents, or 5.5% of all Black New Yorkers, rely on a Housing Choice Voucher for housing, and 135,140 Hispanic New York City residents, or 5.5% of all Hispanic New Yorkers, rely on a Housing Choice Voucher for housing.  By comparison, just 46,006 white New York City residents, or 1.7% of all white New York City residents, use a Housing Choice Voucher to obtain housing.

170.    Because there is a strong link between the Housing Choice Voucher population and the Black and Hispanic population, a policy that adversely affects voucher holders will likewise have a significant disproportionate effect on New York City's Black and Hispanic population.  Defendants' ban on Housing Choice Vouchers, by denying all New Yorkers with vouchers the opportunity to apply for and obtain housing in their buildings, prevents 5.5% of all Black New York City residents from securing housing in Defendants' buildings, and 5.5% of all Hispanic New York City residents from securing housing, while only preventing 1.7% of white New Yorkers from obtaining housing.  Overall, Black and Hispanic New York City residents are 3.2 times more likely than white New York City residents to be adversely affected by Defendant's policy.

171.     Understood differently, voucher-holders are much more likely to be Black or Hispanic than non-voucher holders in New York.  Some 35% of New York City's voucher-holders are Black, and 47% are Hispanic, or a total of 82% of the City's voucher-holding population is Black or Hispanic.  By comparison, just 21% of New York City's general, non-voucher population is Black, 29% New York City's, non-voucher population is Hispanic, for a total of 50% of the general population is Black or Hispanic.  Voucher-holders are thus 1.6 times more likely to be Black or Hispanic than non-voucher holders.

172.     Conversely, voucher-holders are much less likely to be white than non-voucher holders. Just 16% of New York City voucher-holders are white, while 32% of the general population in New York City is white.

173.     Overall, Defendants' policies affect Black and Hispanic New York City residents in a significantly disproportionate way.  As a result of Defendants' no-voucher policies, Black and Hispanic New York City residents are significantly more likely than white New York City residents to be barred from Defendants' properties.

**E.  Effect of Defendants' Discriminatory Policy**

174.     Because of voucher bans like those enforced by Defendants, it is extremely difficult for families with Housing Choice Vouchers to obtain housing.  As New Yorkers with vouchers are well aware, according to HUD, "[i]t takes a lot of work to find housing with a voucher. The search requires sifting through numerous advertisements, making numerous calls, and facing frequent rejection."[4]  Low-income New Yorkers with vouchers, predominantly Black or Hispanic, and disproportionately likely to have disabilities, are frequently forced to stay in

---

[4] U.S. Department of Housing and Urban Development, Office of Policy Development and Research, *A Pilot Study of Landlord Acceptance of Housing Choice Vouchers* (2018)

homeless shelters for years,[5] despite possessing the means to pay for integrated housing on the open market. The challenges are more acute in New York City than nearly any other jurisdiction.[6]

175.    Defendants' discriminatory policies contribute to racial and socioeconomic segregation in New York City.

176.    Defendants' discriminatory policies result in a substantial decrease in the inventory of safe and affordable housing available to low income tenants.

177.    Defendants' properties are located in neighborhoods that are disproportionately white and disproportionately wealthy compared to typical voucher holders.  The average median income in the neighborhoods where Defendants' properties are located, based on community district, is $93,200.  The average racial makeup in Defendants' neighborhoods is 51% white, 9% Black, and 19% Hispanic.

178.    By comparison, the average income of a Section 8 voucher holder in New York City, including government assistance, is about $18,700. About 35% of Section 8 voucher holders are Black and 47% are Hispanic, while just 16% are white.

179.    The typical resident in Defendants' neighborhoods is thus much wealthier and much more likely to be white than a typical voucher holder.

180.    Voucher holders who are unable to obtain housing in Defendants' neighborhoods as a result of Defendants' discriminatory policy instead obtain housing in poorer, disproportionately minority neighborhoods, if they are able to find housing at all.

---

[5] See, e.g., VOCAL-NY and TakeRoot Justice, *Vouchers to Nowhere: How Source of Income Discrimination Happens and the Policies That Can Fix It* (2020).
[6] U.S. Dep't of Housing and Urban Development, *Study on Section 8 Voucher Success Rates* (2001) (last HUD study of voucher success rates in New York, finding that only 57% of voucher-holders in New York City in the year 2000 succeeded in obtaining an apartment).

181.    The effect of Defendants' policy is to worsen racial and socioeconomic segregation by imposing disproportionate burdens on non-white, low-income New Yorkers seeking to move to integrated neighborhoods, and cut off opportunities for needy families by relegating families to segregated areas of the City.

182.    The result of voucher rejection is racial segregation and the high concentration of voucher-holders in high-poverty neighborhoods in New York City.  The high concentration of voucher-holders in high-poverty neighborhoods undermines the purpose of the Housing Choice Voucher program: to increase mobility and opportunity, deconcentrate poverty, and diminish racial segregation.

183.    Defendants' policies harm the individuals in the communities that HRI serves and rupture the fabric of New York City.

## HARM TO HRI AND THE COMMUNITIES IT SERVES

184.    Defendants' unlawful conduct has harmed HRI and the communities that it serves.

185.    Since its founding, a core part of HRI's mission has been preserving affordable housing in New York City and assisting tenants in securing and maintaining access to affordably priced housing.  It has historically done this by counseling and organizing tenants in New York City about their rights to affordable housing and transparency by landlords, such as rights guaranteed by rent-stabilization laws, tax reporting requirements and other laws.   HRI further assists tenants by referring them to legal counsel who advises them of their legal options and brings legal actions against landlords who seek to evade these affordable housing laws and reporting requirements.

186.    Through HRI's counseling, organizing and referral efforts, it has successfully and substantially increased the inventory of affordably-priced housing in the City when the tenants who it counsels and organizes are able to secure agreements with landlords around the City ensuring that units will be affordably priced.

187.    These gains, however, have been jeopardized and offset by an epidemic of source-of-income discrimination around the City, including the discriminatory policies of the Defendants alleged herein.  Beginning in 2017, HRI began hearing from its community partners that widespread source of income discrimination in New York City's housing markets threatened to worsen the affordable housing crisis by placing thousands of otherwise affordable housing off limits to low-income tenants with vouchers.

188.    As a result, HRI was compelled to divert hundreds of hours of time and scarce financial resources to fully investigate and identify the extent of housing providers' unlawful source-of-income-discrimination practices through its testing program and to determine how to counteract them.  HRI employed a testing program to monitor compliance with federal, state, and local civil rights laws that prohibit discrimination against members of legally protected classes—including race, disability, religion, national origin, gender, family status, and source of income, among others.  When HRI found Defendants were engaged in source-of-income discrimination, it was required to divert scarce resources to address the problem through education and outreach, advocacy, training, collaboration and, if necessary, enforcement.  This diversion and expenditure of resources has come in several forms as described below.

189.    Because it is not only important to remedy past discrimination, but to take steps to prevent similar future discrimination from occurring, the activities used in this effort have also included outreach and education directed at affected or potentially affected populations, the

public at large, enforcement agencies and the owners and employee of the entities engaged in the discriminatory activity.

190.    In response to HRI's investigation, HRI was compelled to divert hundreds of hours of resources to an extensive education and outreach campaign to the affected communities in an effort to combat Defendants' discrimination.  This included:

- creating and providing know-your-rights material to hundreds of schools, churches, community boards and other local partners informing them of the rights of prospective tenants and the responsibilities of landlords and brokers concerning source-of-income discrimination;

- creating and publishing website content for HRI's website about source of income discrimination;

- communicating with the New York State Division on Human Rights to discuss HRI's findings and how the State could combat these violations;

- outreach to local elected officials to discuss HRI's findings; and

- outreach directly to the Defendants to educate them about their responsibilities as landlords and brokers.

Not including the time spent investigating using testers, HRI's staff expended more than 240 hours on education and outreach.

191.    Defendants' discriminatory policies and practices have diverted HRI's resources away from its organizing, counseling and referral services in order to address the rampant source of income discrimination that is epidemic in New York City.  For example, during 2020 and 2021, HRI had expected to organize and counsel a sufficient number of tenants such that at least 2,000 housing units across New York City would be returned to affordability as a result of HRI's

efforts.  Instead, HRI was forced to spend resources combatting Defendants' source of income discrimination, causing HRI to fall approximately 50% short of its goal.

192.    If HRI had not been required to divert such resources to address Defendants' discrimination, HRI would have used those resources to further its efforts to preserve and maintain affordable housing, including its counseling, organizing and referral of tenants who have been overcharged and subject to other fraudulent practices by their landlords that have resulted in unaffordable housing.  This diversion has reduced the impact of HRI's affordable housing advocacy, as well as adversely impacted HRI's ability to engage in its other programmatic activities.

193.    If HRI did not engage in activities to combat Defendants' source-of-income-discrimination policies and practices, HRI's successes in maintaining and preserving affordable housing in New York City would be rolled back, due to the resulting reduced inventory of affordable housing available to low-income residents of New York City caused by Defendants' source-of-income discrimination.

194.    Prior to and at the time of filing this action, Defendants' wrongdoing has injured, injures, and—if left unaddressed—will continue to injure HRI by frustrating its mission to promote fair housing opportunities and preserve and maintain affordable housing in New York City, and will require HRI to continue to divert its efforts and programming to combat practices that deny housing opportunities to voucher holders, preventing HRI from continuing its other counseling, organizing and referral efforts on behalf of tenants.

195.    Defendants' discriminatory policies and practices have had the effect of reducing the available inventory of safe and affordable housing around the City, leading to an increased demand and need for HRI's organizing, counseling and referral services.

## FIRST CLAIM FOR RELIEF
### (Fair Housing Act:  42 U.S.C. § 3604(f)(1))

196.    Plaintiff restates and incorporates the preceding paragraphs as if fully set forth herein.

197.    The Subject Properties are units that are occupied by, or designed or intended to be occupancy as, residences by one or more families.  As a result, the Subject Properties are "dwelling[s]" within the meaning of the FHA.  42 U.S.C. § 3602(b).

198.    The FHA makes it unlawful to "discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter" because of disability.  42 U.S.C. § 3604(f)(1).

199.    Liability may be established under the FHA "based on a practice's discriminatory effect . . . even if the practice was not motivated by a discriminatory intent."  24 C.F.R. § 100.500.

200.    Defendants illegally discriminated against individuals with disabilities by making unavailable or denying apartments for rent because of disability, including, but not limited to, refusing to: (a) provide information about apartments available for rent; (b) show apartments available for rent; (c) consider applications from individuals using Housing Choice Vouchers.

201.    Defendants' policy or practice or refusing to accept Housing Choice Vouchers towards rent at the Subject Properties has a discriminatory effect on disabled individuals because it actually or predictably results in a disparate impact on disabled individuals.  *See* 42. U.S.C. § 3604(f); 24 C.F.R. § 100.500(a).

202.    To HRI's knowledge, Defendants have no justification for their policy or practice of refusing access to Housing Choice Voucher holders or for their statements expressing such policy or practice.  Defendant's policy or practice is not necessary to achieve any legitimate,

nondiscriminatory interest.  Even if Defendants could claim such an interest, that interest could

be served by another policy or practice with less discriminatory effect.

203.    Defendants' intentional and willful policy and practice of refusing to accept

housing vouchers has been taken in disregard for the rights of others and has had a disparate

impact on individuals with disabilities.

204.    As a result of Defendants' wrongful conduct, HRI has been injured by a

discriminatory housing practice and is therefore an "aggrieved person," as defined by the FHA,

42 U.S.C. § 3602(i)(1).

### SECOND CLAIM FOR RELIEF
#### (Fair Housing Act:  42 U.S.C. § 3604(a))

205.    Plaintiff restates and incorporates the preceding paragraphs as if fully set forth

herein.

206.    The Subject Properties are units that are occupied by, or designed or intended to

be occupancy as, residences by one or more families.  As a result, the Subject Properties are

"dwelling[s]" within the meaning of the FHA.  42 U.S.C. § 3602(b).

207.    The FHA makes it unlawful to refuse to rent or sell housing or refuse to negotiate

for the rental of housing, or otherwise make housing unavailable because of race and/or national

origin.  42 U.S.C. § 3604(a).

208.    Liability may be established under the FHA "based on a practice's discriminatory

effect . . . even if the practice was not motivated by a discriminatory intent."  24 C.F.R. §

100.500.

209.    Defendants' act, policies, and practices constitute a refusal to rent housing or

negotiate for the rental of housing because of race and/or national origin by refusing to: (a)

provide information about apartments available for rent; (b) show apartments available for rent; (c) consider applications from individuals using Housing Choice Vouchers.

210.     Defendants' policy or practice or refusing to accept Housing Choice Vouchers towards rent at the Subject Properties has a discriminatory effect on African Americans and Hispanic Americans because it actually or predictably results in a disparate impact on them. *See* 42. U.S.C. § 3604(a); 24 C.F.R. § 100.500(a).

211.     To HRI's knowledge, Defendants have no justification for their policy or practice of refusing access to Housing Choice Voucher holders or for their statements expressing such policy or practice.  Defendant's policy or practice is not necessary to achieve any legitimate, nondiscriminatory interest.  Even if Defendants could claim such an interest, that interest could be served by another policy or practice with less discriminatory effect.

212.     Defendants' intentional and willful policy and practice of refusing to accept housing vouchers has been taken in disregard for the rights of others and has had a disparate impact on African Americans and Hispanic Americans.

213.     As a result of Defendants' wrongful conduct, HRI has been injured by a discriminatory housing practice and is therefore an "aggrieved person," as defined by the FHA, 42 U.S.C. § 3602(i)(1).

## THIRD CLAIM FOR RELIEF
(New York State Human Rights Law)

214.     Plaintiff restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

215.     Defendants are brokers and/or landlords of housing accommodations and/or have the right to approve the rental accommodations located in New York State as defined by New York Consolidated Laws Service, Executive Law § 296(10) as "any building, structure, or

portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence, or sleeping place of one or more human beings."

216.    New York Consolidated Laws Service, Executive Law § 292(32) provides that "lawful source of income" includes "any form of federal, state, or local public assistance or housing assistance including, but not limited to, section 8 vouchers."

217.    New York Consolidated Laws Service, Executive Law § 296(5)(a) provides that it shall be "an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation … or any agent or employee thereof … to refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of . . . lawful source of income."

218.    New York Consolidated Laws Service, Executive Law § 296(5)(c) provides that it shall be "an unlawful discriminatory practice for any real estate broker, real estate salesperson or employee or agent thereof … to refuse to sell, rent or lease any housing accommodation … to any person or group of persons because of … lawful source of income."

219.    Defendants violated § 296(5) by adopting policies that deny or withhold apartments for rent because of source of income.

220.    Defendants' conduct was willful and intentional.

221.    Plaintiff HRI is a "person" pursuant to § 292(1) and has suffered damages as a direct and proximate result of Defendants' discriminatory conduct.

222.    Accordingly, under New York Executive Law § 297(9), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
(New York City Human Rights Law:  Source of Income Discrimination)

223.    Plaintiff restates and incorporates by reference the preceding paragraphs as if set forth fully herein.

224.    Defendants are the brokers and/or landlords of housing accommodations and/or have the right to approve the rental accommodations located in New York City as defined by Section 8-102(10) of the New York City Administrative Code to include "any building . . . which is used or occupied . . . as the home, residence, or sleeping place of one or more human beings."

225.    Section 8-102 of the New York City Administrative Code provides that "lawful source of income" includes income derived from "any form of federal, state or local public assistance or housing assistance including section 8 vouchers."

226.    Section 8-107(5)(a) of the New York City Administrative Code provides that it shall be "an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation … or any agent or employee thereof … to refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation" because of any lawful source of income.

227.    Section 8-107(5)(c) of the New York City Administrative Code provides that it shall be "an unlawful discriminatory practice for any real estate broker, real estate salesperson or employee or agent thereof, to refuse to sell, rent, lease any housing accommodation … to any person or group of persons … because of any lawful source of income of such persons."

228.    Defendants violated Sections 8-107(5)(a) and 8-107(5)(c) by adopting policies that deny or withhold apartments for rent because of source of income.

229.     Defendants' conduct was willful and intentional.

230.     Plaintiff HRI is an "aggrieved person" as defined in the New York City Administrative Code § 8-502(a), and has suffered damages as a direct and proximate result of Defendant's discriminatory conduct.

231.     Accordingly, under New York City Administrative Code §§ 8-502(a) and (f), Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff HRI respectfully requests that the Court:

(a) Enter judgment declaring that Defendants' acts, policies, practices, and statements of willfully refusing to rent apartment units to Housing Choice Voucher holders have an unlawful discriminatory effect based on disability in violation of the FHA, 42 U.S.C. §§ 3601-3631, 3604(f), 24 C.F.R. § 100-500;

(b) Enter judgment declaring that Defendants' acts, policies, practices, and statements of willfully refusing to rent apartment units to Housing Choice Voucher holders have an unlawful discriminatory effect based on race and/or national origin in violation of the FHA, 42 U.S.C. §§ 3601-3631, 3604(a), 24 C.F.R. § 100-500;

(c) Enter judgment declaring that Defendants' acts, policies, practices, and statements of willfully refusing to rent apartment units to Housing Choice Voucher holders constitutes source of income discrimination in violation of the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-102, 107 *et. seq.*, and the New York State Human Rights Law ("NYSHRL"), New York Consolidated Laws Service, Executive Law § 296;

(d) Enter judgment for appropriate permanent injunctive relief, including an order that Defendants abandon their policies or practices of refusing to rent to Housing Choice Voucher holders and instead accept tenants without regard to sources of income, and such remedial actions as are necessary to ameliorate Defendants' past illegal discriminatory conduct;

(e) Award HRI monetary damages in an amount to be determined at trial;

(f) Award HRI reasonable attorneys' fees and costs;

(g) Award HRI punitive damages in an amount to be determined at trial; and

(h) Grant such other relief as the Court may deem just and proper.

Dated:  December 7, 2021                    Respectfully submitted,

/s/ Matthew K. Handley
Matthew K. Handley
Rachel Nadas, admitted *pro hac vice*
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW – 7th Floor
Washington, DC 20001
Phone: (202) 559-2411
Email: mhandley@hfajustice.com

/s/ George F. Farah
George F. Farah
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
Phone: (212) 477-8090
Email: gfarah@hfajustice.com

/s/ Robert Desir
Robert Desir
Judith Goldiner
Lilia Toson
Samuel Frizell
LEGAL AID SOCIETY
199 Water Street
3rd Floor

New York, NY 10038
Phone: (646) 581-7506
Email: rrdesir@legal-aid.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing First Amended Complaint was filed on the Court's CM/ECF system, which will serve it on counsel for the following parties:

Compass, Inc.
The Stratford, LLC
Corcoran Group, LLC
Prospect Owners Corp.
Bold LLC
E Realty International Corp.
Jackson Ht. Roosevelt Development II, LLC
M Q Realty LLC
Eva Management LLC
Eric Goodman Realty Corp.
Rosa Mangiafridda
Peter Chris Meskouris
Hell's Kitchen, Inc.
Myerowtz/Satz Realty Corp.
PD Properties LLC
Lions Gate New York LLC
Atias Enterprises Inc.
Park Row (1st Ave) Ltd.
Voro LLC
Ray-Hwa Lin
Jane H. Tseng
Alexander Hidalgo Real Estate LLC
East 89th Associates, LLC
Paley Management Corp.
Home by Choice LLC
Hamilton Heights Associates, LLC
Manhattan Realty Group
931-955 Coney Island Ave. LLC
348 East 62nd LLC
83rd Street Associates LLC
FirstService Realty NYC, Inc.
Tenth Manhattan Corp.
3location3.co Realty, LLC
Chandler Management, LLC
MTY Group, Inc.
165th St. Realty, LLC
Maz Group NY LLC
Gim Realty LLC
Saldo Properties, LLC
1380 First Owners Co. L.P.

I hereby certify that the foregoing First Amended Complaint was mailed, first class, to the parties listed below at the following addresses:

**65 Bergen LLC**
c/o Frank DeFalco
129 Boerum Place
Brooklyn, New York 11201

**Ring Ding LLC**
PO Box 496
New York, New York 10014-0496

**Morgan Rose Realty, LLC**
145 Madison Avenue, Suite 501
New York, New York 10016

**BTG LLC**
408 W 130th Street
New York, New York 10027

**308 E 90th St. LLC**
307 E. 89th Street
New York, New York 10128

**New Golden Age Realty Inc. d/b/a Century 21 New Golden Age Realty, Inc.**
9 East Broadway 2nd Floor
New York, New York 10038

**Chan & Sze Realty Incorporated**
17 Ludlow Street
New York, New York 10128

**Smart Merchants Incorporated**
530 Closter Dock Rd.
Closter, New Jersey, 07624

**Columbus NY Real Estate Inc.**
c/o Frederico Ziotto
130 West 57th Street
Suite 14A
New York, New York 10019

**Matthew Gros Werter**
160 West End Avenue
New York, New York 10023

**780 Riverside Owner LLC**
c/o YMY Management Corp.
5014 16th Avenue
Suite 114
Brooklyn, New York 11204

**PSJ Holding LLC**
c/o Jack Shampan
101 Village Road
East Hills, New York 11557

**Winzone Realty Inc.**
81-15 Queens Blvd.
2nd Floor
Elmhurst, New York 11373

**Mayet Realty Corp.**
Paley Management Corp.
221 E 83rd Street
New York, New York 10028

**Natural Habitat Realty Inc.**
28 Concord Avenue
Larchmont, New York 10538

**Chelsea 251 LLC**
28 Concord Avenue
Larchmont, New York 10538

**JRL-NYC, LLC**
157 2nd Avenue, Suite 2SA
New York, New York 10003

**East 34th Street, LLC**
6 Grace Ave
Suite 400
Great Neck, New York 11021

**Brittbran Realty, LLC**
138 W 127 Street
New York, New York 10027

**Wegro Realty Co.**
442 West 54th Street
New York, New York 10019

**JM Preston Properties, LLC**
160 East 48th Street
Apt. 9G
Manhattan, New York 10017

**1369 First Avenue, LLC**
36 Maple Place 2nd Flr.
Manhasset, New York 11030

**Best Move Realty**
41-01-A 48th Street
Sunnyside, Queens, New York 11104

**Fortune Gardens, Inc.**
c/o Bigman & Bigman Esqs.
68-14 Roosevelt Ave.
Woodside, New York 11377

**Urban Real Estate Property Group, Inc.**
41 Union Square West #325
New York, New York 10017

**Jan Reynolds Real Estate**
498 West End Ave 10A
New York, New York 10024

**469 Clinton Ave Realty LLC**
475 Clinton Avenue
Brooklyn, New York 11238

**718 Realty Inc.**
35-59 84th Street
Jackson Heights, New York 11372

**Double A Property Associates-Creston Arms LLC**
c/o Herbert Donner
172-90 Highland Avenue
Jamaica Estates, New York 11432

**Best Service Realty Corp.**
78-01 Roosevelt Avenue
Jackson Heights, New York 11372

**Charie Properties LLC**
52 East 13th Street
Suite 3B

New York, New York 10003

**Alpine Realty**
8401 5th Avenue
Brooklyn, New York 11209

**Verga Associates LLC**
785 Ocean Parkway
Brooklyn, New York 11230

**449 West 56th Associates L.P.**
c/o Property Markets Group, Inc.
111 Fifth Avenue, 6th Floor
New York, New York 10003

**Orchard Plaza LLC**
188-30 Jamaica Ave
Hollis, New York 11423-2512

**Rentiko Inc.**
30-01 Northern Boulevard
Suite F
Long Island City, New York 11101

**3095 30 LLC**
30-95 30th Street, Apt. 2F
Astoria, New York 11102

**Avenue Real Estate LLC**
8 East 41st Street 6th Floor
New York, New York 10017

**165 Hester Corporation**
154 Hester Street, Basement
New York New York 10013

Dated:  December 7, 2021                                    /s/ Matthew K. Handley____
                                                                        Matthew K. Handley