UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

HOUSING RIGHTS INITIATIVE,

                            Plaintiff,                  Case No. 21-cv-2221 (SHS)

- against -

COMPASS, INC., et al.,

                            Defendants.

----------------------------------------------------------X

### DEFENDANTS 3LOCATION3.CO REALTY LLC AND 469 CLINTON AVE REALTY LLC's MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS ALL CLAIMS AGAINST THEM PURSUANT TO F.R.C.P. 12(b)(1) OR FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c)

Defendants 3Location3.Co Realty LLC and 469 Clinton Ave Realty LLC ("Defendants") respectfully submit this Memorandum of Law In Support of their motion to dismiss all claims asserted against them in Plaintiff Housing Rights Initiative's ("Plaintiff" or "HRI") First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(1) for lack of standing and subject matter jurisdiction, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Plaintiff's claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), for the Court to decline to exercise supplemental jurisdiction over the state and city law claims against Defendants, and for such other relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Defendants' motion to dismiss Plaintiff's claims against them for lack of standing and subject matter jurisdiction must be granted because as a non-profit housing watchdog group, Plaintiff lacks organizational standing to sue because it cannot show any involuntary injury it has suffered from Defendants' conduct but rather has voluntarily incurred investigative and litigation expenses to further its own socio-economic purposes. *See* Point I, *infra*. Alternatively, Defendants' motion for judgment on the pleadings on Plaintiff's two claims for relief under the FHA in the FAC should be granted because those claims involve only one telephone call, is only pled in conclusory terms and does not have any specific factual allegations from which to infer that Defendants acted to discriminate against Plaintiff's testers in rejecting Section 8 housing vouchers and other actions on the basis of their disability or race or national origin. Moreover, Defendants' alleged response to a tester's phone call that the owner was not accepting any Section 8 vouchers in her building was proper and permissible in accordance with the federal housing program. *See* Point II, *infra*. If judgment on the pleadings is granted on the two FHA claims alleged against Defendants, the Court should decline to exercise supplemental jurisdiction over the New York state law claims asserted against them because the action is in its earliest stages and no exceptional circumstances exist such that the Court should exercise such jurisdiction. *See* Point III, *infra*.

## STATEMENT OF ALLEGATIONS

The FAC [SDNY Doc. No. 271] alleges that Defendant 3Location3.Co Realty, LLC ("3Location3") "is a corporation register to do business in New York. At all relevant times, [3Location3] was in the real estate business, and among other things, was brokering the rental of apartments in New York City." (*Id.*, ¶60) Defendant 469 Clinton Ave Realty LLC ("469

2

Clinton") is additionally alleged to be "the owner of the unit at 469 Clinton Avenue #12, Brooklyn, New York 11238 and utilized the real estate brokering services of Defendant [3Location3] at all relevant times." (*Id.*, ¶61) The only factual allegations in the FAC pertaining to Defendants are the following:

> On May On May 20, 2020, an HRI tester, posing as a prospective tenant, called [3Location3] at (917) 804-0692 regarding an advertised apartment at 469 Clinton Avenue #12 in Clinton Hill. At all times relevant to this suit, 469 Clinton Avenue #12, Brooklyn, New York 11238 was owned by [469 Clinton]. The StreetEasy listing advertised a "rent stabilized studio" for $1,403 per month and stated the property was listed by 3location3. The representative of 3location3 who answered the phone did not identify herself but confirmed the apartment was available. When the tester inquired if she would be able to use her Section 8 Voucher, the representative from 3location3 stated "No. She won't take any programs whatsoever, the owner. And they won't take two people in a studio." When the tester asked the representative if she could work with her because it was urgent as she and her daughter were in a shelter, the representative replied "Yeah, I'm a broker. It's the owner. She won't take any programs. She doesn't take them in any of her buildings . . . I can tell you this one won't work for you." 3Location3 performed the complained-of actions on behalf of [469 Clinton], was authorized by [469 Clinton] to act as agent for [469 Clinton], and was acting as an agent of [469 Clinton] at the time of the tester's inquiry.

(*Id.*, ¶142) (a copy of which is appended at Exhibit 1 to the Declaration of Jacqueline McMickens, Esq., dated Jan. 6, 2023 ("McMickens Decl."))

The FAC alleges four claims for relief against all defendants, including Defendants. The First Claim for Relief alleges "Defendants illegally discriminated against individuals with disabilities by making unavailable or denying apartment for rent because disability, including, but not limited to, refusing to … consider applications from individuals using Housing Choice Vouchers [Section 8 vouchers]," which has "a disparate impact on individuals with disabilities" in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f). (*Id.*, ¶¶196-97, 199) The Second Claim for Relief makes similar allegations that "Defendants' act, policies and practices

constitute a refusal to rent housing or negotiate for the rental of housing because of race and/or national origin by refusing to ... consider applications from individuals using Housing Choice Vouchers" which "has a discriminatory effect on African Americans and Hispanic Americans because it actually or predictably results in a disparate impact on them", in violation of the FHA, 42 U.S.C. § 3604(a). (*Id.*, ¶¶205-6). The Third Claim for Relief alleges Defendants intentionally and willfully "adopt[ing] policies that deny or withhold apartments for rent because of source of income," including Section 8 vouchers, in violation of New York State Human Rights Law, Executive Law § 296. (*Id.*, ¶¶212, 215, 216) The Fourth Claim for Relief alleges that Defendants intentionally and willfully "adopt[ed] policies that deny or withhold apartments for rent because of source of income" including Section 8 vouchers, in violation of the New York City Human Rights Law, New York City Administrative Code §8-107. (*Id.*, ¶¶221, 224, 225)

> The FAC's allegations regarding Plaintiff are as follows:
>
>> HRI is a national nonprofit housing watchdog group headquartered in New York, NY. HRI is dedicated to promoting fair and lawful housing practices. Since its founding, a core part of HRI's mission has been preserving affordable housing in New York City and assisting tenants in securing and maintaining access to affordable priced housing. It has historically done this by counseling and organizing tenants in New York City about their rights to affordable housing and transparency by landlords, such as rights guaranteed by rent-stabilization laws, tax reporting requirements and other laws. HRI further Its assists these tenants by referring them to legal counsel who advise and assist tenants to bring legal actions against landlords who seek to evade these affordable housing laws and reporting requirements."

(*Id.*, ¶4)

## LEGAL ARGUMENT

### I.

### PLAINTIFF HRI LACKS ORGANIZATIONAL STANDING TO BRING ITS CLAIMS AGAINST DEFENDANTS BECAUSE IT HAS NO COGNIZABLE INJURY AND IS VOLUNTARILY FURTHERING ITS SOCIAL OBJECTIVES

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies,'" and "'[i]n order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit.'" *Selevan v. New York Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009) (quoting *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). "[A] plaintiff asserting standing must 'allege facts that affirmatively and plausibly suggest that it has standing to sue' and courts 'need not credit a complaint's conclusory statements without reference to its factual context.'" *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (quotation citation omitted).

Organizations like HRI "may have standing in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." *Id*. at 172. Nowhere in the allegations of the FAC does Plaintiff claim it is suing on behalf of its "members." Rather, it alleges that "Defendants' wrongdoing has injured, injures, and - if left unaddressed – will continue to injure HRI by frustrating its mission to promote fair housing opportunities and preserve and maintain affordable housing in New York City, and will require HRI to continue to divert its efforts and programming to combat practices that deny housing opportunities to voucher holders, prevents HRI from continuing its other counseling, organizing and referral efforts on behalf of tenant."

(SDNY Doc. No. 217, at ¶190) Therefore, HRI is claiming organizational standing under the second criteria of showing that it was "directly injured as an organization."

The Second Circuit most recently has addressed the issue of standing of an organization similar to the HRI in *Connecticut Parents*, where plaintiff was a "non-profit advocacy group" advocating for the rights of parents of students from lower socio-economic groups to a quality education. 8 F.4th at 170. The group sued Connecticut state officials who had issued regulations that allegedly interfered with parental rights to ensure their children's right to a quality education.[1]

The Second Circuit concluded that the plaintiff advocacy group did not suffer sufficient injury to establish its standing to sue the government officials. It rejected plaintiff's contention, similar to that alleged here by HRI, that "its work was perceptibly impaired because 'it expend[ed] resources to counteract illegal activity touching on its core mission' and in so doing 'divert[ed] resources away from other activities.'" *Id.* at 173 (quotation citation omitted).

---

[1] This action brought by HRI, is distinguishable for the lawsuit in *Connecticut Parents* in one important respect which is relevant to its standing to bring this suit: it is not brought against government officials who promulgated a law, regulation or other governmental action that broadly injured the social interests that the organization was advocating for. Instead, it is alleging injury to the tenants holding Section 8 vouchers by numerous, unrelated private defendants which are allegedly acting in violation of a federal statute, who have the right to bring their own legal actions to redress discriminatory actions by Defendants. In fact, one of HRI's stated activities is to "assist these tenants by referring them to legal counsel who advise and assist tenants to bring legal action against landlords who seek to evade these affordable housing laws and reporting requirements." (SDNY Doc. No. 271, at ¶4) Therefore, the claims HRI is asserting as an organization in this action are identical and duplicative of those individual Section 8 voucher holders can bring against Defendants, and whom it typically refers to lawyers to bring their own lawsuits. Since the Second Circuit recently has held in *Connecticut Parents Union* that such non-profit organizations advocating social and economic interests and objectives lack standing to challenge allegedly discriminatory statutory or regulatory actions of government officials, *ipso facto*, HRI cannot have organizational standing to bring this action for allegedly private discriminatory practices by Defendants.

Rejecting "such an expansive concept of organizational injury for standing purposes," the Second Circuit stated, "We have held that where, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' *absent an involuntary material burden on its established core activities*." *Id.* (quotation citation omitted) (emphasis added). It therefore concluded, "[I]t is clear that [plaintiff] incurred costs because it decided to initiate a campaign against the [regulation] to advance its own 'abstract social interests'"; thus any costs [plaintiff] incurred from this campaign were not *involuntary*. Accordingly, because [plaintiff] has not shown an injury in fact, we hold that [it] lacks organizational standing." *Id.* at 175 (emphasis in original).

The Second Circuit itself and district courts in this Circuit applying *Connecticut Parents* have similarly held that public interest groups lack organizational standing in similar circumstances. *See, e.g., Lawyers' Committee for 9/11 Inquiry, Inc. v. Garland*, 43 F.4th 276, 282-83 (2d Cir. 2022) (plaintiff organizations whose purpose was to investigate the true parties involved in the 9/11 attacks and which sued the attorney general for failing to submit its petition to a grand jury, lacked standing because only alleged injury was increased investigative and litigation costs and "'an organization's decision to embark on categorically *new* activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes'" (quoting *Connecticut Parents*, 8 F.4th at 174) (emphasis added)); *Animal Welfare Inst. v. Vilsack*, 20-CV-6595 (CJS), 2022 WL 16553395, at **5-6 (W.D.N.Y. Oct. 31, 2022) (plaintiff advocacy groups to reduce animal suffering suing government officials for denying their petition, lacked organizational standing because alleged injury was caused by the "diversion of resources" for investigative and litigation expenses involved which was "not an involuntary result of 'increased demand for services,'" but rather were "activities Plaintiffs

pursued 'at their own initiative' in response to [the actions of another organization] which harms their 'abstract social interests'" (quoting *Connecticut Parents*, 8 F.4th at 173-74)); *Family Equality v. Becerra*, 1:20-CV-2403 (MKV), 2022 WL 956256 at **2, 5 (S.D.N.Y. Mar. 30, 2022) (plaintiffs, "community outreach organizations that work with LGBTQ-identifying groups," lacked organizational standing because they "have not suffered an involuntary burden on established core activities," and "'an organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes, even if the organization's own clients request the change'" (quoting *Connecticut Parents*, 8 F.4th at 174)).

Likewise here, where HRI has voluntarily commenced this action and voluntarily incurred expenses to investigate and litigate it in order to advance its own social interests and organizational purposes, it has not shown an organizational "injury in fact" required for establishing Article III standing to bring this lawsuit. Accordingly, Plaintiff lacks Constitutional standing to bring claims against Defendants under the FHA, and Defendants' motion to dismiss for lack of subject matter jurisdiction under F.R.C.P. 12(b)(1) should be granted.

Additionally, Defendants adopt and incorporate herein the other arguments why Plaintiff lacks standing to bring this lawsuit set forth in the Memorandum of Law In Support of Defendant Corcoran Group LLC's Motion to Dismiss Plaintiff's Complaint [SDNY Doc. No. 314] ("Corcoran Mem. of Law"), at Point II.A & B, at pp. 8-13, and Corcoran Group LLC's Reply Memorandum of Law In Further Support of Its Motion to Dismiss Plaintiff's First Amended Complaint [SDNY Doc. No. 431] ("Corcoran Reply Mem. of Law"), at Point I.A, B & C, at pp. 2-8). (A copy of the Corcoran Mem. of Law and Corcoran Reply Mem. of Law are attached at Exhibits 2 and 3 to the McMickens Decl., respectively.)

## II.

## DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S CLAIMS AGAINST THEM FOR DISCRIMINATION IN ACCEPTING SECTION 8 VOUCHERS BASED ON DISABILITY, RACE AND NATIONAL ORIGIN UNDER THE FHA BECAUSE THEY LACK SUFFICIENT FACTUAL AND LEGAL ALLEGATIONS

In deciding a F.R.C.P. 12(c) motion for judgment on the pleadings, "the same standard as that applicable to a motion under Rule 12(b)(6)" is used. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. den.*, 513 U.S. 816 (1994). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "[t]he court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor[,] [i]n order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 797 (S.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 555)).

Plaintiff's First Claim for Relief is under 42 U.S.C. § 3604(f)(1), a provision of the FHA which makes it "unlawful [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter." It alleges, in completely conclusory terms, that Defendants "illegally discriminated against individuals with disabilities by making unavailable or denying apartments for rent because of

disability, including, but not limited to … consider applications from individuals using [Section 8] Vouchers." (SDNY Doc. No. 271, at ¶196) And "Defendants' policy or practice or refusing to accept [Section 8] Vouchers towards rent at the Subject Properties has a discriminatory effect on disabled individuals because it actually or predictably results in a disparate impact on disabled individuals." (*Id.*, at ¶197) The sole factual allegations in the FAC pertaining to the movants are in Paragraph 142 as follows: On May 20, 2020, a tester "posing as a prospective tenant," called Defendant 3Location3 regarding an advertised apartment at 469 Clinton Avenue, which is alleged to be owned by Defendant 469 Clinton and for whom 3Location3 was acting as agent. "The representative of 3Location3 who answered the phone … confirmed the apartment was available," but when the "tester inquired if she would be able to use her Section 8 Voucher" and that "it was urgent as she and her daughter were in a shelter", the representative "stated 'No. *She won't take any programs whatsoever, the owner*. And they won't take two people in a studio." The representative added, "It's the owner. She won't take any programs. *She doesn't take them in any of her buildings* … I can tell you this one won't work for you." (*Id.*, at ¶142 (emphasis added))

But there are no factual allegations from which it can inferred that the 3Location3 representative knew that the tester even had a disability or that any accommodation in the listed apartment would have to be made for such disability. To state a claim of discrimination based on disability under the FHA, "a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the [FHA]; (2) the defendant knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Sinisgallo v. Town of Islip Housing Authority*, 865 F. Supp. 2d 307, 336

10

(E.D.N.Y. 2012); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014). The FAC only alleges that the tester asked on the phone if a Section 8 voucher would be accepted by the landlord, and that she and her daughter had to move quickly because they were living in a shelter. It cannot be reasonably inferred from these allegations that the tester had a disability or that Defendants knew or reasonably should have known the tester had a disability. Therefore, FAC fails to sufficiently allege a claim for discrimination in rental housing based on disability under the FHA.

Furthermore, the Second Circuit has made clear "that the voluntariness provision of Section 8 reflects a congressional intent that the burdens of Section 8 participation are substantial enough that participation should not be forced on landlords, either as an accommodation to handicap or otherwise." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 (2d Cir. 1998). Where a landlord "explain[s] the refusal to accept Section 8 tenants in terms of a general reluctance to become involved with the federal government and its rules and regulations [,] … the landlord is not required to articulate any justification for a policy of refusing Section 8 certificates." This is precisely what the representative explained to the tester about the owner's intentions: "It's the owner. She won't take any programs. She doesn't take them in any of her buildings." (SDNY Doc. No. 271, at ¶142) Courts in this Circuit have followed *Salute* in this regard. *See, e.g., Viens v. America Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 572 (D. Conn. 2015); *Riccardo v. Cassidy*, 1:10-CV-462 NAM/RFT, 2011 WL 940301, at *3 (N.D.N.Y. Mar. 16, 2011); *Freeland v. Sisao LLC*, CV-07-3741 CPS SMG, 2008 WL 906746, at **3, 5 (E.D.N.Y. Apr. 1, 2008).

The same factual allegations regarding Defendants in Paragraph 142 of the FAC are likewise insufficient to state a claim for relief against them for discrimination based on race or

national origin under 42 U.S.C. § 3604(a) of the FHA. (FAC, Second Claim for Relief) Besides the completely conclusory allegations in that claim, it cannot be inferred from the factual allegations about the one phone call between a tester and the 3Location3 representative that the latter was informed of the race or national origin of the tester or that the owner displayed any racially discriminatory animus. Rather, the phone conversation only showed that the owner of the listed apartment did not want to accept Section 8 vouchers or any other government programs.

Lastly, Defendants adopt and incorporate herein the additional arguments why the FAC fails to state claims for relief against them under F.R.C.P. 12(b)(6) set forth in the Corcoran Mem. of Law and the Corcoran Reply Mem. of Law. (*See* SDNY Doc. No. 314, at Point III, pp. 14-18 (McMickens Decl., Exh. 2), and SDNY Doc. No. 431, at Point II, pp. 8-10 (McMickens Dec., Exh. 3)).

### III.

#### THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE AND CITY LAW CLAIMS, AND THEY SHOULD BE DISMISSED AS WELL

In the event that the Court denies Defendants' motion to dismiss all claims against them for lack of standing but grants their motion for judgment on the pleadings on the claims against them under the FHA as shown in Point II, *supra*, the Court should not exercise pendent jurisdiction over the state law claims asserted against them. "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Anderson v. National Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) (quotation citation omitted). Plaintiff does not allege and cannot show any

"exceptional circumstances" here warranting the exercise of supplemental jurisdiction of the remaining claims for relief under New York State and New York City laws. (SDNY Doc. No. 271, at Third and Fourth Claims for Relief)

## CONCLUSION

For the reasons presented herein, the Court should grant Defendants 3Location3 Realty LLC and 469 Clinton Ave Realty LLC's motion to dismiss Plaintiff Housing Rights Initiative's claims alleged against them in the FiAC for lack of subject matter jurisdiction and standing under F.R.C.P. 12(b)(1), or for judgment on the pleadings on the FHA claims under F.R.C.P. 12(c) and the Court not exercising supplemental jurisdiction over the state and city law claims against them, and for such other relief as the Court deems just and proper.

Dated:  Brooklyn, N.Y.
        January 6, 2023

Respectfully submitted,

By: _____
Jacqueline McMickens, Esq.
JACQUELINE McMICKENS &
    ASSOC., PLLC
*Attorneys for Defendants 3Location3.Co*
    *Realty LLC & 469 Clinton Ave Realty LLC*
26 Court Street, Suite 1600
Brooklyn, N.Y. 11201
Tel: (718) 596-4877
Fax: (718) 596-5009
jmcmickens@aol.com