UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HOUSING RIGHTS INITIATIVE,

                            Plaintiff,

     -against-                                  Docket No.: 21-cv-02221 (SHS)

COMPASS, INC., et al., and GIM REALTY LLC, et al.,

                            Defendants.

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT GIM REALTY'S MOTION FOR RECONSIDERATION OR
## CERTIFICATION OF APPEAL

Dated: February 28, 2022

                                       ROSENBERG CALICA & BIRNEY LLP
                                       Attorneys for Defendant GIM Realty LLC
                                       Robert M. Calica
                                       Judah Serfaty
                                       100 Garden City Plaza, Suite 408
                                       Garden City, New York 11530
                                       (516) 747-7400

**TABLE OF CONTENTS**

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument

THIS COURT'S RULING AS TO THE CAUSATION ELEMENT WARRANTS
RECONSIDERATION AND DISMISSAL AS PERTAINING TO PLAINTIFF'S DISPARATE-
IMPACT CLAIM AGAINST GIM REALTY; ALTERNATIVELY, CERTIFICATION
ALLOWING IMMEDIATE APPEAL TO THE SECOND CIRCUIT IS WARRANTED.. . . . . . 4

    A.       Reconsideration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.       28 U.S.C. § 1292(b) Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Preliminary Statement**

Defendant GIM Realty LLC ("GIM Realty" or "GIM") respectfully submits this memorandum in support of its motion: (a) for reconsideration, pursuant to Local Rule 6.3, of this Court's February 14, 2023 decision and order denying GIM's motion for judgment on the pleadings (hereinafter "Decision"; published at 2023 WL 1993696); and (b) in the alternative, for certification of an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

GIM Realty files this motion because of its unique position as a small landlord, with only nine apartment units.

In connection with GIM Realty's underlying motion for judgment on the pleadings (Fed. R. Civ. P. 12(c)), there was no dispute that GIM Realty is a small landlord with only nine apartments. Nor was there any legitimate showing overcoming the fact that federal law, including the Fair Housing Act and controlling HUD regulations (24 C.F.R. § 982.302(b)), facially permitted GIM Realty to decline to accept Section 8 housing vouchers for any or all of its nine apartment units due to the entirely *voluntary* nature of the Section 8 voucher program. Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 302 (2d Cir. 1998). There can also be no genuine dispute that GIM Realty's continued participation in discovery beyond the initial pleading stage will entail significant continued litigation costs and discovery burdens.

While GIM Realty's underlying motion for judgment on the pleadings mirrored the other defendants' Rule 12 motions in several respects—e.g., to the extent of raising threshold standing issues pertaining to Plaintiff's organizational status and use of one or more "testers"—GIM Realty also raised a threshold causation issue which, for reasons stated below, we respectfully submit warrants reconsideration or alternatively 1292(b) certification, at least as to GIM Realty.

The pure issue of law stems from this Court's novel legal ruling—at least in the context of a small landlord like GIM Realty—that "FHA disparate-impact claims may, but need not, allege that a defendant's conduct has caused, or is predicted to cause, segregated housing patterns" (Decision, 2023 WL 1993696, at *23), and that "the Court need not analyze whether defendants' policies 'worsen[] housing discrimination' in New York City" (id.).

More specifically, relying on the Second Circuit's decision in Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 619-620 (2d Cir. 2016), this Court reasoned that "harm to the community generally by the perpetuation of segregation" (2023 WL 1993696, *23) can legally suffice, impliedly ruling that "robust causation"—which the Supreme Court has bindingly held is the *sine qua non* of an FHA disparate impact claim—can either be ignored at the pleading stage or otherwise satisfied at the pleading stage by mere reference to the concept of "harm to the community generally by the perpetuation of segregation" (id.) in the context of GIM Realty's alleged refusal to accept Section 8 vouchers for one or more of its nine apartment units.

As detailed below, it is respectfully submitted that this Court's novel causation ruling, at least pertaining to GIM Realty's motion for judgment on the pleadings, warrants reconsideration because the Court apparently misapprehended the legal significance of Mhany's analysis of "two methods of proving the discriminatory effect of a zoning ordinance," which was addressed by the Second Circuit in the municipal zoning context, and which did not purport to alter the Supreme Court's controlling legal ruling in Texas Dep't of Haus. & Cmty. Affs. v. Inclusive Communities Project, Inc., 576 U.S. 519, 542 (2015) (hereinafter "Texas v. ICP") that "robust causation" is required, and that a plaintiff must plausibly allege that the defendant caused the statistical disparity relied upon by the plaintiff, *including at the initial pleading stage*. See Texas v. ICP (more fully addressing the "robust causation" requirement for disparate impact claims, including

{00441574-4}                                    2

at the initial pleading stage); see also Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 302 (2d Cir. 1998) (rejecting FHA disparate impact claim based on landlord's refusal to accept Section 8 vouchers because the voucher program is voluntary under federal law); Inclusive Communities Project, Inc. [hereinafter "ICP"] v. Lincoln Prop. Co., 920 F.3d 890, 907 (5th Cir. 2019).

As detailed below, we respectfully submit that Texas v. ICP, and *not* Mhany, is legally dispositive on the issue of causation at the pleading stage, at least with respect to a small landlord like GIM Realty. As further detailed below, none of the lower court cases upon which this Court relied alters this conclusion.

Alternatively, this Court's dispositive legal ruling that even with respect to a small landlord like GIM Realty, Plaintiff "may, but need not, allege that a defendant's conduct has caused, or is predicted to cause, segregated housing patterns", and that "harm to the community generally by the perpetuation of segregation" can suffice to either supplant or somehow satisfy pleading-based "robust causation" directly between the small landlord defendant's alleged refusal to accept a Section 8 voucher and city-wide disparate impact on protected minority persons or other protected parties (Decision, 2023 WL 1993696, at *23), warrants certification of an interlocutory appeal to the Second Circuit, pursuant to 28 U.S.C. § 1292(b).

**Argument**

**THIS COURT'S RULING AS TO THE CAUSATION ELEMENT WARRANTS RECONSIDERATION AND DISMISSAL AS PERTAINING TO PLAINTIFF'S DISPARATE-IMPACT CLAIM AGAINST GIM REALTY; ALTERNATIVELY, CERTIFICATION ALLOWING IMMEDIATE APPEAL TO THE SECOND CIRCUIT IS WARRANTED**

**A.     Reconsideration**

Reconsideration of this Court's Decision denying GIM Realty's motion for judgment on the pleadings is warranted because this Court apparently misapprehended directly controlling law when it *sua sponte* and necessarily concluded that even in the context of a small private landlord like GIM Realty, which only owns nine apartment units, an FHA discrimination claimant alleging disparate impact is not required to allege actual, let alone "robust," causation, and/or that the element of causation is not fairly raised at the pleading stage. Decision, 2023 WL 1993696, at *23.

We respectfully submit this Court apparently either overlooked or misapprehended that it is entirely lawful under federal law for a landlord, especially a nine-apartment landlord like GIM Realty, to refuse to participate in the Section 8 voucher program, and that binding Supreme Court case law mandates that FHA disparate impact claims show—"at the pleading stage"—"robust causality" establishing that the defendant caused the statistical disparity that plaintiff complains about.

Moreover, the dispositive legal basis upon which this Court resolved the lack of causation element—holding that it need not be alleged in any plausible fashion, or need not be adequately established at the pleading stage beyond the mere concept of "harm to the community generally by the perpetuation of segregation"—is a novel (and we assert erroneous) interpretation of law which the Court *sua sponte* raised and which was not a theory propounded by Plaintiff in its

opposition to GIM's motion for judgment on the pleadings (ECF #433), rendering reconsideration as to GIM Realty's entitlement to dismissal even more appropriate. See Wilson v. Town of Ulster, 2021 WL 1946485, at *2 (N.D.N.Y. May 14, 2021) (reconsideration of issue raised *sua sponte* by the court warranted).

GIM Realty's motion for judgment on the pleadings (ECF #430 and ECF #438) was mainly premised on the failure of Plaintiff to adequately plead the "robust causation" element of FHA-based disparate impact claims against it as a very small landlord, as mandated by the Supreme Court in Texas v. ICP. We respectfully noted that Plaintiff's failure and inability to plead robust causation is even more pronounced in this particular case and context, because it is well-established federal law that a landlord's participation in the Section 8 housing voucher program is entirely voluntary and discretionary, as a matter of law.

GIM pointed out in its motion that, as interpreted by every Circuit Court of Appeals, including the Second Circuit in Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 302 (2d Cir. 1998), and by HUD itself (24 C.F.R. § 982.302(b)), under federal law the Section 8 voucher program is completely voluntary and therefore cannot form a basis for a claim that an individual property owner's alleged decision not to rent to a person paying with a voucher *caused* a disparate impact. This is particularly so concerning GIM Realty, who it is pleaded and unchallenged by Plaintiff, is a small nine-unit building. See Amended Compl. [ECF 429-1), ¶73; GIM Realty's Answer (ECF 429-2], ¶22; GIM Realty's Memo. of Law for Judgment on the Pleadings [ECF 430], p. 1 and *passim*; Plaintiff's Memo. of Law in Opp. To Gim Realty's Motion [ECF 433], p. 11.

We also respectfully pointed out the mere fact that New York has a "source of income" non-discrimination law does not allow this Court to federalize that law under the FHA, and that

Plaintiff's amended complaint fails to plausibly allege that GIM Realty caused the statistical disparity upon which Plaintiff rests its disparate impact claims. Having identified only city-wide and state-wide statistical data for one of the largest cities in the world, Plaintiff's amended complaint, as a matter of law, did not and plausibility cannot ever show that GIM's mere nine apartment unity caused that statistical disparity, let alone robustly did so. Texas v. ICP, supra; ICP v. Lincoln Prop. Co., 920 F.3d 890, 907 (5th Cir. 2019).

Indeed, precisely as here, the Second Circuit in Salute explicitly rejected an FHA disparate impact claim against a landlord who declined to rent to a tenant paying with a Section 8 voucher. Salute 136 F.3d at 302 ("*because the Section 8 program is voluntary and non-participating owners routinely reject Section 8 tenants, the owners' 'non-participation constitutes a legitimate reason for their refusal to accept section 8 tenants and we therefore cannot hold them liable for discrimination under the disparate impact theory'*"). Moreover, the Supreme Court in Texas v. ICP, 576 U.S. at 542 (2015), held that FHA disparate impact claims not only include a specific causation element, they include a "robust causation" element, requiring the plaintiff to plausibly allege that defendant is the actual cause of that statistical disparity ("*a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity*") (emphasis added).

After largely focusing on the standing issue, this Court addressed the causation element of the FHA claim at page 32 of its Decision (*23 of the Westlaw citation). Decision, 2023 WL 1993696, at *23. There, relying on case law involving municipal defendants sued for discriminatory zoning laws and zoning decisions, which is not applicable to a small private landlord whose individual decisions on housing do not and plausibly cannot have a broader impact on the entire city, this Court held that "FHA disparate-impact claims may, but need not,

allege that a defendant's conduct has caused, or is predicted to cause, segregated housing patterns." Decision, 2023 WL 1993696, at *23. This Court further held that possibly the issue can be explored in discovery and need not be shown in the plaintiff's pleading, and that "the Court need not analyze whether defendants' policies 'worsen[] housing discrimination' in New York City". Id.

Respectfully, this holding is directly contrary to the Supreme Court's express and binding holding in Texas v. ICP, supra 576 U.S. at 543, that:

> "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact [under the FHA]" (emphasis added).

Texas v. ICP also bindingly held that the causation required in such case is "robust causation," and that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity". Texas v. ICP, supra 576 U.S. at 542 (emphasis added). By "causing that disparity" the Supreme Court was referencing the "statistical disparity" upon which the plaintiff "relies," such that as a matter of the Supreme Court's binding precedent, plaintiff must plausibly allege "defendant's policy or policies causing that [statistical] disparity [upon which plaintiff relies]." ICP v. Lincoln Prop. Co., 920 F.3d 890, 907 (5th Cir. 2019).

This Court's Decision cited the municipal zoning decision case of Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 619-620 (2d Cir. 2016), as well as Mhany's quote from another municipal zoning case Huntington Branch, N.A.A.C.P. v. Town of Huntington, 844 F.2d 926, 937 (2d Cir.). Decision, 2023 WL 1993696, at *23 n. 40. The parenthetical from Mhany which the Decision provided, itself indicated that the Second Circuit was stating the rule applicable to methods of proving the discriminatory effect of a zoning ordinance or a zoning decision. Id.

(providing this parenthetical quote from Mhany: "Plaintiffs also note that there are two methods of proving the discriminatory effect <u>of a zoning ordinance</u>: (1) 'adverse impact on a particular minority group,' and (2) 'harm to the community generally by the perpetuation of segregation.'") (emphasis added).

At least in respect of a small landlord like GIM Realty, this Court's novel holding that the mere concept of "harm to the community generally by the perpetuation of segregation" suffices to plead a viable disparate impact claim against a small private landlord who made a single alleged housing decision, and that "harm to the community generally by the perpetuation of segregation" can either supplant or otherwise satisfy causation, is, we respectfully contend, directly contrary to settled law and cannot be applied to GIM's small nine-apartment building.

First, robust causation is a constitutionally mandated element of FHA disparate impact claims, and it must be adequately alleged "at the pleading stage." Texas v. ICP, supra 576 U.S. at 543. It is not even remotely pleaded here because GIM is not claimed to have caused *any* disparate impact on minorities or other protected classes of persons, no claim is made that Plaintiff's tester who called GIM's representative identified him or herself as a member of a minority group or other protected class, no statistics concerning the racial or other protected class composition of GIM's nine sets of tenants are alleged, and the sole statistics offered in the pleading are city-wide or state-wide statistical disparities which GIM as a matter of law cannot have caused. Id.; ICP v. Lincoln Prop. Co., 920 F.3d 890, 907 (5th Cir. 2019).

Second, Mhany and Huntington did not purport to remove or alter the causation element for disparate impact claims. When the Second Circuit in Mhany, quoting Huntington, stated "there are two methods of proving the discriminatory effect of a zoning ordinance: (1) 'adverse impact <u>on a particular minority group</u>,' and (2) 'harm <u>to the community generally</u> by the

perpetuation of segregation'" (emphasis added), it was addressing whether the impact of defendant's zoning decision must be shown to harm specifically the plaintiff's "particular minority group" or as an alternative, whether a harm to other or all minority groups can be relied upon. See also Huntington, 844 F.2d at 937 (quoted in footnote, below);[1] Winfield v. City of New York, 2016 WL 6208564, at *5 (S.D.N.Y. Oct. 24, 2016) ("Disparate impact can be proven by showing an adverse impact on a particular group or minority or harm to the community generally by the perpetuation of segregation"). The alternative pertains to broadening the persons harmed even if plaintiffs are but one part of that broader category of protected persons. The defendant's conduct must still be the *cause* of that broader harm.

In fact, Mhany itself applied the causation element. It did so to affirm the dismissal of the defendant County there, because even though the County was aware of Garden City's racially discriminatory motives, plaintiff "failed to raise factual issues as to whether the County bore a sufficient causal relationship to Garden City's discriminatory shift in zoning." Mhany, 819 F.3d at 620.

Third, if the test is merely whether an act of a small landlord "harm[s] [] the community generally *by the perpetuation of segregation*" without the landlord even remotely causing that harm to the community generally, and without the small landlord ever plausibly being able to

---

[1] The Huntington, Court (844 F.2d at 937) explained:

> The discriminatory effect of a rule arises in two contexts: adverse impact on a particular minority group and harm to the community generally by the perpetuation of segregation. *Arlington Heights II*, 558 F.2d at 1290. In analyzing Huntington's restrictive zoning, however, the lower court concentrated on the harm to blacks as a group, and failed to consider the segregative effect of maintaining a zoning ordinance that restricts private multi-family housing to an area with a high minority concentration (emphasis added).

cause that harm to the community generally, then the result is worse than the unconstitutional quotas that the Supreme Court in Texas v. ICP warned against. Texas v. ICP, supra 576 U.S. at 542.[2] Any act by anyone that if committed by a sufficient number of other persons could result in continuing segregation, however remote the act is to segregating the community at large, would be prohibited by the FHA. We know that is not correct. Bank of Am. Corp. v. City of Miami, Fla., 581 U.S. 189, 201 (2017) ("in all cases of loss [including under the FHA], … [plaintiff must] attribute it to the proximate cause, and not to any remote cause'"). This is why the alternative of "harm[s] to the community generally by the perpetuation of segregation" should be limited to municipal zoning decisions and other acts which at least plausibly plead causation.

Fourth, under this Court's Decision, there is no conceivable way that a small landlord having no ability to control the general rental market can defend itself against a claim that its conduct resulted in "harm to the community generally by the perpetuation of segregation" at the pleading stage. We respectfully submit this type of "dismissal-proof" pleading rule is inconsistent with controlling Supreme Court and Circuit precedent, particularly where, as here, the alleged conduct is failure to participate in the fully voluntary Section 8 housing program.

---

[2] Texas v. ICP, supra 576 U.S. at 542, explained:

> a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that "[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact" and thus protects defendants from being held liable for racial disparities they did not create. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), superseded by statute on other grounds, 42 U.S.C. § 2000e–2(k). Without adequate safeguards at the prima facie stage, disparate-impact liability might cause race to be used and considered in a pervasive way and "would almost inexorably lead" governmental or private entities to use "numerical quotas," and serious constitutional questions then could arise. 490 U.S., at 653, 109 S.Ct. 2115.

Salute, 136 F.3d 293, 302 (2d Cir. 1998); 24 C.F.R. § 982.302(b)); see also Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020).

Moreover, after holding that causation need not be shown, or per se requires discovery, even as to a small landlord like GIM Realty, this Court's Decision went on to address, in Section 5, entitled "Plaintiff's Burden on Disparate-Impact Test at the Pleading Stage," two other governmental-defendants cases which concluded that "at the pleading stage, [p]laintiffs are merely required to plausibly plead disparate impact; they are not required to prove causation or disparate impact through statistical evidence at the pleading stage." Decision, 2023 WL 1993696, at *24 (quoting Washington v. United States Dep't of Hous. & Urb. Dev., 2019 WL 5694102, at *21 (E.D.N.Y. July 29, 2019) and citing Winfield v. City of New York, 2016 WL 6208564, at *6 (S.D.N.Y. Oct. 24, 2016)). However, neither of those cases have any application to the circumstances alleged here as pertaining to GIM Realty—i.e., a small 9-apartment property owner, with no plausible causal link to Plaintiff's city-wide or state-wide statistics. See Washington (challenging HUD's national policy); Winfield (challenging City's city-wide affordable housing policy).

Additionally, Washington and Winfield acknowledged that the Supreme Court in Texas v. ICP, supra 576 U.S. at 543 required a showing of causation "at the pleading stage." In contrast, to the extent they appeared to dismiss the Supreme Court's pronouncements as dicta, they apparently did so because circuit precedent at the time (i.e., in 2016 and 2019) appeared to dispense with any requirement to allege a prima facie case of discrimination at the pleading stage.

However, that reasoning should be sharply rejected and refuted at least since 2020, when the Second Circuit, in Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020), an

employment discrimination case, explained that for disparate-impact purposes, even though the pleading is not required to satisfy the full burden of a prima facie case, "even at this early juncture, the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact" (underlining added; italics in original). In fact, the Second Circuit held that a pleading's reliance on city-wide or national statistics to show minorities are disproportionately impacted by a certain policy is insufficient, unless the pleading goes further and plausibly alleges that a particular defendant's application pool is the same. Id. That all discrimination claims premised on disparate impact have a causation pleading requirement, renders that pleading obligation in FHA cases even more exacting, because, as shown, in such cases the Supreme Court demands "robust causality", with the requirement of a causal connection between the policy and the statistics being even more direct.

The third case cited by the Decision, supra, albeit for the further proposition that a pleading need only "include at least one allegation that raises an inference of such disparity," L.C. v. LeFrak Org., Inc., 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013), was rendered before Texas v ICP was decided, and before the even more recent holding by the Second Circuit in Mandala.

B.  **28 U.S.C. § 1292(b) Certification**

The applicable standard for certification is summarized in In re Adelphia Comm's Corp. Securities and Derivative Litigation, 2006 WL 708303, *2 (S.D.N.Y. 2006):

> Certification under Section 1292(b) requires both that the order, interlocutory appeal from which is sought, [1] "involves a controlling question of law as to which there is substantial ground for difference of opinion," and also that [2] "the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Both elements are plainly present here. There is clearly a controlling question of law as

to which there is "substantial ground for difference of opinion" (i.e., assuming *arguendo* this Court adheres to its Decision), and an immediately appeal will "materially advance the ultimate termination of the litigation".

Both the Supreme Court and the Second Circuit have warned against the federalization of state land use laws. Natale v. Town of Ridgefield, 170 F.3d 258 (2d Cir. 1999). The Decision by all accounts is novel, at least as pertaining to a small landlord like GIM Realty for which causation is a central element. If this Court were not to apply Texas v ICP to require a plausible allegation of a robust causal link between the defendant's alleged election not to participate in the Section 8 voucher program, as that program expressly allows, and city- or state-wide statistics on who uses those vouchers, then there is at least a "substantial ground for difference of opinion" on the matter. ICP v. Lincoln Prop. Co., 920 F.3d 890, 907 (5th Cir. 2019); Salute 136 F.3d at 302; see also Mandala, supra.

Additionally, as the Salute Court explained, Congress has not only made the Section 8 voucher program voluntary as to landlords (and tenants), in 1995 Congress expressly repealed a former law that had partially required landlord participation in the program if that landlord accepts vouchers from other tenants. This Court's holding—apparently contrary to Salute, HUD regulations making the program voluntary, and possibly Congress's intent—that effectively renders every landlord in New York potentially liable for FHA discrimination if they do not accept a Section 8 voucher, is clearly something for which substantial ground for difference of opinion exists.

As to the second element, an immediate appeal if successful would result in dismissal of the federal claims and this multi-party lawsuit. Further, this lawsuit involves a multitude of defendants, many of them small landlords like GIM for whom the cost of litigating this lawsuit

{00441574-4}                                    13

through summary judgment or trial is highly burdensome and prejudicial, and potentially cost-prohibitive.

As further shown in GIM's motion for judgment on the pleadings, as it pertains to small landlords, these sorts of "gotcha" lawsuits by "testers" (who make a single telephone call, do not explain what the Section 8 voucher program is, and only ask whether the landlord will accept a voucher), require substantial gate-keeping review by the Courts.

Particularly given the dispositive and pure issue of law, given the large number of defendants and disparate facts, given the lengthy proceedings which will necessarily result from this Court's Decision in the absence of reconsideration or an interlocutory appeal, given well-established federal law that a small landlord can lawfully refuse to accept Section 8 vouchers, and given the real possibility that the Second Circuit will hold that robust causation is not met for pleading purposes (at least as against GIM Realty), certification of immediate appeal is clearly warranted. See, e.g., City of Oakland v. Wells Fargo Company, 14 F.4th 1030 (9th Cir. 2021) (after granting certification of interlocutory appeal under 1292(b), the Ninth Circuit, *en banc*, dismissed FHA claims on proximate cause grounds at the pleading stage, holding that "downstream 'ripples of harm' are too attenuated and travel too 'far beyond' [defendant's] alleged misconduct to establish proximate cause. … In this interlocutory appeal under 28 U.S.C. § 1292(b), we therefore reverse the district court's partial denial of [defendant's] motion to dismiss and remand for dismissal of the FHA claims").[3]

---

[3] Notably, the Ninth Circuit's reversal and dismissal of FHA claims via interlocutory appeal in City of Oakland was based on proximate cause principles generally under the FHA (e.g., for intentional discrimination), and was not even circumscribed by the more narrow and restrictive legal requirement of "robust causation" for disparate impact claims under the FHA pronounced by the Supreme Court in Texas v. ICP.

**Conclusion**

Accordingly, it is respectfully submitted that GIM Realty's motion for reconsideration should be granted, and upon reconsideration, GIM Realty's motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), should be granted. Alternatively, certification of an interlocutory appeal should be granted pursuant to 28 U.S.C. § 1292(b).

Dated: February 28, 2023

ROSENBERG CALICA & BIRNEY LLP

By: _____
    Robert M. Calica
    Judah Serfaty
*Attorneys for Defendant GIM Realty LLC*
100 Garden City Plaza
Garden City, New York 11530
(516) 747-7400