**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HOUSING RIGHTS INITIATIVE,

                    Plaintiff,

v.

COMPASS, INC., et al.,

                Defendants.

Case No. 21-cv-2221

---

## PLAINTIFF HOUSING RIGHTS INITIATIVE'S CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS GIM REALTY LLC'S, CORCORAN GROUP LLC'S, JRL-NYC, LLC'S, EAST 34TH STREET, LLC'S, FIRSTSERVICE REALTY NYC, INC.'S, TENTH MANHATTAN CORP.'S, AVENUE REAL ESTATE, LLC'S, 931-955 CONEY ISLAND AVE. LLC'S, AND VORO, LLC'S MOTIONS FOR RECONSIDERATION OR CERTIFICATION OF APPEAL

/s/ Matthew Handley
Matthew Handley
Rachel Nadas, *admitted pro hac vice*
Handley Farah & Anderson PLLC
1201 Connecticut Avenue, NW, Suite 200K
Washington, DC 20036
Phone (202) 899-2991
Email: mhandley@hfajustice.com

/s/ George F. Farah
George F. Farah
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10003
Phone: (212) 477-8090
Email: gfarah@hfajustice.com

/s/ Simon Wiener
Simon Wiener, *admitted pro hac vice*
Handley Farah & Anderson PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
Phone: (212) 921-4567
Email: swiener@hfajustice.com

/s/ Robert Desir
Robert Desir
Judith Goldiner
Lilia Toson
Evan Henley
Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
email: rrdesir@legal-aid.org

*Counsel for Plaintiff*

# TABLE OF CONTENTS

I. Motion for Reconsideration............................................................................................1

  a.   Standard for a Motion for Reconsideration under Local Rule 6.3 .........................1

  b.   The Court Should Deny Defendants' Motions for Reconsideration. ....................2

     i.   The Motions for Reconsideration of Corcoran, JRL-NYC, East 34th Street, FirstService, Tenth Manhattan, Avenue and Voro Should Be Denied as Untimely.........2

     ii.   There Is No Basis for the Court to Reconsider its Disparate Impact Analysis. ..............2

        1.   The Court Correctly Applied Well-established Second Circuit Law Regarding Disparate Impact.......................................................................................3

        2.   Defendants' Misplaced Reliance on *Salute* Does Not Warrant Reconsideration. .......6

           a.   *Salute* Is Inapplicable Because New York Landlords May Not Discriminate Based on Lawful Source of Income...................................................7

           b.   The Court Correctly Recognized that Refusal to Accept a Voucher Can Support an FHA Disparate Impact Claim. ..................................................8

     iii.   There is No Basis for the Court to Reconsider its Decision on Standing. ......................9

II. The Court Should Deny Defendants' Motions Requesting Certification of an Interlocutory Appeal........................................................................................................12

  a.   The District Court's Decision to Deny Defendants' Motions Does Not Involve a Controlling Question of Law.............................................................................13

  b.   There is No Substantial Ground for a Difference of Opinion............................14

  c.   An Immediate Appeal Will Not Materially Advance the Termination of the Litigation.....15

III. Conclusion .....................................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 5

*Black v. Chittenden*,
    69 N.Y.2d 665 (1986) ................................................................................................ 11

*Bradley v. Jusino*,
    No. 04-cv-8411, 2008 U.S. Dist. LEXIS 81326 (S.D.N.Y. Oct. 13, 2008) ............................ 13

*Broker Genius Inc. v. Seat Scouts LLC*,
    No. 17-cv-8627, 2020 U.S. Dist. LEXIS 29071 (S.D.N.Y. Feb. 20, 2020) ......................... 1, 4

*Century Pac., Inc. v. Hilton Hotels Corp.*,
    574 F. Supp. 2d 369, 373 (S.D.N.Y. 2008)............................................................................ 15

*Capri Sun GmbH v. Am. Bev. Corp.*,
    No. 19-cv-1422, 2022 U.S. Dist. LEXIS 139816 (S.D.N.Y. Aug. 5, 2022) ............................ 12

*Castilla v. City of New York*,
    No. 09-cv-5446, 2013 U.S. Dist. LEXIS 1709 (S.D.N.Y. Jan. 2, 2013) ................................... 1

*Degulis v. LXR Biotechnology, Inc.*,
    No. 95-cv-4204, 1997 U.S. Dist. LEXIS 381 (S.D.N.Y. Jan. 16, 1997) ................................. 13

*Enron Corp. v. Springfield Assocs., L.L.C.*,
    06-cv-7828, 2007 U.S. Dist. LEXIS 70731 (S.D.N.Y. Sept. 24, 2007) ............................ 13, 14

*Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., TLC*,
    No. 21-cv-1192, 2022 U.S. Dist. LEXIS 138975 (E.D.N.Y. Aug. 4, 2022) ......................... 11

*Francis v. United States*,
    No. 14-cv-2311, 2019 U.S. Dist. LEXIS 77025 (S.D.N.Y. May 6, 2019) .............................. 14

*Garber v. Office of the Comm'r of Baseball*,
    120 F. Supp. 3d 334 (S.D.N.Y. 2014) ................................................................................... 12

*Gashi v. Grubb & Ellis Prop. Mgmt. Servs.*,
    801 F. Supp. 2d 12 (D. Conn. 2011) .................................................................................... 4, 5

*Gottesman v. Gen. Motors Corp.*,
    268 F.2d 194 (2d Cir. 1959) ................................................................................................ 13

*Hack v. Presidents & Fellows of Yale Coll.*,
    237 F.3d 81 (2d Cir. 2000) ..................................................................................................... 3

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006) .................................................................................. 11

*Hoffenberg v. Hoffman & Pollok*,
   296 F. Supp. 2d 504 (S.D.N.Y. 2003) ........................................................................... 1

*Housing Rights Initiative v. Compass, Inc.*,
   No. 21-cv-2221, 2023 U.S. Dist. LEXIS 25235 (S.D.N.Y. Feb. 14, 2023) ..................... *passim*

*Huntington Branch, NAACP v.* Huntington,
   844 F.2d 926 (2d Cir. 1988) ........................................................................................ 5

*In re Citigroup Pension Plan ERISA Litig.*,
   No. 05-cv-5296, 2007 U.S. Dist. LEXIS 27004 (S.D.N.Y. Apr. 4, 2007) .............................. 14

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In*
*Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ........................................................................................ 14

*Knapp v. Eagle Prop. Mgmt. Corp.*,
   54 F.3d 1272 (7th Cir. 1995) ..................................................................................... 7

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996) ....................................................................................... 12

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013) ........................................................................................ 10

*L.C. v. Lefrak Org.*,
   987 F. Supp. 2d 391 (S.D.N.Y. 2013) ......................................................................... 4

*Loftus v. Fin. Indus. Regul. Auth., Inc.*,
   No. 20-cv-7290, 2022 U.S. Dist. LEXIS 128964 (S.D.N.Y. July 20, 2022) ............................ 2

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020) .................................................................................... 5, 6

*Metro. Hous. Dev. Corp. v. Village of Arlington Heights*,
   558 F.2d 1283 (7th Cir. 1977) .................................................................................... 5

*MHANY Mgmt. v. Cnty. of Nassau*,
   819 F.3d 581 (2d Cir. 2016) .................................................................................... 3, 5

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*,
   No. 91-cv-8580, 1993 U.S. Dist. LEXIS 8800 (S.D.N.Y. July 1, 1993) ................................ 14

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) ...................................................................... 12, 15

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2nd Cir. 2012) .................................................................................... 9, 11

*Phillips v. City of New York*,
   775 F.3d 538 (2d Cir. 2015) .................................................................................... 8, 9

*R.F.M.A.S., Inc. v. So*,
   640 F. Supp. 2d 506 (S.D.N.Y. 2009) ................................................................. 1

*Reg'l Econ. Cmty. Action Program v. City of Middletown*,
   294 F.3d 35 (2d Cir. 2002) ................................................................................. 3

*Salute v. Stratford Greens Garden Apts.*,
   136 F.3d 293 (2d Cir. 1998) ....................................................................... 3, 6, 7

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ................................................................................ 1

*Texas Dep't Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ................................................................................... 2, 4, 8

*Traficante v. Metro. Life Ins. Co.*,
   409 U.S. 205 (1972) ........................................................................................... 5

*Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005) ............................................................. 15

*Transunion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................ 10, 11, 9

*Tsombanidis v. W. Haven Fire Dep't*,
   352 F.3d 565 (2d Cir. 2003) ............................................................................. 4, 5

*Viens v. Am. Empire Surplus Lines Ins. Co.*,
   113 F. Supp. 3d 555 (D. Conn. 2015) ............................................................... 7

*Washington v. U. S. Dep't Hous. & Urban Dev.*,
   No. 16-cv-3948, 2019 U.S. Dist. LEXIS 127027 (E.D.N.Y. July 29, 2019) ............. 3

*Winfield v. City of New York*,
   No. 15-cv-5236, 2016 U.S. Dist. LEXIS 146919 (S.D.N.Y. Oct. 24, 2016) ............. 3

**Statutes and Rules**

28 U.S.C § 1292 ...................................................................................... 12, 15

24 C.F.R. § 100.500 ................................................................................. 3, 5, 8

N.Y. Exec. Law § 296 (NYSHRL) ................................................................. 7

N.Y.C. Admin. Code
   § 8-107(5)(a)(2), (4) (NYCHRL) .................................................................. 7

iv

Plaintiff Housing Rights Initiative ("HRI") respectfully submits this memorandum in opposition to the Motions for Reconsideration or Certification of Appeal filed by Defendants GIM Realty, LLC ("GIM"), Corcoran Group LLC ("Corcoran"), JRL-NYC, LLC ("JRL-NYC"), East 34th Street, LLC ("East 34th"), FirstService Realty NYC, Inc. ("FirstService"), Tenth Manhattan Corp. ("Tenth Manhattan), Avenue Real Estate LLC ("Avenue"), 931-955 Coney Island Ave. LLC ("931-955 Coney") and Voro, LLC ("Voro") (collectively, Defendants"). For the reasons described below, Defendants' motions should be denied in their entirety.

## I.      Motion for Reconsideration

### a.  Standard for a Motion for Reconsideration under Local Rule 6.3

Under Local Rule 6.3, "[a] motion for reconsideration may be granted only when 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Broker Genius Inc. v. Seat Scouts LLC*, No. 17-cv-8627, 2020 U.S. Dist. LEXIS 29071, at *3 (S.D.N.Y. Feb. 20, 2020) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Similarly, a court may grant a motion for reconsideration where there is the need to "correct a clear error or prevent manifest injustice," *Castilla v. City of New York*, No. 09-cv-5446, 2013 U.S. Dist. LEXIS 1709, at *3 (S.D.N.Y. Jan. 2, 2013) (citation omitted)); *see also R.F.M.A.S., Inc. v. So*, 640 F. Supp. 2d 506, 508-09 (S.D.N.Y. 2009) (stating that the standards for relief under Fed. R. Civ. P. 59 and Local Rule 6.3 are identical). The legal standard for a motion for reconsideration "must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Broker Genius.*, 2020 U.S. Dist. LEXIS 29071, at *3 (quoting *Hoffenberg v. Hoffman & Pollok*, 296 F. Supp. 2d 504, 505 (S.D.N.Y. 2003) (internal quotation marks omitted)). Rule 6.3 may not be used to advance theories that were not previously argued on the original motion. *R.F.M.A.S.,* 640 F. Supp. 2d at 509 (citations omitted).

1

### b.  The Court Should Deny Defendants' Motions for Reconsideration.

#### i.  The Motions for Reconsideration of Corcoran, JRL-NYC, East 34th Street, FirstService, Tenth Manhattan, Avenue and Voro Should Be Denied as Untimely.

A motion seeking reconsideration of a court order determining a motion must be served within fourteen days of entry of the Court's determination of the original motion, "[u]nless otherwise provided by the Court or statute or rule." Local Rule 6.3. The Court's Order denying the motions to dismiss was filed on February 14, 2023, making any motion for reconsideration due by February 28, 2023. Defendants Corcoran, JRL-NYC, East 34th, FirstService, Tenth Manhattan, Avenue, 931-955 Coney and Voro (the "Joining Defendants") filed their motions on March 1, 2023, and March 2, 2023.

Joining Defendants filed short letter motions purporting to join GIM's timely motion. Not only were these letters untimely, but they seek to expand the scope of the motion they attempt to join. GIM's motion does not seek reconsideration of the Court's decision as to HRI's standing, only its determination that HRI sufficiently pleaded disparate impact claims under the Fair Housing Act ("FHA"). Joining Defendants make no attempt to state why the Court should consider their untimely motions.

The untimely motions for reconsideration should be denied and the arguments therein should not be considered. *See, e.g.*, *Loftus v. Fin. Indus. Regul. Auth., Inc.*, No. 20-cv-7290, 2022 U.S. Dist. LEXIS 128964, at *3 (S.D.N.Y. July 20, 2022) (denying motion for reconsideration under Local Rule 6.3 as untimely).

#### ii.  There Is No Basis for the Court to Reconsider its Disparate Impact Analysis.

GIM erroneously asserts that the Court's decision fails to consider or follow precedent, most notably *Texas Dep't Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,* 576 U.S. 519 (2015),

and *Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293 (2d Cir. 1998). However, the Court

already considered and rejected GIM's arguments, and GIM's contentions lack merit.

### 1. The Court Correctly Applied Well-established Second Circuit Law Regarding Disparate Impact.

A plaintiff makes out a disparate impact claim by alleging that a facially neutral policy

"actually or predictably results in a disparate impact on a group of persons or creates, increases,

reinforces, or perpetuates segregated housing patterns . . .." 24 C.F.R. § 100.500(a); *see also*

*MHANY Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 616-17 (2d Cir. 2016) (stating that the Supreme

Court implicitly adopted this regulation in *Inclusive Communities*). In other words, "a plaintiff must

first establish a prima facie case by showing, (1) the occurrence of certain outwardly neutral

practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type

produced by the defendant's facially neutral acts or practices." *MHANY Mgmt.*, 819 F.3d at 617

(citations and internal quotation marks omitted).[1] At the pleading stage, the plaintiff's burden is to

allege facts that give rise to a plausible inference that the defendant's policy has created a disparate

impact.[2] *Washington v. U. S. Dep't Hous. & Urban Dev.*, No. 16-cv-3948, 2019 U.S. Dist. LEXIS

127027, at *34 (E.D.N.Y. July 29, 2019) (citing *Winfield v. City of New York*, No. 15-cv-5236,

2016 U.S. Dist. LEXIS 146919, at *12 (S.D.N.Y. Oct. 24, 2016)); *see Hack v. Presidents & Fellows*

*of Yale Coll.*, 237 F.3d 81, 91 (2d Cir. 2000).

---

[1] As noted in *MHANY Management*, HUD's disparate impact framework altered the third step of the Second Circuit's disparate impact test (regarding the plaintiff's burden to show a less discriminatory alternative), but it did not modify the initial required showing. 819 F.3d at 617.

[2] The Second Circuit decided *Mhany Management* after *Inclusive Communities* and reiterated the prima facie disparate impact standard used in this Circuit. *MHANY Mgmt.*, 819 F.3d at 617 (quoting *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 52-53 (2d Cir. 2002)). As noted by the Court, the "prima facie case is an evidentiary standard, not a pleading requirement." *Housing Rights Initiative v. Compass, Inc.*, No. 21-cv-2221, 2023 U.S. Dist. LEXIS 25235, at *67 (S.D.N.Y. Feb. 14, 2023) (citations omitted)).

The Court correctly applied this body of law in determining that HRI had adequately alleged that Defendants' "no voucher policies" have a disparate impact on New York City residents with disabilities and Black and Hispanic New York City residents, who are each several times more likely to be adversely affected by Defendants' policies than non-disabled or white New York City residents. *See HRI*, 2023 U.S. Dist. LEXIS 25235, at *73-79; *see also Gashi v. Grubb & Ellis Prop. Mgmt. Servs.*, 801 F. Supp. 2d 12, 17-18 (D. Conn. 2011) (analyzing disparate impact claim at summary judgment stage). Defendants fail to identify any basis to alter the Court's decision.

First, much of GIM's motion is a restatement of its original argument that HRI did not adequately plead "robust causation." The Court should decline to address this repetitive argument. *See Broker Genius*, 2020 U.S. Dist. LEXIS 29071, at *3. HRI has pled data that shows that the proportion of members of the protected groups (disabled and Black and Hispanic New York City residents) who actually or predictably face an adverse impact due to Defendants' policies is significantly greater than the proportion of the affected non-protected groups. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574–78 (2d Cir. 2003); *see also Winfield*, 2016 U.S. Dist. LEXIS at *20-22; *L.C. v. Lefrak Org.*, 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013). To the extent that *Inclusive Communities* articulated a pleading standard for disparate impact claims, HRI has met it by alleging facts linking Defendants' policies to an actual or predicable adverse effect on these protected groups. *See* 576 U.S. at 543.

Second, GIM wrongly argues that the Court made the "novel causation ruling" that "mere reference to the concept of 'harm to the community generally by the perpetuation of segregation'" may suffice for pleading purposes. GIM Mem. ISO Mot. for Reconsideration or Appeal (hereinafter "GIM Mem."), Doc. 606, at 2-3. The Court made no such ruling.

At the outset, GIM appears to conflate the two separate effects through which a plaintiff may show disparate impact: 1) a defendant's policy has an adverse impact on a particular protected group or 2) the policy creates or perpetuates segregation. 24 C.F.R. § 100.500(a); *MHANY Mgmt.*, 813 F.3d at 619-20.[3] HRI is alleging that "no voucher" policies such as GIM's disproportionately affect disabled, Black, and Hispanic New Yorkers by preventing them from applying for and renting apartments in GIM and other Defendants' buildings or broker portfolios at a significantly greater rate than non-disabled or white New Yorkers.[4] This causal link exists irrespective of GIM or any other Defendant's size.[5]

Finally, the Second Circuit's decision in *Mandala v. NTT Data, Inc.* does not alter this analysis and was not "overlooked" by the Court. *See* 975 F.3d 202, 209 (2d Cir. 2020).[6] In *Mandala*, the Second Circuit held that the plaintiffs failed to state a disparate impact claim because they did not allege that national statistics about incarceration and arrest rate for African Americans

---

[3] Contrary to GIM's contention, these separate grounds are not limited to the zoning context, but to all Fair Housing Act disparate impact claims. *See, e.g.*, 24 C.F.R. § 100.500(a). Courts drew the bases from cases against both governmental and private actors. For example, *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977), cited for this proposition in *Huntington Branch, NAACP v. Huntington*, 844 F.2d 926, 937 (2d Cir. 1988), in turn cites to *Traficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209-10 (1972), a Fair Housing Act case against a private landlord.

[4] GIM owns property in New York City, and so the use of city-wide data regarding the demographic characteristics of Housing Choice Voucher ("HCV") holders is appropriate. *See, e.g.*, *Gashi*, 801 F. Supp. 2d at 17 (citing *Tsombanidis*, 352 F.3d at 577).

[5] Additionally, "adverse impact" and "perpetuation of segregation" are independent theories for proving disparate impact, and so HRI was only required to plead one theory to make its claim for relief "plausible on its face" and withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Because the Court found that HRI had adequately pled its first basis for disparate impact—i.e., its claims that "each defendant's policy of refusing to accept HCV either caused or predictably will cause a discriminatory effect on disabled, Black, and Hispanic New Yorkers"—the Court simply, and correctly, determined that it need not reach the alternative ground. The Court did not dispense with pleading requirements regarding causation or deviate from precedent in any way.

[6] As with GIM's argument concerning *Salute*, this argument was not advanced on the original motion and should not be considered now. Also, *Mandala* supports the Court's ruling that the prima facie standard does not apply at the pleading stage. *See* 975 F.3d at 208-09.

accurately reflected the qualified applicant pool for the technical and skilled positions at issue. *See id.* at 211-12. In contrast, HRI relies on city-wide statistics regarding voucher holder demographics, which is the exact population at issue in this case. Moreover, the monthly rents charged by Defendants for each of the properties identified in the complaint did not exceed the Housing Choice Voucher Program's maximum allowable rents, Doc. 271, Am. Compl. ¶ 103, meaning that a voucher holder was facially "qualified" to rent them. Again, HRI's allegation, backed by data, is that a disabled, Black, or Hispanic New Yorker is more than three times more likely to be denied housing due to Defendants' policies than a non-disabled or white New Yorker. *Id.* ¶¶ 162, 165-67. The statistics used by HRI certainly "reveal disparities between populations that are relevant" to and support a plausible disparate impact claim. *See Mandala*, 975 F.3d at *210 (citations omitted).

### 2. Defendants' Misplaced Reliance on *Salute* Does Not Warrant Reconsideration.

The Court should reject Defendants' arguments about *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998), on the same bases that the Court previously rejected them. By denying the only Rule 12 motions that meaningfully discussed *Salute*, the Court correctly recognized that *Salute* rested on the now-outdated assumption that New York landlords could lawfully reject voucher holders. During the motion-to-dismiss briefing, only Defendants 3Location3.Co Realty LLC and 469 Clinton Ave Realty LLC advanced the same arguments about *Salute* that Defendants do now. *See* 3Location3.Co & 469 Clinton Ave Realty Memo. ISO Mot. Dismiss & Mot. J. Pleadings, ECF No. 573-1, at 11; *see also* Memo. Opp. 3Location3.Co & 469 Clinton Ave Realty Memo Mot. Dismiss, Doc. 574, at 13–15.  The Court rejected those arguments by denying their motion and should do so again.  *See HRI*, 2023 U.S. Dist. LEXIS 25235, at *82.

a. *Salute* Is Inapplicable Because New York Landlords May
Not Discriminate Based on Lawful Source of Income.

Defendants do not provide a compelling justification for the Court to abandon its earlier

reasoning. Instead, they misinterpret *Salute*'s holding in the same way as their fellow defendants.

HRI does not dispute that source of income is not an explicitly protected class under the Fair

Housing Act. But Defendants commit the same error as their counterparts did when briefing their

Rule 12 motions: they fail to acknowledge that *Salute* was decided in 1998, well before the

NYSHRL and NYCHRL's prohibitions on source-of-income discrimination were enacted in 2019

and 2008, respectively. A.B. 2006, 2019 Assemb., 242nd Sess. (N.Y. 2019); Local Law No. 10 of

2008 of City of N.Y. Both laws make it unlawful for housing owners and their agents in New York

State and City to make statements expressing limitations or discrimination based on a prospective

tenant's lawful source of income, which includes vouchers. N.Y. Exec. Law § 296(5) (NYSHRL);

N.Y.C. Admin. Code § 8-107(5)(a)(2) (NYCHRL).[7]

When *Salute* was decided, it was true that New York landlords' "non-participation [in

Section 8] constitute[d] a legitimate reason for their refusal to accept Section 8 tenants." *Salute*, 136

F.3d at 302 (quoting *Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272, 1280 (7th Cir. 1995)). The

case rested upon the assumption that New York landlords' participation in voucher programs is

voluntary. *Viens v. Am. Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 572 (D. Conn. 2015)

(discussing *Salute*). That is no longer true. Therefore, under *Salute*'s own analysis, there is no

legitimate reason for New York landlords to refuse to accept housing vouchers. In light of these

---

[7] GIM protests that the relatively small size of the building (nine units) it owns should absolve it of liability.
(GIM Memo. ISO Mot. Reconsider & Leave to Appeal, ECF No. 606, at 7). This fact is irrelevant because
the NYSHRL and NYCHRL apply to owners and landlords with buildings of this size. *See* N.Y. Exec. Law
§ 296(5)(a)(4); N.Y.C. Admin. Code § 8-107(5)(a)(4).

intervening, substantial changes to state and local law, *Salute*'s disparate impact analysis is outdated and inapplicable.[8]

> *b.*   The Court Correctly Recognized that Refusal to Accept a
>         Voucher Can Support an FHA Disparate Impact Claim.

Unable to meaningfully address *Salute*'s inapplicability, Defendants instead assert that because source of income is not an explicitly protected class under the Fair Housing Act, a refusal to rent based on source of income can never support disparate impact claims. GIM Mem. at 7–8. But as the Court recognized, a refusal to rent to a voucher holder or statements to that effect can readily support a disparate impact claim under the FHA. *HRI*, 2023 U.S. Dist. LEXIS 25235, at *52-79. More importantly, Defendants identify no controlling authority that the Court overlooked in reaching that conclusion.

Nor could they. In *Inclusive Communities*, 17 years after *Salute*, the Supreme Court emphasized that "[r]ecognition of disparate impact claims is consistent with the FHA's central purpose." 576 U.S. at 539. As a result, "disparate impact claims are cognizable under the Fair Housing Act." *Id.* at 545. 24 C.F.R. Section 100.500 lays out the disparate impact test endorsed by the Supreme Court in *Inclusive Communities.* It specifies that, among other elements, the plaintiff "must sufficiently plead facts to support . . . [t]hat the challenged policy or practice has a disproportionately adverse effect on members of a protected class." 24 C.F.R. § 100.500(b).

---

[8] Even if *Salute* were applicable, the proper time for the Moving Defendants to argue its salience was during briefing on their Rule 12 motions. Instead, nearly all Defendants have waited until this late stage to cite *Salute* at all. The only exception is GIM, but *Salute* merited only a passing "*see*" citation in a footnote in GIM's original briefing. GIM Memo. ISO Mot. J. Pleadings, Dkt. 430, at 2 n.2. Defendants may not raise arguments for the first time in a motion for reconsideration or on appeal. *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) (per curiam) (stating that an argument is waived when raised for the first time in a motion for reconsideration). The Court should decline to consider Defendants' new arguments about *Salute*.

HRI has done just that. It has pled a host of facts to support that Defendants' policy of not accepting Section 8 vouchers disproportionately adversely affects disabled, Black, and Hispanic people, all members of protected classes under the FHA. *See* Order at 35–40. Moreover, the Court's conclusion that HRI met its pleading burden in no way "federalize[d]" the NYSHRL and NYCHRL, as the Moving Defendants assert. *See* GIM Mem. at 7. HRI's FHA claims, which are distinct from its NYSHRL and NYCHRL claims, allege disparate impact claims on the basis of race and disability, which are protected classes under the FHA. HRI does not allege that voucher holders are a protected class under the FHA. Rather, HRI alleges that defendants' policies and practices of rejecting voucher holders has a disparate impact on members of FHA-protected classes. The Court correctly applied federal law in recognizing that HRI sufficiently pled that Defendants' policies have a disparate impact on members of FHA-protected classes. (*See* Order at 37–40).

### iii.   There is No Basis for the Court to Reconsider its Decision on Standing.

As set forth above, Joining Defendants' attempts to make standing arguments are untimely. If the Court considers the untimely motions' standing arguments, they should nonetheless be denied. Joining Defendants wrongly assert that HRI lacks standing because the Amended Complaint fails to plead, and the Court failed to assess, standing on a "defendant-by-defendant" or "individualized" basis. *See, e.g.,* Corcoran Letter Mot., Doc. 607, at 1; FirstService/Tenth Manhattan Letter Mot., Doc. 609, at 1.

Initially, it is improper for Defendants to raise in a motion for reconsideration arguments they did not raise in the initial motion to dismiss briefing. *See Phillips*, 775 F.3d at 544. Yet this is exactly what FirstService, Tenth Manhattan, Voro, and 931-955 Coney do. None of these Defendants cited to *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), or *Mahon v. Ticor Title Insurance Co.*, 683 F.3d 59 (2nd Cir. 2012), in their motion to dismiss briefs or made the argument

they now raise that "[e]ach defendant is entitled to individualized assessment" of standing.

FirstService Mot., Doc. 609, at 1. Because FirstService, Tenth Manhattan, Voro, and 931-955

Coney did not make this argument in their motion to dismiss briefs, they may not do so now.

Moreover, the Defendants who did cite these cases in the motion to dismiss briefing

(Corcoran, JRL-NYC, East 34th Street, and Avenue) have neglected to identify a basis for the Court

to reconsider its decision. "A motion for reconsideration should be granted only when the defendant

identifies 'an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v.*

*YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal citation omitted).

Defendants' arguments as to standing were made to the Court. *See* Corcoran Mem. ISO

Motion to Dismiss, Doc. 314, at 15-16, Plaintiff's Consol. Mem. in Opp. to Motion to Dismiss,

Doc. 393, at 18 n.7. And the Court thoroughly considered and ruled on them:

> One final point on individualized pleading merits attention. Some
> defendants argue that HRI also needs to allege specific damages against
> each defendant. FirstService Realty avers that "Plaintiff has neither alleged
> nor even attempted to allege actual damages. The matter is not a class
> action; rather, it is a plaintiff suing many disparate defendants. Plaintiff has
> an obligation to allege actual damages as to each and every defendant."
> FirstService Mem. 2. Corcoran echoes this view: "HRI's Amended
> Complaint asserts claims against nearly eighty separate entities. Plaintiff
> does not distinguish its alleged expenditure of resources between any of
> the defendants." Corcoran Mem. 15 citing (*TransUnion LLC v. Ramirez*,
> 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021)). These arguments are not
> adequate for the Court to dismiss HRI's disparate impact claims. Damages
> will be determined at trial. Moreover, even if HRI's claims for damages
> were deficient, its disparate impact claims could proceed at this stage
> because plaintiff seeks injunctive relief against each defendant.

*HRI*, 2023 U.S. Dist. LEXIS 25235, at *80-81.

Additionally, Defendants' standing arguments are substantively incorrect. Defendants solely

rely on cases in which the courts assessed standing of plaintiffs who had not been injured. In

*Transunion v. Ramirez*, the Court analyzed the standing of class member plaintiffs who had not experienced a concrete injury. 141 S. Ct. 2190, 2212–13 (2021). In *Mahon v. Ticor Title Insurance Co.*, the plaintiff admitted that two of three defendants caused her no injury but attempted to establish standing by arguing that she "need only demonstrate an injury resulting from the conduct of at least one defendant" in order to sue all three. 683 F.3d 59, 60 (2d Cir. 2012). These cases are inapplicable here because HRI has plausibly alleged that it has been injured by all Defendants.

Moreover, as incorrectly suggested by Corcoran, neither *Transunion* nor *Mahon* stand for a proposition that HRI is required to specifically allocate its diversion of resources between defendants in order to establish standing. Nor does any Defendant present such case law. In civil rights cases involving organizational plaintiffs bringing claims against multiple defendants, courts in this Circuit have not required plaintiffs to specifically allocate injury to each defendant at the pleading stage. *See e.g.*, *Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., TLC*, No. 21-cv-1192, 2022 U.S. Dist. LEXIS 138975, at *6-7 (E.D.N.Y. Aug. 4, 2022) (holding that housing rights organization had standing to sue multiple defendants without analyzing the allocation of its diversion of resources between defendants). There is no requirement that a plaintiff plead a specific amount of damages in a complaint, let alone the damages caused by each defendant, *see, e.g.*, *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 465 n.22 (S.D.N.Y. 2006); *Black v. Chittenden*, 69 N.Y.2d 665, 668 (1986) (citations omitted).

As the Court's thorough and well-reasoned decision makes clear, HRI has not alleged it has standing to sue all defendants on the basis of its standing to sue one defendant. Rather, HRI alleges that it has standing to bring claims against each defendant because of the harm that particular defendant's unlawful conduct caused. In holding that HRI's injuries are traceable to the challenged conduct, the Court determined that HRI sufficiently pled that "*all* properties referenced in the

complaint are residential real estate properties that are offered for rent in New York City" with rent within voucher limits, and that "*each* of the defendants who has moved to dismiss the complaint or moved for judgment on the pleadings has a policy of refusing to serve individuals who seek to pay for a rental unit through an HCV[.]" *HRI*, 2023 U.S. Dist. LEXIS 25235, at *49 (emphasis added). The Court went on to address the specific acts by most of the defendants moving for reconsideration. *Id.* at *49-51. As the Court has already explained in detail, HRI was not required to do anything more to establish standing. The Court should deny Joining Defendants' motions for reconsideration of its standing decision.

## II.   The Court Should Deny Defendants' Motions Requesting Certification of an Interlocutory Appeal.

An interlocutory appeal under 28 U.S.C §1292(b) is a presumptively disfavored and rarely used exception to the final judgment rule that should be "reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996); *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). A district court may certify an order for interlocutory appeal only when it is "of the opinion that such order involves" (1) "a controlling question of law" (2) for which "there is substantial ground for difference of opinion" and that (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Capri Sun GmbH v. Am. Bev. Corp.*, No. 19-cv-1422, 2022 U.S. Dist. LEXIS 139816, at *6-7 (S.D.N.Y. Aug. 5, 2022) ("The movant bears the burden of demonstrating that all three of the substantive criteria are met.") (citation omitted). Even if the moving party can meet all three requirements, the district court has "unfettered discretion to deny certification." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 145-46, 162-66 (E.D.N.Y. 1999).

12

### a. The District Court's Decision to Deny Defendants' Motions Does Not Involve a Controlling Question of Law.

Defendants have not raised a controlling question of law. "Controlling" means that reversal of the district court's order would terminate the action or materially affect the litigation's outcome. *Enron Corp. v. Springfield Assocs., L.L.C.*, 06-cv-7828, 2007 U.S. Dist. LEXIS 70731, at *5-6 (S.D.N.Y. Sept. 24, 2007) (citations omitted). Motions to dismiss rarely involve controlling questions of law. *Degulis v. LXR Biotechnology, Inc.*, No. 95-cv-4204, 1997 U.S. Dist. LEXIS 381, at *7 (S.D.N.Y. Jan. 16, 1997) (quoting *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)); *see also Bradley v. Jusino*, No. 04-cv-8411, 2008 U.S. Dist. LEXIS 81326, at *4 (S.D.N.Y. Oct. 13, 2008) (explaining that the question of law must be a "pure question of law that the reviewing court could decide quickly and clearly without having to study the record.") (citations and internal quotation marks omitted).

GIM's objection to the Court's disparate impact ruling is not a "controlling question of law."[9] Neither is Joining Defendants' challenge to HRI's standing, which rests on their rejected argument that HRI must specifically allege the damages caused by each Defendant at the pleading stage. *HRI*, 2023 U.S. Dist. LEXIS 25235, at *79-81. A reversal of the Court's decision would not terminate or materially advance the litigation. Only fourteen out of seventy-seven defendants filed motions to dismiss or for judgment on the pleadings, and reversal of the Court's order would simply mean that HRI would seek leave to replead, additional "pre-trial sparring," *Gottesman*, 268 F.2d at 196, and piecemeal litigation and appeals.

---

[9] GIM does not identify a specific question of law in its request for certification, and its argument about disparate impact hinges on its size. GIM Mem. at 13-14.

### b. There is No Substantial Ground for a Difference of Opinion.

To satisfy the second factor for an interlocutory appeal, the movant must demonstrate "substantial doubt" regarding the accuracy of the district court's order. *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, No. 91-cv-8580, 1993 U.S. Dist. LEXIS 8800, at *6 (S.D.N.Y. July 1, 1993). "A mere claim that a district court's decision was incorrect does not suffice . . .." *In re Citigroup Pension Plan ERISA Litig.,* No. 05-cv-5296, 2007 U.S. Dist. LEXIS 27004 at *11 (S.D.N.Y. Apr. 4, 2007) (citation omitted). The issue must be "particularly difficult and of first impression," or there must be "conflicting authority on the issue." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990); *Enron*, 2007 U.S. Dist. LEXIS 70731, at *6.

As discussed above, the Court correctly determined HRI pled a plausible disparate impact claim under well-established Second Circuit precedent. GIM's reference to Fifth Circuit caselaw is unavailing. The fact that another circuit may rule differently than the Second Circuit on an issue does not amount to "conflicting authority" or create "substantial doubt." *See Francis v. United States*, No. 14-cv-2311, 2019 U.S. Dist. LEXIS 77025, at *4 n.3 (S.D.N.Y. May 6, 2019) (citation omitted).

Similarly, as set forth above, the Court's ruling that HRI has standing fits squarely within Second Circuit precedent. Joining Defendant's arguments that HRI must allege specific damages against each Defendant at the pleading stage has no legal support. HRI has plausibly alleged that it has been harmed by the discrimination committed by each Defendant. *See, e.g.*, *HRI*, 2023 U.S. Dist. LEXIS 25235, at *48-49.

14

### c.   An Immediate Appeal Will Not Materially Advance the Termination of the Litigation.

Whether an appeal would "materially advance the ultimate termination of the litigation" is dependent on whether the "appeal promises to advance the time for trial or to shorten the time required for trial." 28 U.S.C. § 1292(b); *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.,* 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (citations and internal quotation marks omitted). This third requirement is primarily focused on "ensur[ing] the efficient use of judicial resources." *Nat'l Asbestos Workers,* 71 F. Supp. 2d at 148 (citations omitted).

Reversal of this Court's Order would not end this case, nor would it materially advance the ultimate termination of the litigation. Less than twenty percent of the defendants filed a motion to dismiss. As such, there would still be a significant amount of discovery and litigation. *See Century Pac., Inc. v. Hilton Hotels Corp.,* 574 F. Supp. 2d 369, 373 (S.D.N.Y. 2008) (denying certification of interlocutory appeal where movant "failed to demonstrate that the immediate appeal of this action would result in the saving of judicial resources or otherwise avoid protracted litigation" (internal quotation marks omitted).

## III.   Conclusion

For the reasons given above, the Court should deny Defendants' motions for reconsideration or certification of an interlocutory appeal.

Dated:  March 21, 2023                           Respectfully submitted,

                                                /s/ Matthew K. Handley
                                                Matthew K. Handley
                                                Rachel Nadas, admitted *pro hac vice*
                                                Handley Farah & Anderson PLLC
                                                1201 Connecticut Avenue NW
                                                Suite 200K
                                                Phone: (202) 899-2991
                                                Email: mhandley@hfajustice.com

George F. Farah
Handley Farah & Anderson PLLC
33 Irving Place
New York, NY 10013
Phone: (202) 477-8090
Email: gfarah@hfajustice.com

Simon Wiener, admitted *pro hac vice*
Handley Farah & Anderson PLLC
68 Harrison Avenue, Suite 604
Boston, MA 02111
Phone: (212) 921-4567
Email: swiener@hfajustice.com

Robert Desir
Judith Goldiner
Lilia Toson
Evan Henley
Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
Email: rrdesir@legal-aid.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2023, I filed the foregoing document with the Court's CM/ECF system, which will serve all counsel of record in this matter.


    /s/ Matthew K. Handley