# JacksonLewis

**Jackson Lewis P.C.**
58 South Service Road, Suite 250
Melville NY  11747
(631) 247-0404 Main
(631) 247-0417 Fax
**jacksonlewis.com**

MY DIRECT DIAL IS: (631) 247-4671
MY EMAIL ADDRESS IS: BRIAN.SHENKER@JACKSONLEWIS.COM

April 28, 2023

**VIA ECF**

Honorable Sidney H. Stein, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

                              Re:    *Housing Rights Initiative v. Compass Inc. et al.*
                                          Case No. 21-cv-02221 (SHS)

Dear Judge Stein:

       We represent defendants Corcoran Group LLC, JRL-NYC, LLC, and East 34th Street, LLC, in the above-referenced action. We submit this letter jointly with 32 co-defendants[1] (collectively "Defendants") to propose a case management schedule. Defendants and plaintiff Housing Rights Initiative ("Plaintiff") have been unable to reach agreement and respectfully seek the Court's guidance.[2]

       As detailed below, Defendants propose phased discovery that has the potential to resolve a key threshold issue – whether Plaintiff can establish Article III standing – that we believe will be case dispositive. Defendants propose a brief five-month initial discovery phase ("Phase 1") focused solely on the dispositive issue of whether Plaintiff can establish it has organizational standing, a necessary precondition to open the doors to a federal claim.[3] If, as Defendants anticipate, Phase 1 discovery establishes that Plaintiff lacks standing, then Defendants should be

---

[1] In addition to Corcoran Group LLC, JRL-NYC, LLC, and Easter 34th Street, LLC, the following 32 co-defendants join in this letter: FirstService Realty NYC, Inc.; Tenth Manhattan Corp.; Best Move Realty; Avenue Real Estate LLC; 931-955 Coney Island Ave. LLC; Myerowtz/Satz Realty Corp.; E Realty International Corp.; Winzone Realty Inc.; East 89th Associates, LLC; Alexander Hidalgo Real Estate, LLC; 348 East 62nd LLC; Home By Choice LLC; Hamilton Heights Associates, LLC; 780 Riverside Owner LLC; PSJ Holding LLC; MTY Group, Inc.; 165th St. Realty, LLC; Double A Property Associates – Crestion Arms LLC; Gim Realty LLC; Manhattan Realty Group; Lions Gate New York LLC; Jackson Ht. Roosevelt Development II, LLC; Verga Associates LLC; Atias Enterprises Inc.; Park Row (1st Ave.) Ltd.; Eric Goodman Realty Corp.; 308 E 90th St. LLC; 1380 First Owners Co., L.P.; Wegro Realty Co.; 83rd Street Associates LLC; 165 Hester Corporation; and Eva Management LLC.

[2] Plaintiff has provided its position in section II(a).

[3] While the Court's Opinion found Plaintiff's allegations plausibly alleged standing, Plaintiff must make an evidentiary showing establishing its standing, otherwise its Amended Complaint is subject to dismissal.

Hon. Sidney H. Stein, U.S.D.J.
United States District Court, Southern District for New York
April 28, 2023
Page 2

permitted to move for dismissal of the action prior to proceeding with the much more burdensome merits-phase discovery.[4]

Plaintiff, on the other hand, proposes a non-phased discovery schedule that would span approximately 19 months. Plaintiff's proposal includes approximately 12 months for fact discovery, ending on April 1, 2024, followed by 7 months for expert discovery (ending on October 31, 2024), with dispositive motions being filed approximately one month after the close of expert discovery (by November 25, 2024).

### I.  Description of Relevant Background

Plaintiff's Amended Complaint asserts fair housing discrimination claims under the Fair Housing Act ("FHA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). *See* Amended Complaint, Dkt. No. 271. Plaintiff asserts a disparate impact claim under the FHA, alleging, rather broadly, that each defendant has a corporate policy or practice of refusing to rent apartments to voucher holders, which results in a disparate impact on those with disabilities and people who are African American or Hispanic. *Id*. Plaintiff's NYSHRL and NYCHRL claims similarly claim a policy or practice of refusing to rent to voucher holders, which Plaintiff alleges results in a disparate impact based on source of income. *Id*. Plaintiff originally asserted claims against 88 defendants, now 63, all alleged landlords and brokers.[5]

Several defendants moved to dismiss Plaintiff's Amended Complaint on the basis of failure to plead a disparate impact claim and for lack of Article III standing. On February 14, 2023, the Court denied the motions for dismissal. *See* Opinion & Order, Dkt. No. 580. The Court found that Plaintiff's allegations plausibly alleged it has organizational standing. Defendants, however, generally contest that Plaintiff can establish it has standing, and further point out (and likely will do so in motions to dismiss after Phase 1 discovery), that Plaintiff cannot establish standing against each *individual* defendant. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L. Ed. 568 (2021) (plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek). Plaintiff continues to treat defendants as an aggregate, as if all defendants were one, which is improper for various reasons, such as the requirement to establish standing against each defendant for each claim.[6]

### II.  The Parties' Positions on the Discovery Schedule

---

[4] Defendants propose that any dismissal motions would be filed within 1 month of the close of Phase 1 discovery.

[5] 45 of the 63 remaining defendants have appeared through counsel.

[6] Plaintiff has also resorted to emailing defendants via bcc, meaning that defendants are unable to reply all to include all other defendants. Plaintiff's tactic results in defendants being unable to see the responses and positions taken by other defendants in response to Plaintiff's counsel's emails. This is improper. Plaintiff chose to file this lawsuit against 88 (now 63 defendants) and must act accordingly. Plaintiff could have filed 88 separate lawsuits but did not.

Hon. Sidney H. Stein, U.S.D.J.<br>
United States District Court, Southern District for New York<br>
April 28, 2023<br>
Page 3

### A.    Plaintiff's Position

This case has been pending for over two years following efforts by a minority of the Defendants to engage in extensive and unsuccessful motion practice to dismiss HRI's complaint.[7] Those motions have now been determined in HRI's favor, as have the subsequent motions for reconsideration and/or for a certificate of interlocutory appeal. The case should move forward and discovery should begin. Yet the defendants who join this letter ("Defendants")[8] propose to continue to impede the case's progress. Rather than engage in discovery on the merits, Defendants seek to engage in several months of discovery solely on standing (which is inextricably linked to their own source-of-income discrimination) and then engage in yet another round of motion-to-dismiss briefing before any liability or expert discovery.[9] This proposal is grossly inefficient. It would drive up costs and consume more judicial resources by causing unnecessary discovery disputes and prolonging discovery and this case, all while unfairly prejudicing HRI. Defendants' request for a bifurcated discovery schedule should be denied.

#### 1.    Plaintiff's Proposed Schedule

On March 24, 2023, three days after the Court's deadline for all defendants to answer the Amended Complaint, Plaintiff's counsel emailed all active defense counsel a proposed scheduling order and asked for counsel to reply as to whether defendants consented to HRI's proposed schedule by March 31, 2023.[10] On March 31, 2023,[11] in response to a request from one defendant's counsel that the expert deadline be extended, HRI's counsel circulated a revised proposed scheduling order and again asked counsel to respond if they objected to this schedule. Counsel for defendants Lions Gate New York LLC, Voro LLC, Atias Enterprises Inc., and Park Row (1st Ave.) Ltd. informed Plaintiff's counsel that they consented.[12] Counsel for Defendants Corcoran, JRL-NYC LLC, and East 34th Street LLC requested a call with HRI's counsel and stated that they did not consent and believed a bifurcated discovery schedule would be appropriate in this matter.

---

[7] Of the defendants who have not defaulted, 14 moved to dismiss Plaintiff's Amended Complaint and/or for judgment on the pleadings, while 33 answered the Amended Complaint.

[8] There are 44 active defendants in this case, 35 of whom have joined Defendants' letter.

[9] Defendants state that Phase 2 of discovery under their proposal would "be narrowed to only Plaintiff's disparate impact claims." But HRI's New York State Human Rights Law and New York City Human Rights Law claims for source-of-income discrimination (which are not disparate impact claims) are also subject to discovery. Under Defendants' proposal, straightforward discovery into Defendants' policies and practices would be unnecessarily delayed until Phase 2.

[10] HRI's counsel communicated with defense counsel by email via bcc following requests from some defense counsel that HRI communicate in that manner so that defense counsel could avoid having to deal with so many "reply all" emails. Defendants wrongly suggest in their portion of this letter that HRI's counsel intended to obfuscate each Defendants' positions from the others. As this joint letter makes clear, Defense counsel have been able to and are coordinating on their response to HRI's proposed schedule.

[11] Counsel for Defendants 165th St. Realty, LLC, 780 Riverside Owner LLC, Eva Management LLC, MTY Group, and PSJ Holdings LLC emailed Plaintiff's counsel on March 28, 2023: "Can we push back the deadline to complete expert discovery by a few months."

[12] Some of those defendants now join in Defendants' letter.

The deadlines in Plaintiff's March 31, 2023 proposed schedule are below:

| | |
|---|---|
| Initial disclosures | May 4, 2023 |
| Amending the pleadings and joining other parties | September 5, 2023 |
| Fact discovery deadline | April 1, 2024 |
| Expert discovery deadline | October 31, 2024 |
| Expert disclosure deadline | June 3, 2024 |
| Rebuttal expert report deadline | August 5, 2024 |
| Notices of expert depositions deadline | September 2, 2024 |
| Dispositive motion deadline | November 25, 2024 |

This schedule would allow 12 months for fact discovery, enough time for Plaintiff to seek discovery regarding each Defendant's policy or practice relating to voucher holders and information relevant to HRI's claims and to work to resolve any disputes. It also gives Defendants sufficient time to seek discovery into HRI's standing and damages. The proposed schedule further provides a reasonable timeframe for experts to analyze the data produced during fact discovery.

### 2. Bifurcation of discovery will not conserve judicial resources and will unduly prejudice HRI.

The Defendants joining this letter seek to carry out bifurcated discovery, with the first phase focused on standing and the second phase focused on liability. Defendants assert that this would allow them to efficiently dispose of this case through additional motion practice. However, Defendants ignore that questions regarding HRI's standing are inextricably linked with HRI's damages caused by each Defendant and each Defendant's liability for discrimination. And Defendants ignore that several have (multiple times) unsuccessfully challenged HRI's standing to sue.

"[B]ifurcation is the exception, not the rule." *Cunningham v. Big Think Capital Inc.*, No. 21-CV-02162, 2021 U.S. Dist. LEXIS 184642, at *5 (E.D.N.Y. Sep. 27, 2021). When deciding whether to bifurcate proceedings, courts consider "[1] separability of the issues; [2] simplification of discovery and conservation of resources; and [3] prejudice to the parties." *Reed v. Autonation, Inc.*, No. CV 16-08916, 2017 U.S. Dist. LEXIS 218134, at *22 (C.D. Cal. Apr. 20, 2017); *see also Blanchard v. City of Memphis*, No. 17-cv-02120, 2017 U.S. Dist. LEXIS 220801, at *8 (W.D. Tenn. Mar. 31, 2017) ("Bifurcation would only promote judicial economy if Defendant succeeds on the threshold issues; otherwise, the Court would be faced with two discovery phases and potentially two trials."). For the reasons set forth below, the Court should deny Defendants' request to bifurcate proceedings.

First, the issues of standing and defendants' source-of-income discrimination are not readily separable. Discovery into HRI's standing to bring its claims requires discovery into the ways HRI was injured by Defendants' source-of-income discrimination—in other words, into the existence and extent of the frustration of HRI's mission and the reasons for its diversion of resources, which constitute its injury-in-fact for Article III purposes.

Hon. Sidney H. Stein, U.S.D.J.
United States District Court, Southern District for New York
April 28, 2023
Page 5

Defendants' argument that all it needs is discovery into HRI's testing program and "subsequent actions" fundamentally misunderstands standing. Indeed, standing is broader than just injury: "[T]o allege Article III standing, HRI must plausibly show that it '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision.'" ECF No. 580 at 8 (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 (2016)). In any forthcoming motion to dismiss, even one alleging a factual, rather than a facial, challenge to standing, HRI will have the burden of establishing *each* of these elements (not just injury). *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016) (in a factual challenge to standing, "the plaintiffs will need to come forward with evidence of their own" to rebut defendant's evidence regarding standing). To meet its burden, HRI will need discovery into Defendants' discriminatory policies and practices.[13] Any standing inquiries necessarily overlap with the underlying merits discovery in this case.

Discovery into Defendants' policies and practices are also relevant to Plaintiff's injury. Defendants' "impairment of [HRI's] mission can itself constitute injury for standing purposes." ECF No. 580 at 19. So, discovery about what Defendants did that impaired HRI's mission—that is, about their discriminatory policies and practices—implicates HRI's standing even as it concerns the merits of HRI's claims. Similarly, as the Court recognized, Defendants' actions—their discriminatory policies and practices—were what necessitated the diversion of resources that constituted an injury and conferred standing on HRI. *See id.* at 20–23. The existence and scope of Defendants' discriminatory policies and practices (and the future injury they threaten) are also clearly relevant to HRI's standing to pursue injunctive relief. Defendants are therefore wrong to maintain that "[w]hether each defendant has an unlawful policy or practice does not impact Plaintiff's standing at all." Defendants' proposal, offering the illusory promise of a "surgical examination," disregards the many ways in which "standing" and "the merits" are intertwined in this case, unreasonably detaching cause from effect.

The Court can readily avoid this chicken-and-egg problem by declining Defendants' invitation to depart from the typical course of discovery. Indeed, courts deny bifurcation "'where discovery relating to [one issue] overlaps substantially with [another]' given that, in such circumstances, 'bifurcation will result in duplication of efforts and needless line-drawing disputes.'" *Cunningham*, 2021 U.S. Dist. Lexis 184642 at *5 (quoting *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106, 2016 U.S. Dist. LEXIS 6778 (E.D.N.Y. Jan. 12, 2016)); *see also Jordan v. Viacom Outdoor Grp.*, No. 05 Civ. 5497, 2005 U.S. Dist. LEXIS 29917, at *3 (S.D.N.Y. Nov. 28, 2005) (Stein, J.) (denying bifurcation where discovery from moving defendant would be relevant to multiple issues in case and thus bifurcation "may result in a less, not more efficient resolution of the claims asserted").

By contrast, in the cases Defendants cite, courts permitted discovery on a specific factual inquiry in advance of more generalized discovery. *See, e.g.*, *PharmacyChecker.com LLC v. Nat'l Ass'n of Bd. of Pharmacy*, No. 19-CV-7577, 2021 U.S. Dist. LEXIS 113822, at *2 (S.D.N.Y. June

---

[13] Questions Plaintiff will seek to answer in discovery include: Did the broker defendants inform their individual agents to communicate to prospective renters that vouchers were not accepted? Did they tell brokers to communicate the landlord's preference without attention to the law? Did landlord defendants have formal or informal policies of not accepting vouchers that were communicated to the brokers? How long were these policies in place? How many other tenants were turned away wrongfully?

17, 2021) (allowing discovery on the specific question of "whether Plaintiff's enterprise is completely or almost completely geared towards facilitating illegality" before liability discovery). Furthermore, many of the cases Defendants cite are in the antitrust context, where threshold questions (such as proof of conspiracy) are separable from other questions of proof such as damages. *See, e.g.*, *id.* at *3–4; *3M v. Graham-Field, Inc.*, No. 96 Civ. 3839, 1997 U.S. Dist. LEXIS 4457, at *20 (S.D.N.Y. Apr. 9, 1997). Here, though, there is a clear link between HRI's injury and Defendants' wrongful acts. Indeed, there appears to be no precedent for Defendants' request that a plaintiff that plausibly alleged standing be required to undergo discovery regarding its damages *before* engaging in discovery regarding a defendant's liability.

Second, bifurcation would not be efficient or conserve judicial resources. Due to the connection between HRI's damages and the liability discovery, it is very likely that there will be discovery disputes regarding what items are proper in each proposed phase. *See Reed*, 2017 U.S. Dist. LEXIS 218134, at *22–23 (bifurcated discovery "may result in twice as many conflicts"). Defendants' proposal will also require repeated depositions of multiple witnesses, resulting in more expense. Additionally, although Defendants claim that their proposed schedule would complete discovery "in an abbreviated timeframe," that would only be the case if Defendants were able to prove that HRI lacked standing. If Defendants do not prevail on a subsequent motion to dismiss for lack of standing, as HRI anticipates, liability and expert discovery would then proceed. Defendants' proposed schedule unduly extends discovery.

Third, Defendants have not made the required "specific showing" of undue prejudice that justifies bifurcation. *Blanchard*, 2017 U.S. Dist. LEXIS 220801, at *8. Defendants claim they would be prejudiced by having to undergo "costly discovery" regarding Plaintiff's disparate impact claim. But HRI has yet to serve any discovery demands, and discovery into Defendants' policies and practices related to voucher holders would not be overly onerous. Defendants characterize the obligations that HRI's proposed discovery procedure would impose as somehow unusually burdensome but point to nothing that lies outside the ordinary responsibilities of a party to civil litigation. Defendants' attempt to further delay production of this relatively simple set of information suggests that they do not wish for HRI or the Court to understand these practices and policies. Moreover, an argument that Defendants "may be compelled to undergo extensive, intrusive discovery on other issues before a threshold issue is resolved" is not sufficient to support a claim that discovery should be bifurcated on the basis of prejudice. *Id.*

Furthermore, as set forth above, bifurcation of discovery would unduly prejudice HRI. Defendants' proposal would require HRI to respond to redundant discovery requests and sit for multiple depositions in each phase of Defendants' proposed schedule. And because issues of standing and of merits are not easily detached, HRI would also face motion practice regarding whether certain discovery should fall within Phase 1 or Phase 2 of Defendants' proposed schedule. As the Court's decision denying various defendants' motions to dismiss made clear, HRI has plausibly pled its claims. It is now time for full discovery on those claims to begin.

    **B.**    **Defendants' Position**

Defendants' proposal to bifurcate discovery is well supported by the Federal Rules and established case law. The Court has "broad discretion to manage pre-trial discovery." *Wood v.*

*FBI*, 432 F.3d 78, 84 (2d Cir. 2005). This authority explicitly extends to implementing phased discovery. Fed. R. Civ. P. 26(f)(3)(B) (discovery may "be conducted in phases or be limited to or focused on particular issues"); *see also* Fed. R. Civ. P. 42(b) (giving courts broad discretion to bifurcate proceedings "[f]or convenience or to avoid prejudice, or to expedite and economize"). Phased discovery is appropriate where, as here, there is a critical threshold issue. *PharmacyChecker.com LLC v. Nat'l Ass'n of Bd. of Pharm.*, 2021 U.S. Dist. LEXIS 113822, at *3-6 (S.D.N.Y. June 17, 2021) (bifurcating discovery to first address a threshold issue related to standing with subsequent motion for summary judgment before it would entertain remaining discovery); *Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, 1997 WL 166497, at *6 (S.D.N.Y. Apr. 9, 1997) (limiting discovery to "threshold requirement"); *Chambers v. Capital Cities/ABC*, 159 F.R.D. 429, 431 (S.D.N.Y. 1995) ("phased discovery permits necessary information to be obtained if the need is established, without allowing the mere filing of a lawsuit to trigger unduly burdensome discovery."); *Guzman v. Vega*, 1993 WL 535543, at *1 (S.D.N.Y. Dec. 21, 1993) (approving limited initial discovery to determine "whether there is a factual basis for permitting more sweeping additional discovery.").

Courts have found standing to be a threshold issue and have bifurcated discovery with an initial phase to address standing only, with a motion to dismiss the case prior to allowing remaining discovery. *PharmacyChecker.com*, 2021 U.S. Dist. LEXIS 113822 at *3-6; *Wixen Music Publ. v. Triller, Inc.*, 2021 U.S. Dist. LEXIS 201321, at *9 (C.D. Cal. Aug. 11, 2021) (bifurcating discovery to first address standing since, *inter alia*, the likelihood of prejudice toward [the defendant] by forcing it to proceed with costly discovery is high, especially given the possibility that [plaintiff] may not have standing to pursue some of its claims.").

Defendants' phased discovery proposal envisions a surgical examination of a case-dispositive issue in an abbreviated timeframe. The parties would complete document discovery, interrogatories, and depositions in just five months and then immediately (within 30 days of the end of Phase 1 discovery) brief a motion for dismissal on the narrow issue of organizational standing if the evidence fails to establish a basis for Plaintiff's standing.

If Defendants prevail on their putative motions to dismiss after Phase 1 discovery, "it would create substantial efficiencies."[14] *See PharmacyChecker.com*, 2021 U.S. Dist. LEXIS 113822, at *5. Phased discovery would mitigate the substantial costs of disparate impact litigation involving the 63 defendants, by allowing the parties to resolve a dispositive issue and avoiding the bulk of disparate impact discovery. *See Wixen*, 2021 U.S. Dist. LEXIS 201321 at *5 ("One favored purpose of bifurcation is to avoid a difficult question by first dealing with an easier dispositive issue."). Disposing of a dispositive issue through bifurcation will promote judicial economy as well. *Id*.

---

[14] The Court's decision that Plaintiff has properly pleaded standing has no impact on whether Plaintiff actually can establish standing. Merely because the court found Plaintiff's Amended Complaint plausibly alleged standing does not mean that evidence adduced during discovery will support Plaintiff's allegations. Further, Defendants note that contrary to Plaintiff's allegation, there has not been protracted motion practice by defendants – several defendants filed a motion dismiss after Plaintiff amended its pleading.

Hon. Sidney H. Stein, U.S.D.J.<br>
United States District Court, Southern District for New York<br>
April 28, 2023<br>
Page 8

Bifurcation would pose no prejudice to Plaintiff. Defendants do not seek additional discovery – in fact, under Defendants' proposal there is a likelihood of resolving this case with much less discovery than under Plaintiff's proposal. Plaintiff's contention that it will be prejudiced because it would have to respond to voluminous discovery is without basis. Plaintiff would need to respond to discovery requests from up to 45 defendants regardless of whether discovery is bifurcated, simply because it chose to file an action against 88 defendants.[15] However, under Plaintiff's proposal, not only would Plaintiff be subject to full discovery (which it claims is burdensome), but each of the 45 appearing defendants would be subject to wide-ranging pattern and practice discovery that would be quite burdensome and costly. The question for the Court is whether it should bifurcate discovery, which would expose a single Plaintiff (who chose to pursue an action against 88 separate entities) to a first round of discovery; or if no bifurcation is permitted that all of the 45 appearing entities should have to endure burdensome full discovery, when there is a dispositive issue that could avoid the time and expense for all defendants. The weighing of prejudice (as to one litigant, or as to 45 litigants), clearly weighs in favor of bifurcating discovery. If there is any burden before resolution of a dispositive issue is resolved (Defendants do not concede such discovery would be burdensome to Plaintiff[16]), fairness dictates that burden, if any, fall on Plaintiff and not each of the 45 defendants.

The likelihood of prejudice to Defendants under Plaintiff's proposal is substantial, because each defendant would be forced to proceed with costly discovery, especially when Plaintiff may not, in the end, have standing to pursue its claims. Moreover, should Defendants not prevail on a motion to dismiss following Phase 1 discovery, the initial focus on standing will nonetheless materially advance the litigation as Phase 2 discovery would be narrowed to only Plaintiff's disparate impact claims.

Plaintiff is simply incorrect in asserting that discovery related to Plaintiff's standing will overlap with discovery related to Plaintiff's city, state, and federal disparate impact (pattern and practice) claims. Discovery related to standing will focus on Plaintiff and its conduct (*e.g.*, its testing program and subsequent actions). It matters not what any defendant did or did not do, the question is what Plaintiff did or did not do, and why. For example, discovery would flesh out whether Plaintiff can in fact establish it had a goal (that it failed to meet) of counseling tenants such that 2,000 would be returned to affordability as a result of spending resources on "Defendants' source of income discrimination." Am. Compl. ¶ 187. Contrary to Plaintiff's conclusory assertions herein, standing discovery does not relate in the slightest to whether each defendant has a policy or practice – instead, such discovery solely relates to actions taken by Plaintiff based on the information it had at the time (*i.e.*, through its testing program). Whether each defendant has an unlawful policy or practice does not impact Plaintiff's standing at all. None of the discovery

---

[15] Even if Plaintiff would be subject to voluminous discovery from the 45 appearing Defendants, that is solely a result of Plaintiff's litigation tactic of bringing this action against 88 defendants instead of proceeding with separate actions. What did Plaintiff expect to happen in discovery when it sued so many companies? Of course, each defendant is entitled to discovery from Plaintiff and Plaintiff could receive 45 separate discovery requests. However, Plaintiff would be subject to such "voluminous" discovery regardless of whether discovery is bifurcated. Thus, Plaintiff's contention should not impact the Court's decision to bifurcate discovery.

[16] HRI and its counsel must have more than enough resources to handle discovery in a case involving only 45 defendants, as they contemplated discovery against 88 defendants when they filed this action.

taken by Defendants related to Plaintiff's standing will be intertwined with Plaintiff's discovery of each defendant as to whether it has a policy of refusing vouchers and whether that policy has a disparate impact on a protected group.[17]  Interestingly, Plaintiff does not actually point to any specific discovery that would overlap between Phase 1 and Phase 2.

Plaintiff incorrectly claims that it requires discovery into each of the defendants' policies and practices to determine if Plaintiff has standing.  That is a red herring.  The question is not whether each defendant had an unlawful policy or practice, but whether Plaintiff can trace its harm to each of the defendants' purported conduct.  Even if we were to assume *arguendo* that each defendant had acted unlawfully, Plaintiff must establish that each defendant's conduct separately is the but-for cause of harm Plaintiff suffered.  This does not require discovery of defendants' policies or practices, rather, it requires inquiry in the harm Plaintiff alleges to have suffered.  Plaintiff's baseless theory is that if it can establish the merits of its claims then it has standing – but that is not the case.  The fact that Plaintiff may have expended resources and the fact (assuming *arguendo*) that any defendant acted unlawfully, does not automatically result in Plaintiff having standing to pursue its claims.  Plaintiff must show a connection between the two, which does not require any discovery into whether there is or was unlawful conduct.  Rather, the question is why did Plaintiff do as it did, *e.g.*, the testing program and the alleged diversion of resources. Whatever the answer is to that question, it can only have been the result of information available to Plaintiff at the time it took the actions; Plaintiff cannot base its alleged injury on after-the-fact discovered policy and practices.  Simply put, if each defendant separately caused harm to Plaintiff, Plaintiff is the only party that has information on that.

Further complicating Plaintiff's theory of standing is the fact that since 2021, Plaintiff has sued 240 landlords and brokers, in addition to the 88 originally named in this lawsuit, all for fair housing source of income related claims.[18]  All of these claims are based upon Plaintiff's testing

---

[17] The cases cited by Plaintiff are inapposite.  Plaintiff relies on several cases involving class actions (this is a single plaintiff case), and unlike the cases cited by Plaintiff, there would literally be no overlap between the two discovery phases – standing relates to Plaintiff's actions; merits discovery relates to each defendant's conduct.  *See Cunningham v. Big Think Capital Inc.*, 2021 U.S. Dist. LEXIS 184642, at *5 (E.D.N.Y. Sep. 27, 2021) (dealing with a class action, not a single plaintiff claim, and denying bifurcation because the defendant sought the same discovery in both phases and based its entire application on plaintiff's status as a "prolific TCPA litigant."); *Charvat v. Plymouth Rock Energy, LLC*, 2016 Dist. LEXIS 6778, at *3 (E.D.N.Y. Jan. 12, 2016) (involving a class action with the same discovery in both phases, just split up between individual and class scope: "[d]efendant moves to bifurcate discovery so that it can attack Plaintiff's individual claim" before moving to class discovery); *Jordan v. Viacom Outdoor Grp.*, 2005 U.S. Dist. LEXIS 29917, at *2 (S.D.N.Y. Nov. 28, 2005) (denying bifurcation because breach of contract claim against Viacom required the same showing as the breach of contract claim against other defendants, thus discovery would overlap).  Indeed, none of Plaintiff's case law involves a single plaintiff suffering some alleged burden or prejudice versus 45 defendants suffering prejudice.

[18] HRI has filed numerous lawsuits in the past several years based on the same testing program employed allegedly employed in this case, as well as other similar testing programs.  *See Housing Rights Initiative v. Century 21 Dawns Realty et al.*, Index No. 156195/2021 (New York County Supreme Court); *Housing Rights Initiative v. Douglas Elliman et al.*, Index No. 154472/2022 (New York County Supreme Court); *Housing Rights Initiative v. Corcoran Group LLC et al.*, Index No. 154010/2022 (New York County Supreme Court); *Housing Rights Initiative v. Berkshire Hathaway Homeservices Laffey International Realty, et al.*, Index No. 605651/2023 (Nassau County Supreme Court).

Hon. Sidney H. Stein, U.S.D.J.<br>
United States District Court, Southern District for New York<br>
April 28, 2023<br>
Page 10

program. For obvious reasons, Plaintiff attempts to shift the focus away from its litigation mill operation and to defendants' policies and practices.[19]

Plaintiff's proposed 19-month discovery schedule on all issues is unrealistic and prejudicial to Defendants. Most, if not all discovery contemplated by Plaintiff would involve burdensome discovery directed to each of the 45 appearing defendants remaining in this case regarding their respective policies and practices related to renting apartments to voucher holders. Disparate impact discovery is, for the most part, a one-way street. Stated another way, disparate impact discovery would potentially involve Defendants having to produce vast amounts of documents and information, including large amounts of ESI by each Defendant related to applications, rentals, and communications with potential applicants and actual applicants spanning years. Such discovery would be costly and time consuming *to Defendants only*, not to Plaintiff.[20] There is much less burden on a plaintiff in terms of discovery in a disparate impact case, as the focus is almost exclusively on each individual defendant's practices.[21]

Of course, this is why Plaintiff seeks 12 months to complete fact discovery and an additional 7 months of costly expert discovery. Plaintiff's proposed discovery schedule is based on the fact Plaintiff will be seeking large amounts of discovery from each Defendant, including ESI, documents, and other information from landlords and brokers that is not readily available. For instance, it is doubtful that each defendant maintains separate records (*e.g.*, email communications, electronic files, and hard-copy documents) relating to interactions with voucher holders. It would be time-consuming and costly for each of the Defendants to respond to Plaintiff's disparate impact-related requests. It would be incredibly burdensome if Defendants are forced to proceed simultaneously with merits-phase discovery and their standing-related discovery concerning Plaintiff's testing program. Phase 1 discovery would seek information from Plaintiff that is much more readily available to it, as its testing program presumably is designed for and contemplates the fact it could result in litigation (as evidenced by the fact Plaintiff has filed lawsuits against 328 defendants since 2021 – Plaintiff operates as a litigation mill).

As a result, implementing phased discovery would be much less burdensome to all parties, *including Plaintiff*. Plaintiff would only be required to respond to straightforward discovery regarding its testing program, which it would have to do anyway under its own proposal. But Defendants' proposal will avoid Plaintiff having to simultaneously respond to standing-related discovery (and merits discovery) from Defendants while simultaneously Plaintiff takes disparate impact discovery from 45 defendants, along with the attendant discovery-related motion practice that is bound to occur with so many parties. Defendants' proposal makes discovery more manageable for *all parties*. For example, if Plaintiff took the depositions of 1-2 individuals per

---

[19] As an aside, the enormity of not just the 88 defendants sued here but the total (so far) over 300 separate parties, further dilutes Plaintiff's non-robust pleading of the potential impact of any individual defendant's practices on housing.

[20] Though Plaintiff would also be burdened by reviewing discovery responses and dealing with discovery disputes with up to 45 defendants simultaneously.

[21] Because, among other things, the substantial discovery imposed on disparate impact defendants, courts impose "robust" pleading requirements on disparate treatment pleadings.

Hon. Sidney H. Stein, U.S.D.J.<br>
United States District Court, Southern District for New York<br>
April 28, 2023<br>
Page 11

defendant, that would amount to over 100 depositions. If there's a possibility that this action is subject to dismissal for lack of standing (even if Plaintiff disagrees), wouldn't Plaintiff want to ensure Defendants' putative motions to dismiss on standing grounds were denied before it spends possibly hundreds of thousands of dollars (if not more) pursuing discovery that could be mooted with an adverse decision on standing? Bifurcation of discovery is in the interest of Plaintiff, Defendants, and the Court.

      Thank you for your consideration of this request.

Respectfully submitted,

JACKSON LEWIS P.C.

*Brian J. Shenker*

Brian J. Shenker

Cc: All counsel (via ECF)

4873-7585-2384, v. 2